Filed in Fourth Judicial District Court
5/14/2013 6:05:15 PM
Hennepin County Civil, MN

| | |
|---|---|
| **STATE OF MINNESOTA**<br>**COUNTY OF HENNEPIN** | **DISTRICT COURT**<br>**FOURTH JUDICIAL DISTRICT** |

Alan Cooper,

      Plaintiff,

v.

John Lawrence Steele, Prenda Law Inc., AF
Holdings, LLC, Ingenuity13, LLC,

      Defendants.

Court File No.: 27-CV-13-3463

Judge: Honorable Ann Leslie Alton

## AFFIDAVIT OF PAUL DUFFY IN SUPPORT OF DEFENDANT PRENDA LAW, INC.'S RESPONSE TO PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

I, Paul Duffy, declare as follows:

1.      I am the sole principal, shareholder, officer, and director of Defendant Prenda Law, Inc. I am also the registered agent for Defendant Prenda Law, Inc.

2.      Plaintiff's principal place of business is 161 N. Clark St., Suite 3200, Chicago, IL 60601, which is also the address of the registered agent.

3.      For the entire time up to and including when Plaintiff asserts that he mailed the summons and complaint to Plaintiff's principal place of business, I maintained an office at Plaintiff's principal place of business and regularly worked there on a daily basis from Monday through Friday.

4.      As such, a reasonably diligent attempt to personally serve me at Defendant's principal place of business would have been successful.

5.      I am not aware of a single attempt by any person to serve me with any paper at 161 N. Clark Street, Suite 3200, Chicago, Illinois.

Filed in Fourth Judicial District Court
5/14/2013 6:05:15 PM
Hennepin County Civil, MN

*16 1 P4*

6.      The practice of the receptionist at ~~3200~~ N. Clark Street, Suite 3200 in Chicago, Illinois is to notify me by e-mail whenever a visitor asks for me.   I routinely receive such e-mails for those asking to see me.  I did not receive a message from the receptionist at Suite 3200 that a visitor whom I did not know had asked to see me, from the time Plaintiff filed the Complaint in this action through the time he purports to have sent the Complaint to me by mail.

7.      I am unaware of any attempt by any person to personally serve me with the Complaint or any paper in this actin at any time.

8.      I declare under penalty of perjury that the foregoing is true and correct based on my own personal knowledge, except for those matters stated on information and belief, and those matters I believe to be true.  If called upon to testify, I can and will competently testify as set forth above.

**DATED:  May 14, 2013**                              By: _____

"OFFICIAL SEAL"
ANDRIANNA D FLORES
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires 06/14/2016

*Andrianna D Flores*        5/14/2013.
*Cook County*
*State: Illinois*

Filed in Fourth Judicial District Court
5/16/2013 1:23:40 PM
Hennepin County Civil, MN

STATE OF MINNESOTA
COUNTY OF HENNEPIN

DISTRICT COURT
FOURTH JUDICIAL DISTRICT

Court File No.: 27-CV-13-3464
Judge Ann Leslie Alton

Alan Cooper,

Plaintiff,

v.

John Lawrence Steele; Prenda Law, Inc.;
AF Holdings, LLC; Ingenuity13, LLC.

Defendants

**REPLY MEMORANDUM IN
SUPPORT OF DEFAULT JUDGMENT**

Defendant Prenda Law, Inc. in its opposition does not demonstrate that it can meet all four factors necessary to avoid default judgment under *Finden v. Klass*, 268 Minn. 268, 271, 127 N.W.2d 748, 750 (1964). In fact, Prenda provides *no* defense on the merits. Prenda's opposition memorandum relies upon several misstatements of law. It also either misstates or omits relevant facts.

## I.  PRENDA WAIVED OBJECTIONS TO SERVICE BY FILING AN ANSWER

Prenda was served on March 18, as shown in the affidavit of service. Duffy's affidavit is at best problematic as described below. Nevertheless, Prenda's objections to service were waived as soon as they filed an answer. Under Rule 12 of the Minnesota Rules of Civil Procedure, Prenda was required to either file a motion, or preserve its objections to service by stating it as an affirmative defense. Prenda did neither and its objections fail as a matter of law.

> "Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading

Minn. R. Civ. P. 12.02

1

Filed in Fourth Judicial District Court
5/16/2013 1:23:40 PM
Hennepin County Civil, MN

> A defense of . . .insufficiency of process, or insufficiency of service of
> process is waived . . .if it is neither made by motion pursuant to this rule
> nor included in a responsive pleading

Minn. R. Civ. P. 12.08

Prenda did not raise any defense to service when it filed its answer and it did not file any

Rule 12 motion. Any objection it might have had as to service has been waived.

If this objection is simply meant to explain Prenda's late response, it doesn't square

with facts. Prenda began specifically referencing this lawsuit in other court filings at least

as early as February. It served responses to discovery in April. Not only are Prenda's

service arguments waived, they don't even make sense. Even if Prenda had preserved this

defense, Plaintiff has demonstrated proper service.

## II.   DUFFY'S AFFIDAVIT DOES NOT SQUARE WITH OTHER FACTS

Duffy's affidavit is either false or based on poor memory. Contrary to Duffy's

affidavit, Plaintiff did attempt personal service on Duffy several times before serving

through the secretary of state. Plaintiff hired Judicial Attorney Services, Inc. out of

Chicago, IL to serve Prenda Law, Inc. *See* Godfread Aff. Robert Fairbanks made repeated

attempts to serve Mr. Duffy both at 161 N. Clark and at other addresses where it was

believed Mr. Duffy could be found. *See* Fairbanks Aff. Between January 29 and February

15, Fairbanks made several attempts to serve Duffy and Prenda at 161 N. Clark and at

Duffy's other office at 2 N. LaSalle. *See Id.* Interestingly, the receptionist at Suite 3200 at

161 N. Clark told Mr. Fairbanks that people from Prenda are "rarely ever seen here." *See*

*Id.* Contrary to Prenda's assertions, a reasonably diligent effort of service did not result in

personal service on Duffy. Fairbanks concluded that "after due search, careful inquiry,

and diligent attempts" he was unable to effect service on Prenda. *See Id.*

Filed in Fourth Judicial District Court
5/16/2013 1:23:40 PM
Hennepin County Civil, MN

It is also worth noting that Duffy does not state in his affidavit that he did not receive the complaint when served on March 18. Duffy states that "Plaintiff asserts that he mailed the summons and complaint," but Duffy does not deny receipt. In fact, it would be very strange that Prenda would respond to interrogatories, (even in the form of its objections without answers) if it had not been served the underlying complaint.

In short, Duffy's affidavit just doesn't make sense. His affidavit appears to be an slapdash scramble to avoid consequences for his failure to answer the complaint.

## III.   PRENDA MISSTATES LAW REGARDING SERVICE OF FOREIGN CORPORATIONS

Prenda in its opposition memorandum declares that a default judgment cannot be entered without first obtaining a bond. This would not prevent the court from granting Plaintiff's motion for default. But even so, Prenda still misstates Minnesota law. When a foreign corporation, such as Prenda, commits a tort in Minnesota, service on a secretary of state has the same legal effect as personal service. Therefore, Prenda's appeal to Rule 55.01(d) is in error. The language of Minn. Stat. § 5.25 (cited in Plaintiff's motion) is fairly clear on this point.

> A foreign corporation is considered to be doing business in Minnesota if it . . . commits a tort in whole or in part in Minnesota against a resident of Minnesota. These acts are considered to be equivalent to the appointment by the foreign corporation of the secretary of state of Minnesota and successors to be its true and lawful attorney upon whom may be served all lawful process in actions or proceedings against the foreign corporation arising from or growing out of the contract or tort.
> . . .
> The making of the contract or the committing of the tort is considered to be the agreement of the foreign corporation that any process against it which is so served upon the secretary of state has the same legal force and effect as if served personally on it within the state of Minnesota.

Minn. Stat. § 5.25 Subd. (b)

Filed in Fourth Judicial District Court
5/16/2013 1:23:40 PM
Hennepin County Civil, MN

Prenda Law committed intentional torts against Alan Cooper, a resident of Minnesota. The torts were committed at least in part within the State of Minnesota by way of the numerous cases filed in the U.S. District Court for the District of Minnesota. Therefore, when Prenda was served via the secretary of state, it had the same effect by law as personal service effected within the State of Minnesota. Because service made on Prenda has the legal effect of service within Minnesota, Prenda's argument as to the Rule 55.01(d) requirement of a bond is without merit.

## IV.   PLAINTIFF'S NUMBERS ARE BASED ON PUBLIC DATA

Prenda makes in its opposition several objections as to evidence for damages. Plaintiff would welcome some evidence from Prenda, but as of yet, Prenda has not provided any.

First, Prenda objects to Plaintiff's use of $3,400 as an estimation of Prenda's demands.  Plaintiff's estimation of $3,400 can be established by evidence from Prenda itself. Attached to as exhibits are three demand letters from Prenda each asking for *exactly* $3,400. *See* Godfread Aff. Ex. Q, R, S. Additionally, whether the Forbes article is truly hearsay does not matter for purposes of a motion for default. In a motion for default, the relevant facts are to be set out by affidavit of either the party or the party's lawyer, and the affidavit may include reliable hearsay. Minn. R. Gen. Practice 117.02. The evidence before the Court demonstrates that $3,400 is a reasonable estimate for a settlement demand from Prenda.

Prenda also objects as to the estimated number of defendants, noting that many cases have only one defendant. This is both incomplete and misleading. Some cases may have only one defendant, at least two have over 1,000 defendants. *See e.g. AF Holdings, LLC v. John Does 1-1,140,* 1:11-cv-01274 (D.D.C, filed 7/13/2011); *see also AF Holdings, LLC v. John Does 1-1,058,* 1:12-cv-00048 (D.D.C., filed 1/11/2012).  Others

4

Filed in Fourth Judicial District Court
5/16/2013 1:23:40 PM
Hennepin County Civil, MN

have more modest numbers such as 135 defendants, *See, AF Holdings, LLC v. John Does 1-135*, 5:11-cv-03336 (N.D.Cal, filed 7/7/2011), or 29 defendants. *See AF Holdings, LLC v. John Does 1-29*, 1:11-cv-01794 (D.Minn., filed 7/6/2011). Those four cases alone total 2,362 defendants.

Also, some single defendant cases are in fact cases against hundreds of co-conspirators. *See e.g. AF Holdings, LLC v. Ciccone*, 4:12-cv-14442 (E.D. Mich., filed 10/7/2012) (Doc. #10 Motion to Expedite Discovery filed 11/22/2012 seeking the identities of approximately 300 "co-conspirators"); *see also AF Holdings, LLC v. Harris*, 2:12-cv-02144 (D. Ariz.) (Doc. #39 Motion for Authorization of Issuance of Subpoenas). Prenda cannot be serious when it suggests that Plaintiff's estimates are "wildly speculative and inaccurate."

Presumably, Prenda might have a more exact number of defendants and co-conspirators it could share if it wished to truly challenge Plaintiff's estimates. Plaintiff does not suggest that the proposed damages are an exact accounting of Prenda's take, but merely an estimate based on publicly available data. Plaintiff reiterates that his estimates may in fact be too low.

Filed in Fourth Judicial District Court
5/16/2013 1:23:40 PM
Hennepin County Civil, MN

## CONCLUSION

Prenda Law, Inc. has not provided a plausible explanation for neglecting to timely answer the complaint. It has provided no evidence that it has a defense on the merits. Its legal arguments or defenses have either been waived, or are contradicted by its own behavior. Under *Finden,* default judgment is appropriate. Plaintiff respectfully requests that the Court enter judgment in his favor.

GODFREAD LAW FIRM, P.C.

DATE:        5/16/2013            By _____

Paul Godfread (#389316)
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
(612) 284-7325
paul@godreadlaw.com
*Attorney for Plaintiff, Alan Cooper*

### Certificate of Service

Plaintiff hereby certifies that a copy of this memorandum and accompanying affidavits and exhibits were served on Defendant Prenda Law, Inc. through its counsel, Paul Hansmeier through the Minnesota Courts e-File system.

DATE:        5/16/2013            By _____

Paul Godfread (#389316)

Filed in Fourth Judicial District Court
5/16/2013 1:23:40 PM
Hennepin County Civil, MN

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

| | |
|---|---|
| Alan Cooper,<br><br>        Plaintiff,<br><br>        v.<br><br>John Lawrence Steele; Prenda Law Inc.;<br>AF Holdings, LLC; Ingenuity13, LLC;<br><br>        Defendant. | Court File No.: 27-cv-13-3464<br><br><br>**AFFIDAVIT OF PAUL GODFREAD** |

STATE OF MINNESOTA      )
                         ) ss.:
COUNTY OF HENNEPIN      )

       I, Paul Godfread, being first duly sworn on oath, state that:

1.    I am the attorney for Plaintiff Alan Cooper in this action.

2.    I hired Judicial Attorney Services, Inc. based in Chicago, IL to serve defendant Prenda Law.

3.    Judicial Attorney Services, Inc. made several attempts, but were unable to serve Prenda because no agent or employee of Prenda was present at their listed address of 161 N. Clark, #3200, Chicago, IL 60601.

4.    The following are true and correct copies of documents offered as exhibits to this motion:

    a.    EXHIBIT Q - Demand letter sent by Prenda Law, Inc. for alleged infringement of an AF Holdings, LLC work demanding $3,400

    b.    EXHIBIT R - Demand letter sent by Prenda Law, Inc. for alleged infringement of another work demanding $3,400.

1

Filed in Fourth Judicial District Court
5/16/2013 1:23:40 PM
Hennepin County Civil, MN

c.     EXHIBIT S - Demand letter sent by Prenda Law predecessor firm Steele

Hansmeier demanding $3,400 for alleged infringement of an AF Holdings

work.

Dated: 5/16/2013

_____

Paul Godfread

Sworn to and subscribed before me the

16 day of May , 2013

_____

NOTARY PUBLIC

KRISTEN L BARRETT
Notary Public
Minnesota
My Comm. Expires
Jan 31, 2015

2

Filed in Fourth Judicial District Court
5/16/2013 1:23:40 PM
Hennepin County Civil, MN



Filed in Fourth Judicial District Court
5/16/2013 1:23:40 PM
Hennepin County Civil, MN

# EXHIBIT R

Filed in Fourth Judicial District Court
5/16/2013 1:23:40 PM
Hennepin County Civil, MN

# *P*renda Law Inc.

### Protecting Intellectual Property

05/04/2012

**VIA U.S. MAIL**

████████████████████

　　　Re: Sunlust Pictures, LLC v. Does 1-120
　　　**1:12-cv-20920** ████████████

Dear ███████████████

Prenda Law, Inc. has been retained by Sunlust Pictures, LLC to pursue legal action against people who illegally downloaded their copyrighted content (i.e., "digital pirates"). Digital piracy is a very serious problem for adult content producers, such as our client, who depend on revenues to sustain their businesses and pay their employees.

On February ██, 2012 at ██████████ UTC (UTC), our agents observed the IP address with which you are associated illegally downloading and sharing with others via the BitTorrent protocol the following copyrighted file(s):

　　　*Sunny Leone - Goddess*
　　　*The ISP you were connected to:* ██████████████
　　　*Your IP Address you were assigned during your illegal activity:* ███████████

We have received a subpoena return from your ISP confirming that you are indeed the person that was associated with the IP address that was performing the illegal downloading of our client's content listed above on the exact date(s) listed above.

On 3/03/2012 we filed an action against several anonymous digital pirates (Sunlust Pictures, LLC v. Does 1-120). Under the applicable rules of civil procedure, our lawsuit against you personally will not commence unless we serve you with a Complaint.

While it is too late to undo the illegal file sharing associated with your IP address, we have prepared an offer to enable our client to recover damages for the harm caused by the illegal downloading and to allow both parties to avoid the expense of a lawsuit.

Fax: 312.893.5677　　　　161 N Clark St., Suite 3200, Chicago, IL 60601　　　　Tel: 312.880.9160
Fax: 305.748.2103　　　　1111 Lincoln Rd., Suite 400, Miami Beach, FL 33139　　　　Tel: 305.748.2102

www.wefightpiracy.com

Filed in Fourth Judicial District Court
5/16/2013 1:23:40 PM
Hennepin County Civil, MN

Under the Copyright Law of the United States, copyright owners may recover up to $150,000 in statutory damages (in cases where statutory damages are applicable, which may or may not be the case here) per infringing file plus attorney's fees in cases, whereas here, infringement was willful. In at least one case where the Copyright Law has been applied to digital piracy and statutory damages were applicable, juries have awarded over $20,000 per pirated file. During the RIAA's well-publicized campaign against digital music piracy, over 30,000 people nationwide settled their cases for amounts ranging from an average of $3,000 to $12,000. More recently, on December 22, 2010, a case in which a defendant was accused of illegally downloading six works via BitTorrent, a settlement was reached for $250,000.

In light of these factors, we believe that providing you with an opportunity to avoid litigation by working out a settlement with us, versus the costs of attorneys' fees and the uncertainty associated with jury verdicts, is very reasonable and in good faith.

In exchange for a comprehensive release of all legal claims in this matter, which will enable you to avoid becoming a named Defendant in our lawsuit, our firm is authorized to accept the sum of $3,400.00 as full settlement for the claims. This offer will expire on 05/19/2012 at 4:00 p.m. CST. If you reject our settlement offers, we expect to serve you with a Complaint and commence litigation.

To reiterate: if you act promptly you will avoid being named as a Defendant in the lawsuit. You may pay the settlement amount by:

> (a) Mailing a check or money order payable to 'Prenda Law Inc. Trust Account' to:
>> Prenda Law, Inc.
>> 1111 Lincoln Road Suite 400
>> Miami Beach, FL 33139;

> (b) Completing and mailing/faxing the enclosed payment authorization to:
>> Prenda Law, Inc.
>> 1111 Lincoln Road Suite 400
>> Miami Beach, FL 33139
>> Facsimile: (305) 748-2103.

Be sure to reference your case number and your 'Ref#' on your method of payment. Regardless of your payment method, once we have processed the settlement, we will mail you your signed Release as confirmation that your payment has been processed and that you have been released from the lawsuit.

Filed in Fourth Judicial District Court
5/16/2013 1:23:40 PM
Hennepin County Civil, MN

Please consider this letter to constitute formal notice that until and unless we are able to settle our client's claim against you, we demand that you not delete any files from your computer or any other computers under your control or in your possession. If forced to proceed against you in a lawsuit, we will have a computer forensic expert inspect these computers in an effort to locate the subject content and to determine if you have deleted any content. If in the course of litigation the forensic computer evidence suggests that you deleted media files, our client will amend its complaint to add a 'spoliation of evidence' claim against you. Be advised that if we prevail on this additional claim, the court could award monetary sanctions, evidentiary sanctions and reasonable attorneys' fees. If you are unfamiliar with the nature of this claim in this context, please consult an attorney.

We strongly encourage you to consult with an attorney to review your rights in connection with this matter. Although we have endeavored to provide you with accurate information, our interests are directly adverse to yours and you should not rely on the information provided in this letter for assessing your position in this case. Only an attorney who represents you can be relied upon for a comprehensive analysis of our client's claim against you.

Enclosed, please find a Frequently Asked Questions sheet, a payment authorization form and a sample of the Release that you will receive. We look forward to resolving our client's claim against you in an amicable fashion, through settlement.

Sincerely,

Joseph Perea
Attorney and Counselor at Law

Enclosures

Filed in Fourth Judicial District Court
5/16/2013 1:23:40 PM
Hennepin County Civil, MN

# EXHIBIT S

Filed in Fourth Judicial District Court
5/16/2013 1:23:40 PM
Hennepin County Civil, MN

# Steele Hansmeier PLLC
Intellectual Property Law Firm

Firm Partners:

JOHN L. STEELE
*Licensed only in IL*

PAUL R. HANSMEIER
*Licensed only in MN*

ROBERT P. BALZEBRE
*Licensed only in FL*

October ███ 2011

**VIA U.S. MAIL**

████████████████████

    **Re:**   *AF Holdings LLC v. Does 1-135*
            *Case No. 4:11-cv-03336-DMR,* ████████

Dear ████████████████

Steele Hansmeier, PLLC has been retained by AF Holdings LLC to pursue legal action against people who illegally downloaded their copyrighted content (i.e., "digital pirates"). Digital piracy is a very serious problem for adult content producers, such as our client, who depend on revenues to sustain their businesses and pay their employees.

On ████████████████████████ our agents observed the IP address with which you are associated illegally downloading and sharing with others via the BitTorrent protocol the following copyrighted file(s):

    ***Sexual Obsession***

    *The ISP you were connected to: Comcast Cable Communications*

    *Your IP Address you were assigned during your illegal activity:* ██████████

We have received a subpoena return from your ISP confirming that you are indeed the person that was associated with the IP address that was performing the illegal downloading of our client's content listed above on the exact date(s) listed above.

On July 07, 2011 we filed a lawsuit in United States Federal Court in the Northern District of California against several anonymous digital pirates (Case No. 4:11-cv-03336-DMR). Under the Federal Rules of Civil Procedure, our lawsuit against you personally will not commence until we serve you with a Complaint, which we are prepared to do if our

Filed in Fourth Judicial District Court
5/16/2013 1:23:40 PM
Hennepin County Civil, MN

settlement efforts fail.  While it is too late to undo the illegal file sharing associated with your IP address, we have prepared an offer to enable our client to recover damages for the harm caused by the illegal downloading and to allow both parties to avoid the expense of a lawsuit.

Under the Copyright Law of the United States, copyright owners may recover up to $150,000 in statutory damages (in cases where statutory damages are applicable, which may or may not be the case here) per infringing file plus attorney's fees in cases, whereas here, infringement was willful.  In it least one case where the Copyright Law has been applied to digital piracy and statutory damages were applicable, juries have awarded over $20,000 per pirated file.  During the RIAA's well-publicized campaign against digital music piracy, over 30,000 people nationwide settled their cases for amounts ranging from an average of $3,000 to $12,000.  More recently, on December 22, 2010, a case in which a defendant was accused of illegally downloading six works via BitTorrent, a settlement was reached for $250,000.

In light of these factors, we believe that providing you with an opportunity to avoid litigation by working out a settlement with us, versus the costs of attorneys' fees and the uncertainty associated with jury verdicts, is very reasonable and in good faith.

In exchange for a comprehensive release of all legal claims in this matter, which will enable you to avoid becoming a named Defendant in our lawsuit, our firm is authorized to accept the sum of **$3,400.00** as full settlement for the claims.  This offer will expire on ▇▇▇/2011 at **4:00 p.m. CST.**  If you reject our settlement offers, we expect to serve you with a Complaint and commence litigation.

To reiterate: if you act promptly you will avoid being named as a Defendant in the lawsuit. You may pay the settlement amount by:

(a)   Mailing a check or money order payable to "Steele Hansmeier Trust Account" to:

> **Steele Hansmeier**
> **1111 Lincoln Rd., Suite 400**
> **Miami Beach, Florida 33139;**

(b)   Completing and mailing/faxing the enclosed payment authorization to:

> **Steele Hansmeier**
> **1111 Lincoln Rd., Suite 400**
> **Miami Beach, Florida 33139**
> **Facsimile: (305) 748-2103.**

Be sure to reference your case number and your "Ref#" on your method of payment. Regardless of your payment method, once we have processed the settlement, we will mail you your signed Release as confirmation that your payment has been processed and that you have been released from the lawsuit.

*Legal Correspondence – Settlement Purposes Only – Not Admissible Under FRE 408*

2/17/13          Judicial AttorneyServices, Inc. - Professional Process Servers & Private Investigators

Filed in Fourth Judicial District Court
5/16/2013 1:23:40 PM
Hennepin County Civil, MN

DISTRICT COURT, HENNEPIN COUNTY, STATE OF MINNESOTA

| | | |
|---|---|---|
| **ALAN COOPER** | | |
| | PLAINTIFF(S) | Case No. |
| vs. | | |
| **JOHN LAWRENCE STEELE, ET AL** | | |
| | | AFFIDAVIT OF NON SERVICE OF: |
| | DEFENDANT(S) | **SUMMONS & COMPLAINT; EXHIBITS; INTERROGATORIES;** **REQUEST FOR ADMISSIONS** |

The undersigned, being first duly sworn, on oath deposes and says: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, and is competent to be a witness therein.

Affiant states s(he) attempted to serve **PRENDA LAW INC.** at **161 N. CLARK ST., STE 3200, CHICAGO, IL 60601**, and after due search, careful inquiry and diligent attempts, was unable to effect service for the following reasons:

1/29/2013 1:26 PM - Name on the outside of the suite is Network LLC. Spoke with a receptionist who stated this is a shared office concept and the defendant is rarely ever seen here.
1/30/2013 10:50 AM - Database search conducted and the defendant was reported to reside at 1327 N Mohawk St., #3, Chicago, IL 60610. (312) 952-6136 is listed to Duffy in the Sullivan law book. This same number was found for Duffy Law Group, 2 N LaSalle St., 13th Fl, Chicago, IL 60602. http://pduffygroup.com/
1/30/2013 10:55 AM - Called (800) 380-0840, female answered, stated Paul Duffy was not in but she would transfer me to a paralegal. Jeff got on the phone and stated Paul was in court. I explained who I was and what was being served. I went on to explain I attempted to serve him at 161 N Clark and was told he was never there. He said that was not true. He took my name/number down and said either he or Paul would call me back.
1/31/2013 12:09 PM - Called (800) 380-0840, asked if Prenda Law was located at 161 N Clark, which I was told yes. I then asked to speak to Jeff, and he replied I was speaking to him. I asked if he spoke to Paul Duffy regarding my call from yesterday and he said he passed along the message as he had to fly out to San Francisco yesterday. I asked him "so you are in San Francisco right now" and he claimed he was.
2/15/2013 11:48 AM - Attempted service at the office, was told Duffy was not here. I asked about Jeff, the paralegal and was told no one by that name works for the defendant in this office.

I declare under penalties of perjury that the information contained herein is true and correct.

Robert D Fairbanks, Lic #: 117-001119
Judicial Attorney Services, Inc.
2100 Manchester Rd., Ste 505
Wheaton, IL 60187
(630) 221-9007

SUBSCRIBED AND SWORN to before me this 15th day of February, 2013

OFFICIAL SEAL
JOAN C HARENBERG
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:04/28/13

NOTARY PUBLIC

CLIENT NAME:                      ORIGINAL PROOF OF SERVICE                      TRACKING #
Godfread Law Firm, PC                                                                 91714
FILE #:

Filed in Fourth Judicial District Court
5/17/2013 2:39:29 PM
Hennepin County Civil, MN

| | |
|---|---|
| **STATE OF MINNESOTA**<br>**COUNTY OF HENNEPIN** | **DISTRICT COURT**<br>**FOURTH JUDICIAL DISTRICT** |

---

Alan Cooper,

      Plaintiff,

v.

John Lawrence Steele, Prenda Law Inc., AF
Holdings, LLC, Ingenuity13, LLC,

      Defendants.

Court File No.: 27-CV-13-3463

Judge: Honorable Ann Leslie Alton

---

### DEFENDANT PRENDA LAW, INC.'S RESPONSE TO PLAINTIFF'S NEWLY SUBMITTED EVIDENCE

Plaintiff raises new arguments and submits new evidence in his reply to Defendant Prenda Law, Inc.'s ("Prenda") response to his motion for default judgment. (Reply.) Prenda responds to this new evidence and arguments herein.

### I.    THE AFFIDAVIT OF PAUL DUFFY IS ACCURATE

Plaintiff submits the Robert Fairbanks affidavit to establish that he satisfied the "reasonable diligence" prerequisite to service on the Illinois Secretary of State. (Aff. of Robert Fairbanks.) The Robert Fairbanks affidavit stands for the exact opposite proposition.

As an initial matter, the Fairbanks affidavit establishes that the Affidavit of Compliance Plaintiff used to effect service on the Illinois Secretary of State was defective, thus rendering service ineffective. Specifically, Attorney Godfread executed the Affidavit of Compliance, notwithstanding his lack of personal knowledge regarding service. An affidavit must be based on personal knowledge. Robert Fairbanks was the only person with personal knowledge regarding his attempts at service and he is the only person with personal knowledge regarding his

1

Filed in Fourth Judicial District Court
5/17/2013 2:39:29 PM
Hennepin County Civil, MN

efforts to exercise reasonable diligence at serving Prenda at its registered office of record in Illinois. He is the only person who could have properly executed the Affidavit of Compliance.

Further, Fairbanks' affidavit shows that he made at best a minimal effort to serve Duffy. He only made *one* stated attempt to serve Duffy, and that was on February 15, 2013. Nowhere else in his affidavit does Fairbanks affirmatively state under oath that he attempted service more than once. Common sense dictates that a single service attempt is not reasonable diligence. Further, Fairbanks made no effort to contact Duffy directly via e-mail or phone to arrange a time for Duffy to accept service.

## II.   PLAINTIFF HAS NOT WAIVED CHALLENGES TO SERVICE IN REGARDS TO PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Plaintiff claims that Prenda waived its ability to argue Plaintiff's service was ineffective. (Reply at 1-2) (citing Minn. R. Civ. P. 12.08). This argument misses the point that "insufficiency of service of process" is an affirmative defense that may be raised in response to claims in a *pleading*. *See* Minn. R. Civ. P. 12.08. In other words, insufficient process is a defense that Prenda could have raised against the allegations in Plaintiff's complaint. *Id.*

Insufficiency of service of process is not a defense that must be raised in the first response to a motion for default judgment. In order to even be eligible for a default judgment, Plaintiff bears the burden of establishing that proper service was effectuated and he plainly has not done so here. Whether Prenda raised insufficiency of service of process as an affirmative defense in its answer to Plaintiff's complaint has zero relevance to whether Plaintiff is eligible for a default judgment.

Filed in Fourth Judicial District Court
5/17/2013 2:39:29 PM
Hennepin County Civil, MN

### III.   MINN. STAT. § SUBD. (B) HAS NO APPLICATION TO SERVICE ON THE ILLINOIS SECRETARY OF STATE

Plaintiff cites Minn. Stat. § 5.25 Subd. (b) for the proposition that service on the secretary of state has the same legal effect as personal service. (Reply at 3-4.) Minn. Stat. § 5.25 Subd. (b) applies to the secretary of state of *Minnesota* and not the secretary of state of *Illinois*. Plaintiff has provided no evidence that he attempted to serve the Minnesota Secretary of State. As a result, Minn. Stat. § 5.25 Subd. (b) is completely irrelevant to Movant's motion.

### IV.   PLAINTIFF'S DAMAGES CALCULATION ARE STILL WILDLY SPECULATIVE AND INACCURATE

Plaintiff attempts to submit additional evidence to support his speculative assertions regarding damages. (Reply at 4-5.) As an initial matter, Plaintiff admits his damage calculations are entirely speculative. (*Id.* at 5) ("Plaintiff does not suggest that the proposed damages are an exact accounting of Prenda's take, but merely an estimate based on publicly available data."). Further, Plaintiff has no rebuttal for Prenda's noting that he wildly misestimated the number of defendants in cases involving Ingenuity13, LLC.  For the Court's recollection, Plaintiff estimated the number of defendants involved in Ingenuity13, LLC's cases to be 1,400 when the number is actually much closer 100—a difference of a factor of 14. (*Id.*) Plaintiff had no good faith explanation for his wild misestimate.

Plaintiff's other estimates continue to be wildly speculative and inaccurate with regards to AF Holdings, LLC. Several of the cases Plaintiff attempts to attribute to Prenda were, as a matter of public record, filed by other law firms. *See, e.g., AF Holdings, LLC v. John Does 1-1,140*, 1:11-cv-01274 (D.D.C. July 13, 2011) (filed by Anderson & Associates, PC); *AF Holdings, LLC v. John Does 1-29*, 1:11-cv-01794 (D. Minn. July 6, 2011) (filed by Alpha Law Firm, LLC); *AF Holdings, LLC v. Matthew Ciccone*, 2:12-cv-14442 (D. Mich. Oct. 7, 2012)

Filed in Fourth Judicial District Court
5/17/2013 2:39:29 PM
Hennepin County Civil, MN

(filed by Jonathan W. Tappan, PLLC); *AF Hodlings, LLC v. David Harris*, 2:12-cv-02144 (D. Ariz. Oct. 9, 2012) (filed by Steven James Goodhue). Further a stay of discovery was granted in *AF Holdings, LLC v. John Does 1-1,058*, preventing the release of subscriber information. 1:12-cv-00048 (D.D.C. 2012). These judicially noticeable facts substantially eliminate Plaintiff's damages calculations.

Finally, Plaintiff attaches letters claiming Prenda seeks $3,400 from individuals that have infringed on its copyrighted work. Plaintiff objects to the introduction of these letters into evidence as they lack foundation (neither Plaintiff nor Plaintiff's attorney have established that they have personal knowledge regarding the issuance of these letters), are irrelevant (certainly as to the letter issued by third-party law firm Steele Hansmeier PLLC), and are hearsay (they are out of court statements offered for their truth). The letters simply do not stand for the proposition Plaintiff claims they do—just because $3,400 is the amount Prenda seeks in *certain* cases, does not mean it is the amount that Prenda eventually obtains.

Finally, Plaintiff continues to fail to address the most fundamental problem with his damages calculation: why would settlement proceeds from people who were caught stealing a video file that was not named after Plaintiff or otherwise associated with his likeness have any relation to the damages Plaintiff alleges to have suffered?

## V.    PRENDA HAS VALID DEFENSES ON THE MERITS

Finally, Plaintiff states that Prenda has no defense on the merits. (Reply at 1.) This statement ignores the point that Prenda has, for example, noted that Plaintiff failed to state a claim on which relief may be granted. (Prenda Answer at 7.)  Prenda looks forward to litigating Plaintiff's claims.

4

Filed in Fourth Judicial District Court
5/17/2013 2:39:29 PM
Hennepin County Civil, MN

## CONCLUSION

The Court should deny Plaintiff's motion for default judgment. Plaintiff has not waived its ability to challenge Plaintiff's insufficiency of service in regards to Plaintiff's motion for default judgment. Plaintiff has once again failed to demonstrate that he properly served Prenda regarding this matter. Plaintiff's damages estimations are still wildly speculative and inaccurate. Prenda has valid defenses on the merits of Plaintiff's claims.

Respectfully submitted,

Prenda Law, Inc.

DATED: May 17, 2013

By:     s/ Paul R. Hansmeier
Paul R. Hansmeier
Bar No. 0387795
Alpha Law Firm LLC
900 IDS Center
80 South 8th Street
Minneapolis, MN 55402

Filed in Fourth Judicial District Court
5/17/2013 2:39:29 PM
Hennepin County Civil, MN

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 17, 2013, all individuals of record who are deemed to have consented to electronic service are being served true and correct copy of the foregoing documents, and all attachments and related documents.

s/ Paul R. Hansmeier

# GODFREAD LAW FIRM, P.C.

100 South Fifth Street, Suite 1900, Minneapolis, MN 55402

July 2, 2013

**Via electronic filing**
Hon. Ann Leslie Alton
Hennepin County District Court
300 South Sixth Street
Minneapolis, MN 55487

>       Re:     **Transcript and request for futher hearing on damages**
>               *Cooper v. Steele, Prenda Law, Inc., AF Holdings, Ingenuity13*
>               Case No. 27-cv-13-3463

Dear Judge Alton,

As requested, I am providing a copy of the transcript of the March 11, 2013 hearing before Judge Wright, one of the hearings which ultimately led to his order dated May 6, 2013. I respectfully request that you take judicial notice of the reporter's transcript of the March 11 hearing along with the exhibits that were presented at that hearing. This transcript will further illuminate the reasons for Judge Wright's May 6th order, and includes sworn testimony by my client, Alan Cooper.

While the matter is under advisement, I would also respectfully request that the Court allow my client the opportunity to either prove damages and to amend his Complaint to allow for punitive damages. Without a doubt, defendant Prenda Law, Inc. as well as its principals, Paul Hansmeier, John Steele, and Paul Duffy have benefited from the fraudulent misappropriation of my client's name, though the exact amount may yet be uncertain. Futhermore, the type of scheme perpetrated by the defendants, all of whom are attorneys, surely warrants punitive damages.

Therefore, I respectfully request a hearing on the issue of damages. I also request the opportunity to conduct some limited discovery as to how much Prenda and its principals have earned or collected through their AF Holdings and Ingenuity13 lawsuits.

Sincerely,

Paul Godfread

Cc:     Paul Hansmeier
        John Steele
        Paul Duffy

paul@godfreadlaw.com                                    phone 612-284-7325
www.godfreadlaw.com                                     fax 612-465-3609

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1          UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3            HONORABLE OTIS D. WRIGHT

4          UNITED STATES DISTRICT JUDGE PRESIDING

5                  - - -

6

7   Ingenuity 13 LLC,              )
                    PLAINTIFF,    )
8                                  )
    VS.                            )   NO. CV 12-8333 ODW
9                                  )
    John Doe, et al.,              )
                    DEFENDANT,    )
10   _____)

11

12

13        REPORTER'S TRANSCRIPT OF PROCEEDINGS

14            LOS ANGELES, CALIFORNIA

15           MONDAY, MARCH 11, 2013

16

17

18        _____

19          KATIE E. THIBODEAUX, CSR 9858
            U.S. Official Court Reporter
20          312 North Spring Street, #436
            Los Angeles, California 90012
21

22

23

24

25

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/22/2013 9:27:34 AM
Hennepin County Civil, MN

```
 1    APPEARANCES OF COUNSEL:

 2


 3    FOR RESPONDENT GIBBS:

 4         WAXLER CARNER BRODSKY LLP
           BY:  ANDREW J. WAXLER
 5         -and- BARRY BRODSKY
           1960 E. Grand Avenue
 6         Suite 1210
           El Segundo, CA  90245
 7


 8

 9    FOR DEFENDANT:

10         THE PIETZ LAW FIRM
           BY:  MORGAN E. PIETZ
11         3770 Highland Avenue
           Suite 206
12         Manhattan Beach, CA  90266

13         -and-

14         NICHOLAS RANALLO LAW OFFICES
           BY:  NICHOLAS R. RANALLO
15         371 Dogwood Way
           Boulder Creek, CA  95006
16


17

18    SPECIALLY APPEARING:

19         KLINEDINST LAW OFFICES
           BY:  HEATHER ROSING
20         501 W. Broadway
           Suite 600
21         San Diego, CA  92101

22

23

24

25
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1

I N D E X

2

3      WITNESS NAME                                    PAGE

4      Alan Cooper
            Direct Examination by the Court        21
5           Direct Examination by Mr. Pietz        26
            Cross-Examination by Mr. Brodsky       34
6
7      Bart Huffman
            Direct Examination by Mr. Pietz        39

8      Benjamin Fox
            Direct Examination by Mr. Pietz        45
9
       Jessie Nason
10          Direct Examination by Mr. Pietz        52

11     Brad Gibbs
            Direct Examination by Mr. Waxler       73
12          Cross-Examination by Mr. Pietz        105

13

14     EXHIBIT                    I.D.      IN EVID.

| EXHIBIT | I.D. | IN EVID. |
| --- | --- | --- |
| 1 | 36 | 37 |
| 2 | 36 | 37 |
| 3,4,5 | 36 | |
| 6,7 | 43 | 44 |
| 8 | 50 | 50 |
| 9 | 56 | |
| 10 | 67 | 67 |
| 11 | 68 | 68 |
| 12 | 73 | 73 |
| 13 | 107 | 107 |
| 14 | 108 | 108 |
| 15,16,17,18 | 110 | 110 |

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

```
 1            LOS ANGELES, CALIFORNIA; MONDAY, MARCH 11, 2013

 2                              1:38 P.M.

 3                          -  -  -  -  -

 4

 5

 6            THE CLERK:  Calling Item No. 4, CV 12-8333-ODW,

 7    CV 12-6662, ODW, CV 12-6668, Ingenuity 13 LLC versus John

 8    Doe, additionally, CV 12-6636 ODW, CV 12-6669, AF

 9    Holdings LLC versus John Doe.

10            Counsel, please state your appearances.

11            MR. WAXLER:  Andrew Waxler, your Honor, and Barry

12    Brodsky for Mr. Gibbs who is present in the courtroom.

13    Thank you.

14            THE COURT:  Good afternoon, counsel.

15            MR. PIETZ:  Good afternoon, your Honor.  Morgan

16    Pietz, P-I-E-T-Z, for the putative John Doe defendant in

17    12-CV-8333.

18            MR. RANALLO:  Nicholas Ranallo, co-counsel for the

19    same Doe.

20            THE COURT:  All right.  Gentlemen, thank you.

21            All right.  We are here in response to an OSC

22    set by this court as to why sanctions should not be

23    imposed for various violations including Rule 11 and

24    Local Rule 83-3.

25            I have received from Mr. Waxler on behalf of
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/25/2013 9:27:34 AM
Hennepin County Civil, MN

1  Mr. Gibbs his response, supplemental response, a number

2  of documents.  Spent the weekend reading a depo which was

3  perhaps the most informative thing I have read in this

4  litigation so far primarily because of what you didn't

5  want revealed.  So, in any event, I have extended an

6  offer to all of the principles concerned to offer them an

7  opportunity to explain.

8          It is my understanding that they have declined

9  that invitation.  Therefore --

10         MS. ROSING:  Your Honor?

11         THE COURT:  And you are?

12         MS. ROSING:  If I may approach.

13         THE COURT:  Please.

14         MS. ROSING:  My name is Heather Rosing, and I

15  filed an ex parte application with this court.

16         THE COURT:  When?

17         MS. ROSING:  Friday?

18         THE COURT:  When?

19         MS. ROSING:  It was filed I believe at 3:54 p.m.?

20         THE COURT:  Guaranteed for the court to actually

21  see it; right?  Was it electronically filed?

22         MS. ROSING:  The local rule says we're not

23  allowed --

24         THE COURT:  Answer my question.  Was it

25  electronically filed?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/22/2013 9:27:34 AM
Hennepin County Civil, MN

1       MS. ROSING:  No.  Because we are not allowed to,

2  your Honor.

3       THE COURT:  Okay.  So what you did is you took it

4  downstairs to the intake window?

5       MS. ROSING:  Yes, your Honor?

6       THE COURT:  Late Friday afternoon addressing a

7  matter that is set for hearing on Monday morning?

8       MS. ROSING:  My clients received notice of this on

9  Thursday, your Honor.  We received notice on Thursday?

10       THE COURT:  I am just asking you a question.  You

11  can answer it "yes" or "no".

12       MS. ROSING:  I'm sorry.  Could you repeat the

13  question.

14       THE COURT:  What is -- why are you here?

15       MS. ROSING:  Again, my name is Heather Rosing with

16  the Klinedinst PC law firm.  I am specially appearing for

17  four of those people that received this notice on

18  Thursday, Angela Van Den Hemel, a paralegal at Prenda

19  law --

20       THE COURT:  Is this the long way of saying they

21  are not going to be here?

22       MS. ROSING:  I'm sorry.  I was just telling you

23  who I represent, your Honor?

24       THE COURT:  Are they here?

25       MS. ROSING:  No, your Honor.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1          THE COURT:  Have a seat.

2          MS. ROSING:  May I just finish?

3          THE COURT:  Have a seat.

4          Bottom line is the court is going to end up

5    drawing its own inferences from the information it

6    actually has.  An opportunity to be heard is all that is

7    required.  If you don't wish to exercise that, fine.

8          There was so much obstruction during the

9    course of this deposition that it is obvious that someone

10   has an awful lot to hide.  This has actually raised far

11   more questions of fraud than the court originally had,

12   but we will get to that later.

13         Initially, I have got a number of questions

14   regarding some of the filings that have been made with

15   the court.

16         I guess, Mr. Waxler, I guess you will be the

17   one that is addressing some of these things.  One of my

18   questions is this.  Why is it that in every single one of

19   these cases there is a form attached to the complaint

20   that asks for whether or not there are any related cases.

21   I have got a partial list of all of these cases that have

22   been filed in the Central District.  None of them have

23   indicated that there are any related cases.

24         Could you tell me why?

25       MR. WAXLER:  Well, your Honor, the downloads are

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/23/2013 9:27:34 AM
Hennepin County Civil, MN

1  done by separate infringers, and the plaintiffs, yes,

2  obviously, were a lot the same, and I believe that the

3  decision had been made that it didn't require the related

4  case filings to be made.

5          THE COURT:  Okay.

6          MR. WAXLER:  Perhaps that was in error, your

7  Honor, as we sit here today.

8          THE COURT:  Let me ask a question then.  Let's

9  just say on one date, that date being July 2nd of 2012,

10  four lawsuits were filed by AF Holdings LLC versus John

11  Doe all seeking a remedy for the infringement of the same

12  movie Popular Demand.

13          Now, can you tell me how on earth these aren't

14  related?

15          MR. WAXLER:  Well, they are obviously related in

16  the sense that --

17          THE COURT:  That is what I thought, too.  And that

18  is what this entire list is.  Okay.  They are all

19  related, but that box was always checked no.  And then we

20  are going to get to something separate in a minute, and

21  that is the issue of who has an interest, a financial

22  interest in the outcome of these cases.  We will look at

23  this shortly.

24          There is the issue of the court having vacated

25  and quashed the subpoenas that were served on various

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/23/2013 9:27:34 AM
Hennepin County Civil, MN

1    ISP's, and, then, of course, I have gotten other

2    responses to the OSC saying, well, we didn't know that

3    that meant we couldn't do other forms of discovery.  And,

4    by the way, we sent out a copy of the court's order to

5    the various ISP's letting them know that the court had

6    withdrawn those orders and surely that is not the conduct

7    of someone who was trying to disobey the court's order.

8    And I had to agree.  Sounded reasonable.

9            Have you all seen the declaration of Sean

10   Moriarty from Verizon?

11           MR. WAXLER:  Your Honor, we saw it this morning,

12   yes.

13           THE COURT:  Okay.  Good.

14           And what say you because he responds directly

15   to Mr. Gibbs' assertion that the ISP's were given notice

16   not to respond to the subpoenas.  He says this didn't

17   happen, that they didn't receive notice.

18           MR. WAXLER:  May I respond to that, your Honor?

19           THE COURT:  Sure.

20           MR. WAXLER:  Mr. Gibbs -- Prenda Law is one of

21   the, is one of the e-mail addresses that received a copy

22   of your October 19th, 2012 order.  As does Mr. Gibbs.

23   Mr. Gibbs had a conversation with Mr. Hansmeier and told

24   him that he thought that this order should be served on

25   the ISP's.  Mr. Hansmeier advised Mr. Gibbs that that

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1    would be done.  Mr. Hansmeier later advised Mr. Gibbs

2    that his request had been taken care of.

3         Now, if you read page, Paragraph 4 at Line 18

4    and 19 of the declaration, all it says is based on the

5    Verizon records, it does not appear that Verizon received

6    from AF Holdings or its counsel a copy of the order.  It

7    does not say they did not.  And Verizon, like these other

8    ISP's, has a history of, as I understand it, eliminating

9    its records from their systems soon after, like within 30

10   days.  CT Corporation receives the subpoenas.  That was

11   who was supposed to be served, and they have a history of

12   not keeping them in their records for very long.

13        THE COURT:  So they eliminate their documents

14   pretty much the way Mr. Gibbs eliminates the original

15   signed application from Alan Cooper?

16        MR. WAXLER:  Mr. Gibbs never had the original

17   signed verification from Mr. Cooper.  Mr. Gibbs was told

18   by Prenda Law that they had it.  So Mr. Gibbs was never

19   in possession of that document, and Mr. Gibbs did not

20   lose that document, your Honor.

21        THE COURT:  One other thing you didn't really make

22   clear, was it only that document or was the entire file

23   lost?

24        MR. WAXLER:  I don't know the answer to that.

25        THE COURT:  Okay.  So here is the deal.  So what

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

1 | we have got, we have got CT Systems destroying the order

2 | and the cover letter or transmittal of that order to

3 | Verizon; right?  But they have got everything else.  They

4 | have got all the other letters and the subpoena and all

5 | that sort of thing.  So the only thing they have gotten

6 | rid of it just the order quashing the subpoena; right?

7 | MR. WAXLER:  No, your Honor.  CT Corporation is

8 | the agent for service of process.

9 | THE COURT:  I know who they are.

10 | MR. WAXLER:  CT Corporation may have received

11 | that, and I am just saying their history is they don't

12 | keep records for very long of having received subpoenas

13 | or service of those.  The other documents which are

14 | attached to this declaration -- I believe since it was

15 | given to me about an hour, actually 15 minutes ago out

16 | there; I saw part of it online -- are documents that were

17 | exchanged between Verizon directly and others.  So they

18 | weren't going through CT Corporation.  So that is the

19 | difference, your Honor.

20 | THE COURT:  You are saying, then, that the notice

21 | to Verizon that that subpoena had been quashed by the

22 | court went to CT and not to Verizon?

23 | MR. WAXLER:  That is their agent for service of

24 | process.  That is who they served.  That is who

25 | Mr. Gibbs, when he talked to Mr. Hansmeier, said please

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/29/2013 9:27:34 AM
Hennepin County Civil, MN

1  serve this order on them, and that is what Mr. Gibbs

2  understands was done.

3      THE COURT:  Okay.  Was the order served in the

4  same way that the subpoena was served?

5      MR. WAXLER:  That would be our understanding.  I

6  mean, it was served on CT Corporation.  That is how the

7  subpoena was served on CT Corporation.

8      THE COURT:  So the subpoena and all the various

9  letters, et cetera, that emanated from Prenda Law to

10  Verizon were served on CT Systems; right?

11      MR. WAXLER:  No.  As I understand it, your Honor,

12  the e-mails that may appear here were exchanged between

13  Verizon directly, once they got the subpoena, and members

14  of Prenda Law.  The only thing that would have gone

15  through CT Corporation was the service of the original

16  subpoena and a copy of the order.

17      THE COURT:  All right.  I am only going by the

18  declaration of Mr. Moriarty.  This is under tab, Exhibit

19  A.  The letter, Prenda Law, see that, September 5th?  It

20  says via hand delivery.

21      MR. WAXLER:  I see that.

22      THE COURT:  All right.  Enclosed please find a

23  subpoena and attachment.  So I am assuming that the

24  subpoena was also hand delivered.  It doesn't say to

25  whom.  Is this to CT?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/22/2013 9:27:34 AM
Hennepin County Civil, MN

1      MR. WAXLER:  That is our understanding, your

2   Honor.

3      THE COURT:  So what we have is a situation or at

4   least you are guessing, you are guessing that everything

5   seeking information from Verizon arrived intact, but the

6   order withdrawing or quashing that subpoena somehow got

7   misplaced.

8      MR. WAXLER:  There is no evidence before this

9   court that Verizon did not receive that subpoena, that

10   order from this court.  I can tell you that Mr. Gibbs'

11   intent was that that order be served so that they did

12   receive it.  And it was always his understanding until he

13   saw the declarations in the filings by Mr. Pietz that

14   some of the ISP's did not receive a copy of that order.

15      THE COURT:  It is also my understanding that I

16   guess a paralegal in the employ of one of these law firms

17   began following up with these Internet service providers

18   inquiring as to why certain information had not been

19   provided pursuant to those subpoenas.

20      MR. WAXLER:  And Mr. Gibbs read that for the first

21   time when the declarations were submitted in connection

22   with this OSC and was very surprised by it because he

23   understood, as he does today, that the order by this

24   court was served on CT Corporation and then would have

25   been transmitted to Verizon.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/24/2013 9:27:34 AM
Hennepin County Civil, MN

1        THE COURT:  Okay.  All right.  There is a number

2   of things, Mr. Waxler, which you state in your papers

3   that I wanted to ask you about.  In more than one place,

4   you indicate that Ingenuity 13 LLC and AF Holdings, et

5   cetera, have assets which consist of without limitation

6   their intellectual property rights in some of these

7   films.  What other assets?

8        MR. WAXLER:  AF Holdings and Ingenuity -- AF

9   Holdings, at least, received the assignment.  So they

10  have those property rights, and the companies would have

11  obviously the right to, or rather the settlement funds

12  that were paid on some of these matters would have been

13  property of those companies.

14          But as I understand it from Mr. Hansmeier's

15  deposition which I, too, read over the weekend, that the

16  trust accounts of some of the lawyers were holding those

17  settlement funds.  Whether those settlement funds ever

18  made it to AF Holdings or Ingenuity 13, all I can do,

19  your Honor, is rely on what Mr. Hansmeier says because we

20  have no independent knowledge of it and nor does

21  Mr. Gibbs.  Mr. Gibbs did not receive those funds.  Those

22  funds were sent to Prenda Law.

23       THE COURT:  So you are telling me what you know is

24  what you gleaned from this this weekend pretty much as

25  the court did; right?

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/25/2013 9:27:34 AM
Hennepin County Civil, MN

1   MR. WAXLER:  Well, I mean, Mr. Gibbs may have more

2   knowledge than specifically what Mr. Hansmeier said.

3       THE COURT:  Oh.  Mr. Hansmeier has no knowledge of

4   anything.  So I just want to know if you got what the

5   court got which is the only entities which apparently

6   make any claim whatsoever to these settlement funds are

7   the law firms.  There appears to be no effort whatsoever

8   of transmitting any of these funds to the so-called

9   clients, Ingenuity 13 and AF Holdings, who don't file

10  income taxes anywhere because as Mr. Hansmeier says they

11  have no income.

12           Is that what you got?  That is what I got.

13      MR. WAXLER:  I thought that Mr. Hansmeier said

14  they didn't file income taxes because they were not

15  required in where they were domiciled, but you may be

16  right and I may be wrong.

17      THE COURT:  No.  He quite clearly said they have

18  not filed income taxes anywhere.

19      MR. WAXLER:  I understand that.  I just thought it

20  was a different reason for not filing them.

21      THE COURT:  Well, probably because they don't do

22  anything, do they?

23      MR. WAXLER:  Well, they in hearing from Mr -- in

24  reading from what Mr. Hansmeier says, they obviously own

25  valid copyrights, and those entities retain law firms

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/22/2013 9:27:34 AM
Hennepin County Civil, MN

1    like Prenda Law, apparently, to file actions such as the

2    ones that are at issue today.

3         THE COURT:  They retain firms?  Seriously?

4              You can hardly keep a straight face, can you?

5         MR. WAXLER:  No, your Honor.

6         THE COURT:  These entities were basically created

7    by these lawyers; right?  They have no business.  They

8    have no employees.  They have no function really.  They

9    are not even really a shell, are they?

10        MR. WAXLER:  I don't know, your Honor.

11        THE COURT:  The law firms are basically

12   prosecuting these actions on their own behalf, aren't

13   they?

14        MR. WAXLER:  Mr. Gibbs never had any client

15   contact with those clients.  Mr. Gibbs received

16   information from Mr. Hansmeier and Mr. Steele, and those

17   individuals advised Mr. Gibbs that they had talked to the

18   clients.

19        THE COURT:  Hansmeier and Steele, are those the

20   individuals to whom you refer in your papers to as the

21   senior partners in the law firm.

22        MR. WAXLER:  Yes, they are.

23        THE COURT:  I have another question.  Does

24   Mr. Gibbs have an indemnity or hold harmless agreement

25   from these senior partners?  Or is he out there on his

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/27/2013 9:27:34 AM
Hennepin County Civil, MN

1  own?

2       MR. WAXLER:  He has no hold harmless agreement

3  from these partners that I am aware of.

4       THE COURT:  Okay.  All right.

5       MR. WAXLER:  He was an of counsel, W -- 1099,

6  independent contractor for Prenda Law.

7       THE COURT:  All right.  Now, the court is coming

8  to the conclusion, and this is why it has been wonderful

9  to have someone here to disabuse me of the notion that

10  all of these lawsuits are being prosecuted on behalf of

11  the lawyers, that all of the settlement funds inure

12  solely to the benefit of the lawyers because not dime

13  one has been transmitted to AF Holdings or to Ingenuity

14  13.

15       Now, if there is information to rebut that, I

16  would love to hear it.  But, otherwise, that is what I am

17  stuck with.  So now I am wondering why is it that no

18  disclosure has been made in this court and probably in

19  none of the federal courts that the lawyers have a

20  pecuniary interest in the outcome of these cases?

21       MR. WAXLER:  I don't believe that that is what

22  Mr. Gibbs understands the case to be.  The fact that the

23  settlement funds were not transmitted as of yet to those

24  entities doesn't mean those settlement funds aren't being

25  held in trust for those entities.  Mr. Gibbs has no

Filed in Fourth Judicial District Court
7/23/2013 9:27:34 AM
Hennepin County Civil, MN

1   information whatsoever, your Honor, to understand

2   anything different than what I just described.

3        MR. BRODSKY:  Your Honor, may I interject one

4   point?

5        THE COURT:  Sure.  Your name again?

6        MR. BRODSKY:  Barry Brodsky.

7        THE COURT:  All right.  Go ahead, sir.

8        MR. BRODSKY:  My understanding and it is only from

9   reading the same deposition transcript was that those

10  funds remained in the trust accounts of the various law

11  firms that were representing the companies to defray

12  future expenses.

13       THE COURT:  And what were those expenses other

14  than filing fees?

15       MR. BRODSKY:  I would assume they would be filing

16  fees, investigative fees, you know, basically that.

17       THE COURT:  To -- okay.

18       MR. BRODSKY:  But that is just my reading of the

19  deposition.

20       THE COURT:  Okay.  And after that is done, then

21  what?

22       MR. BRODSKY:  Apparently -- well, we don't know

23  where that trail ends, whether that trail has ended.  But

24  we do know this.  We know that none of those funds

25  reached Mr. Gibbs.

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/23/2013 9:27:34 AM
Hennepin County Civil, MN

1    THE COURT:  And we also know none of those funds

2  reached Ingenuity 13 and AF Holdings.

3    MR. BRODSKY:  Apparently, from Mr. Hansmeier's

4  testimony, that is correct.

5    THE COURT:  Who was the corporate designee, the

6  30(b)(6) designee for AF Holdings; right?

7    MR. BRODSKY:  Yes.

8    THE COURT:  And none of those funds ever reached

9  AF Holdings.

10    MR. BRODSKY:  According to him, that's correct.

11    THE COURT:  All these lawsuits settled on behalf

12  of AF Holdings; right?  But they reside in the law firm's

13  trust account.

14    MR. BRODSKY:  Some obviously were settled, yes.

15    THE COURT:  You know what was really interesting,

16  a lawsuit handled by law firm A, the settlement funds

17  then are transmitted to law firm B's trust account, law

18  firm B being controlled by Mr. Steele.  I don't know.  I

19  just find these things curious.

20    All right.  Any other light to be shed on some

21  of the court's concerns with respect to this foolishness

22  here because -- by the way, is there a Mr. Cooper here?

23    MR. PIETZ:  Your Honor, Mr. Cooper is in

24  attendance today, and I believe prepared to confirm that

25  these documents are founded on forgeries.

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1      THE COURT:  Is there an Alan Cooper in the

2  courtroom?  Don't be shy.  Come forward, sir.

3      (The witness was sworn.)

4      THE CLERK:  Thank you.  Have a seat.

5      THE COURT:  By the way, while we are on the

6  subject, is there a Mark Lutz in the courtroom as well?

7          Is either Hansmeier in the courtroom?

8      MS. ROSING:  Your Honor, I am the attorney

9  specially appearing for them and if I could finish my

10  request?

11      THE COURT:  I just want to know if they are here.

12      MS. ROSING:  They are not physically here, your

13  Honor?

14      THE COURT:  Thank you.  Good.

15      MR. PIETZ:  Your Honor, my understanding was that

16  Ms. Rosing was representing one of the Hansmeiers.  Is

17  that different, or are you also representing Peter

18  Hansmeier?

19      MS. ROSING:  I did not have an opportunity to say,

20  but I do not represent Peter Hansmeier.

21      THE COURT:  I didn't think you would be.  The

22  technician?  I didn't think you would be.

23      MR. WAXLER:  Your Honor, while those individuals

24  are not present, my understanding is they are available

25  by phone.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

```
1            THE COURT:  Is that right.  Okay.  I may take them
2    up on that.  Maybe.  Anyway.
3
4                      DIRECT EXAMINATION
5    BY THE COURT:
6    Q     Mr. Cooper, your name is Alan Cooper?
7    A     Yes, sir.
8    Q     And where do you reside, sir?
9    A     Isle, Minnesota.
10   Q     Isle, Minnesota.  Do you have any connection -- let
11   me just ask you specifically, do you have any connection
12   with Mr. Gibbs?
13   A     No, sir.
14   Q     Ever met Mr. Gibbs before?
15   A     No.
16   Q     What about Paul Hansmeier, any connection with him?
17   A     No.
18   Q     Ever meet him before?
19   A     No.
20   Q     What about John Steele?
21   A     Yes.
22   Q     What was your connection with Mr. Steele?
23   A     I was a caretaker for a piece of property that he
24   had in Northern Minnesota.
25   Q     And when was this?
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/22/2013 9:27:34 AM
Hennepin County Civil, MN

1    A       I think from 2006 till last August.

2    Q       You worked for him from 2006 until August of 2012?

3    A       No, I did not work for him.  I was a caretaker for

4    his piece of property.  He had two houses.  I lived in

5    one and then took care of everything else there.

6    Q       Okay.  And he paid you?

7    A       No.

8    Q       Who paid you?

9    A       There was no pay.  It was I lived in the one house,

10   and I took care of everything on the property for free.

11   Q       Or in exchange for a place to live?

12   A       Yes.

13   Q       All right.  So you didn't have to pay for your

14   housing; correct?

15   A       Correct.

16   Q       So in exchange for housing on the property, you

17   took care of his property?

18   A       Yes.

19   Q       And this was a deal you negotiated with Mr. Steele?

20   A       Yes.

21   Q       All right.

22   A       It is in a lease agreement that we have.

23   Q       All right.  I guess you have been advised.  Matter

24   of fact, I have seen a letter written by an attorney who

25   apparently is acting on your behalf where you have become

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/22/2013 9:27:34 AM
Hennepin County Civil, MN

1    concerned that your name is being used as a corporate

2    representative of some West Indian entities that you know

3    nothing about; is that true?

4    A      Yes.   That's correct.

5    Q      I want you to explain.   I want you to elaborate.

6    What is it that you have heard?

7    A      That my name is being signed and forged and used

8    for whatever these offices or myself personally scams

9    that they have going on.

10   Q      Did you ever have a discussion with Mr. Steele

11   about these concerns of yours?

12   A      He had, on one of his trips up to the cabin, all he

13   had said was if anybody contacts you about any of my law

14   firm or anything that has to do with me, don't answer and

15   call me.

16   Q      Had he ever given you any advance notice that he

17   was contemplating embarking on -- let me back up.   Do you

18   know what his legal specialty was, say, back in 2006?

19   What kind of law was he practicing?

20   A      When I had first met him, he was still in law

21   school.

22   Q      In law school.   All right.   And, then, what area of

23   practice did he go into if you know?

24   A      He had originally said divorce, family law.

25   Q      Family law.   All right.   Did he ever indicate to

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/24/2013 9:27:34 AM
Hennepin County Civil, MN

1  you that he was contemplating embarking on a different

2  specialty in the law?

3  A    Yes.

4  Q    And best as you can recall, what was this new

5  specialty?

6  A    Internet porn buyers.  I don't know exactly how to

7  word it for you.

8  Q    Oh.  Internet porn piracy sounds pretty good.  All

9  right.

10         Do you recall anything he said about that?

11  A    As far as?

12  Q    Anything about this new venture, this new method of

13  practicing law.

14  A    I tried not to talk to him very much, but what he

15  had -- what he had said on one of his trips was his goal

16  was $10,000 a day, to have a mailing of these letters.

17  Q    What letters?

18  A    To people that illegally downloaded on the

19  Internet.

20  Q    Did he explain what these letters would say and who

21  these letters would be sent to?

22  A    I am not very Internet savvy myself, so it would be

23  whoever downloaded something that they weren't paying for

24  or illegal.  I don't know exactly how this works.  That

25  he would just send out a letter stating that if they

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/22/2013 9:27:34 AM
Hennepin County Civil, MN

1   didn't send a check for a certain amount, that he would

2   make it public to these people's family and friends what

3   they were looking at.

4   Q      I see.  Okay.  Is that all you can remember him

5   saying about this new venture?

6   A      At this time.  Yes.

7   Q      All right.  Now, let's put this in context.  He

8   basically told you that if you started getting any

9   inquiry, that you were to, what, call him or direct the

10  callers to him?

11  A      To contact personally, personally contact him.

12  Q      Okay.  Now, back up.  If you received any calls or

13  inquiries regarding what?

14  A      He said anything that seemed out of place.

15  Q      And you took that to mean what?

16  A      I took that to mean the very next day I went and

17  talked to my father-in-law which is a retired sheriff and

18  talked to him, and he said until anybody contacts you, he

19  goes we have nothing to go to the court system with.

20  Q      And did that change?

21  A      I never heard anything from anybody.

22  Q      All right.  So no one ever contacted you?

23  A      No.

24  Q      And so what is it that made you go off and hire

25  Mr. Paul Godfread?

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/22/2013 9:27:34 AM
Hennepin County Civil, MN

1    A    I had received a text asking if this was my

2    signature on a particular document, and I said no.  And

3    that is when I was given a number to call an attorney to

4    make sure that this didn't come back towards me.

5    Q    All right.  I am going to assume that that copy of

6    that document is probably in court; right?

7         MR. PIETZ:  Referring now to the copyright

8    assignment agreement, your Honor?

9         THE COURT:  Right.

10        MR. PIETZ:  Correct, your Honor.

11        THE COURT:  Okay.  Let me turn this over to you,

12   sir.  Go ahead.

13        MR. PIETZ:  Okay.  Thank you, your Honor.

14             If it please the court, I have some documents

15   which I can show on the monitor including to Mr. Cooper.

16   I just want to make sure we have both the copyright

17   assignments.

18        MR. PIETZ:  Are the monitors arrayed so that the

19   court can see them?

20        THE COURT:  Yes.  The court has its own.  We got

21   that before the sequester.

22        MR. PIETZ:  All right.

23                    DIRECT EXAMINATION

24   BY MR. PIETZ:

25   Q    Mr. Cooper, my name is attorney Morgan Pietz.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1   Thank you for coming here today.

2          Did anyone ever ask you to become a corporate

3   representative of AF Holdings LLC?

4   A     No.

5   Q     Did anybody ever ask you to become a corporate

6   representative of Ingenuity 13 LLC?

7   A     No.

8   Q     Mr. Cooper, now, I would like to show you some

9   documents, and Mr. Ranallo I believe just passed out

10  copies of the first.  So what we have here is a

11  complaint.

12         It is one of the consolidated cases presently

13  before the court.  For the record, it is Civil Action No.

14  212 CV 6636, an action filed here in the Central District

15  of California.

16         Mr. Cooper, have you ever seen this complaint

17  before?

18  A     No.

19  Q     I am going to skip now to the last page of this

20  complaint or actually it is not quite the last page.  It

21  is the last page of the main document, or, sorry, it is

22  actually Exhibit B to the complaint.  Here is the first

23  page of Exhibit B, now, Mr. Cooper.

24         It says copyright assignment agreement on the

25  top, and then I will note for the record that the

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/23/2013 9:27:34 AM
Hennepin County Civil, MN

1    copyright at issue is Popular Demand which it states in

2    the first paragraph.  Moving down to the second page of

3    the agreement, Mr. Cooper, you will note that there is a

4    signature on the right where it says Alan Cooper.

5         Is that your signature, sir?

6    A    No.  That is not.

7    Q    You are quite sure about that?

8    A    Yes.  I use a middle initial.

9    Q    Mr. Cooper, I would like to show you a similar

10   document which has appeared in a different case.  What we

11   have here is a copyright assignment agreement.  This is

12   for a different AF Holdings copyright styled Sexual

13   Obsession which it lists in the first paragraph.  For the

14   record, this is Northern District of California No. 12 CV

15   2048.

16        Mr. Cooper, I am going to turn now to the

17   second page of this copyright assignment agreement, or I

18   guess it would be the third page.  There is a signature

19   there on the right that says Alan Cooper.

20        Is that your signature, sir?

21   A    No, it is not.

22   Q    Did anybody ever ask you to become a corporate

23   representative or otherwise involved with a company

24   called AF Films LLC?

25   A    No.

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/23/2013 9:27:34 AM
Hennepin County Civil, MN

1  Q     And you are quite sure that is not your signature?

2  A     Very sure it is not mine.

3  Q     Mr. Cooper, I would like to show you now another

4  document, and I will note for the record that this is a

5  verified petition to perpetuate testimony filed in the

6  Eastern District of California, 12 CV 8333, have you ever

7  seen this document before, Mr. Cooper, prior to within

8  the last couple of days?

9  A     No.

10       MR. WAXLER:  Your Honor, I would like to object to

11  that question.

12       THE COURT:  Object to the question as to whether

13  or not he has seen the document?

14       MR. WAXLER:  Well, this inquiry is beyond the

15  scope of the OSC.  The OSC is about four cases that was

16  filed in the Central District of California.  Now, we

17  have heard about a Northern District case and Eastern

18  District case that he is being questioned about which we

19  did not address in our papers, and it is not what this

20  OSC is about.

21       THE COURT:  Well, it has become about it.  It has

22  become about fraudulent filings in federal court.

23       MR. PIETZ:  I would add, your Honor, that it all

24  goes to a pattern and practice.

25  Q     Mr. Cooper, looking now at the verified petition, I

Filed in Fourth Judicial District Court
7/23/2013 9:27:34 AM
Hennepin County Civil, MN

1  am going to skip to the last page.  You will note that it

2  is signed by Mr. Gibbs.  On this page which reads at the

3  top notarized verification, there is a slash S,

4  type-printed signature that says Alan Cooper, and it says

5  Alan Cooper, Manager of Ingenuity 13 LLC.

6         Did you ever sign a notarized verification for

7  this document?

8  A    No, I did not.

9  Q    Did you ever give anyone permission to sign your

10  name for you on this document?

11  A    No.

12       MR. PIETZ:  Mr. Ran, would you pass out Exhibit

13  53.  I will note for the record that I am moving now to

14  what has been previously filed with this court as Exhibit

15  S which is the declaration of Nicholas Ranallo in

16  opposition to a motion to shorten time filed in the

17  Northern District of California.  And I am going to move

18  now to an exhibit to this motion.

19       It is actually the second to last page in that

20  filing, Exhibit S, and what we are looking at is a

21  business entity detail for an entity called VPR, Inc.

22  from the Minnesota Secretary of State website.

23  Q    Mr. Cooper, you will note there that under

24  officers, it says Alan Cooper and it lists an address of

25  4532 East Villa Teresa Drive, Phoenix, Arizona, 85032.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1     Mr. Cooper, have you ever been to Arizona?

2 A  No, I haven't.

3 Q  So that is not your residence, is it?

4 A  No.

5 Q  Do you have any knowledge of that address

6 whatsoever?

7 A  No, I do not.

8 Q  Did anybody ever ask you to be the president of

9 VPR, Inc.?

10 A  No.

11 Q  Did anybody ask you to be any other role in

12 connection with that company?

13 A  No.

14 Q  Mr. Cooper, I am going to move now to what has been

15 previously identified in the record as Exhibit T.  What

16 we have here is a notissues.com registration.

17    Mr. Cooper, did you ever register an Internet

18 domain name called notissues.com or perhaps it is

19 pronounced notissues.com?

20 A  No, I did not.

21 Q  I am going to zoom in now.  Mr. Cooper, I will note

22 that on the second page it says registrant Alan Cooper,

23 and it lists that same Phoenix address that we mentioned

24 a moment ago.  Am I correct in presuming that there where

25 it says administrative contact, and it lists the e-mail

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1   address, johnsteele@gmail.com.  Am I correct in assuming

2   that johnsteele@gmail.com is not your e-mail address,

3   Mr. Cooper?

4   A     No, it is not.

5   Q     Mr. Cooper, after you hired attorney Paul Godfread,

6   and he let the other side know that he was going to be

7   representing you in actions in Minnesota, did you hear

8   from John Steele?

9   A     Yes.  He called me twice and left two voicemails

10  and sent me two texts.

11  Q     So this was after Mr. Godfread let Prenda know that

12  he was your attorney; isn't that correct?

13  A     Yes.

14  Q     How many times in a row did Mr. Steele call you

15  when that happened?

16  A     I think five or six times right in a row.

17  Q     And that was, more or less, to your understanding,

18  was that more or less immediately after your attorney

19  Paul Godfread let the other side know that he was going

20  to be representing you?

21  A     Yes.  It was right after Paul let him know.

22  Q     Within a matter of minutes, would you say, sir?

23  A     Yes.

24  Q     Have you heard from Mr. Steele recently,

25  Mr. Cooper?

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/22/2013 9:27:34 AM
Hennepin County Civil, MN

```
 1   A     He had left two other voicemails on my phone and

 2   two other texts within the last couple of weeks, I think

 3   it was.

 4   Q     And, more recently than that, have you heard from

 5   him again?

 6   A     Yes.  Yeah.  There was a two week spell between

 7   them that he had called me twice.

 8   Q     And, Mr. Cooper -- pardon me, I didn't mean to

 9   interrupt you.  Go ahead, sir.

10   A     He left four voicemails altogether and four text

11   messages.

12   Q     And, Mr. Cooper, my understanding is that you

13   brought copies of these voicemails to potentially play

14   for the court; is that correct, sir?

15   A     Yes.

16   Q     If the court will indulge me a moment, I will play

17   those into the microphone for the record.

18         THE COURT:  Okay.

19         MR. PIETZ:  If it is okay with the court, I would

20   like to ask Mr. Stoltz to assist me with this.  He is the

21   brains of the operation on the technology here.

22             Apologize, your Honor.  We are starting from

23   the beginning.

24         (Audio recording played.)

25   Q     BY MR. PIETZ: Mr. Cooper, have you spoken with John
```

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1    Steele enough times to recognize his voice?

2    A     Oh, yeah.  That is his voice.  That is him.

3    Q     So that was Mr. Steele on those recordings that we

4    just heard a moment ago?

5    A     Yes.

6    Q     The three lawsuits that Mr. Steele was referring

7    to, do you think he means the three defamation cases

8    recently filed against you and your attorney, Paul

9    Godfread by John Steele, Paul Duffy and Prenda Law in

10   Florida, the Northern District of Illinois and the

11   Central District of Illinois?  Do you think that is what

12   he was talking about?

13   A     Yes.

14   Q     Mr. Cooper, I, for my part, don't have anything

15   further.  Perhaps the court does, but, before I step

16   down, I would like to thank you for coming here today?

17        THE COURT:  Thank you, counsel.

18        MR. BRODSKY:  Very briefly, your Honor.  Thank

19   you.

20

21                CROSS-EXAMINATION

22   BY MR. BRODSKY:

23   Q     Mr. Cooper, you have never met Mr. Gibbs; is that

24   correct?

25   A     Yes.

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/25/2013 9:27:34 AM
Hennepin County Civil, MN

1    Q     And you have never spoken to him as well; is that

2    correct?

3    A     No, I have not.

4    Q     And you have exchanged no correspondence with him

5    whatsoever; is that correct?

6    A     That is correct.

7    Q     Do you know a gentleman by the name of Grant Berry,

8    B-E-R-R-Y?

9    A     Yes, I do.

10   Q     Who is Mr. Berry?

11   A     He is the one that introduced me to John when I was

12   selling my house.

13   Q     And what type of relationship if any do you have

14   with Mr. Berry?

15   A     He was the realtor for -- he was a realtor that I

16   had for selling my house.

17   Q     And did you ever tell or ask Mr. Steele in

18   Mr. Berry's presence how is my porn company doing?

19   A     No, I have not.

20   Q     You sure about that?

21   A     Yes.

22        MR. BRODSKY:  Thank you, your Honor.  Nothing

23   further.

24        THE COURT:  All right.  Same questions that he

25   asked with respect to -- what about Mr. Paul Duffy, do

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/22/2013 9:27:34 AM
Hennepin County Civil, MN

1   you know him?

2          THE WITNESS:  No, I do not.

3          THE COURT:  Ever heard of him?

4          THE WITNESS:  Through these things that are going

5   on, yes.

6          THE COURT:  All right.

7          THE WITNESS:  That way only.

8          THE COURT:  All right.  Anyone else?

9          MR. PIETZ:  Your Honor, just very briefly, as a

10   technical matter, I would like to ask that the documents

11   I went through with Mr. Cooper be admitted into evidence.

12          That was the copyright assignment with Popular

13   Demand.  I would ask that that be admitted into evidence

14   as Exhibit 1.  The copyright assignment agreement for

15   sexual obsession, I would ask that that be admitted as

16   Exhibit 2.  The verified petition in the Eastern District

17   of California matter previously identified in this action

18   as Exhibit L, I would ask that it be admitted now as

19   trial Exhibit 3.  The declaration from Mr. Ranallo which

20   has the printout for VPR, Inc. previously filed here as

21   Exhibit S, I would ask that be admitted as trial Exhibit

22   4.  And the notissues.com registration previously

23   identified here as Exhibit T, I would ask be admitted as

24   trial Exhibit 5.

25          THE COURT:  Any objection?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1     MR. BRODSKY:  Yes, your Honor.  As to Exhibits 3,

2   4 and 5, we would object on the ground of relevance.

3     THE COURT:  Sustained.  All right.  Everything

4   else comes in.  What about the audio?  Is there a

5   transcript of the audio?

6     MR. PIETZ:  Your Honor, we can prepare it.

7     THE COURT:  Would you.  Thank you.

8     MR. PIETZ:  We would be happy to, and we will

9   lodge it with the court, your Honor.

10     THE COURT:  Thank you.  Okay.  That will be

11  received as well.

12       All right.

13       Anything, gentlemen?  Nothing.

14       You may step down, sir.  Appreciate you

15  coming.

16     MR. PIETZ:  Your Honor, at this time, I think it

17  might be helpful for me to suggest a few other things

18  that I am prepared to discuss today for the court.  We

19  have heard from Mr. Cooper.

20       What I might propose now is turning to

21  Mr. Gibbs.  Mr. Gibbs has noted in his declaration or

22  attempted to characterize himself as merely a, quote,

23  independent contract attorney for Prenda Law.  I am

24  prepared to present evidence today showing that, in fact,

25  Mr. Gibbs is really what amounts to a de facto chief

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/23/2013 9:27:34 AM
Hennepin County Civil, MN

1   operating officer of Prenda Law.  And I have a number of

2   documents and exhibits I am prepared to go through with

3   Mr. Gibbs on that account.

4         In addition, I am prepared to show through

5   cross-examination of Mr. Gibbs that his investigation in

6   these cases was objectively unreasonable.  Although I was

7   not able to contact Mr. Larguire(phonetic) or Mr. Denton,

8   a former client of mine in a previous case who was

9   previously named by Mr. Gibbs as a result of what I view

10  as a shoddy online investigation is here to testify that

11  the main fact that Mr. Gibbs relied upon in that case

12  turned out to be completely incorrect.

13        Fourth, your Honor or I should said say third,

14  there are representatives here today from both AT&T and

15  Verizon who can conform that the court's discovery orders

16  were unambiguously violated in this case.

17        Fifth, and, finally, your Honor, if the court

18  is inclined to hear it, I am prepared to explain my

19  understanding of how Prenda is organized and present

20  evidence showing that the court does indeed have personal

21  jurisdiction over Mr. Steele, Mr. Duffy, Mr. Paul

22  Hansmeier and Ms. Angela Van Den Hemel.

23        THE COURT:  Let's begin with the ISP's.

24        MR. PIETZ:  Very well, I would ask now that

25  Mr. Huffman come forward.  Is he here?

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/29/2013 9:27:34 AM
Hennepin County Civil, MN

1    (The witness was sworn.)

2   THE CLERK:  Please have a seat.

3    Please state your full and true name for the

4 record, and spell your last name?

5   THE WITNESS:  My name is Bart Huffman,

6 H-U-F-F-M-A-N.

7   THE COURT:  One second.

8   THE CLERK:  Counsel, I think we are going to first

9 have our 2:30 matter.  I think it will be a little

10 shorter.  So I am going to call the next matter and then

11 we will have you guys come back.

12   (Recess from 2:30 to 2:31 p.m.)

13   THE COURT:  Okay.  Sorry for the interruption.

14 Let's go back on the record in the AF Holdings, Ingenuity

15 13 LLC.

16    All right.  Go ahead, counsel.

17   MR. PIETZ:  Thank you, your Honor.

18

19       DIRECT EXAMINATION

20 BY MR. PIETZ:

21 Q  Mr. Huffman, what is your job, sir?

22 A  I am an attorney.

23 Q  With what firm?

24 A  Lock Lorde.

25 Q  And do you represent AT&T in that capacity, sir?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/20/2013 9:27:34 AM
Hennepin County Civil, MN

1   A      Yes, I do.

2   Q      And how long have you been -- how long have you

3   been representing AT&T, sir?

4   A      I have been representing AT&T for about six or

5   seven years, I suppose.

6   Q      And do you have personal familiarity with matters

7   before AT&T that involve the Prenda law firm?

8   A      I do.

9   Q      So on a day-to-day basis over the past few years,

10  have you handled Prenda matters for AT&T?

11  A      A number of them.

12  Q      Very well.  You prepared a declaration which I

13  submitted with the court in this matter; isn't that

14  correct, sir?

15  A      That is correct.

16  Q      And that declaration was based on an investigation

17  performed by your client, AT&T; is that correct?

18  A      Well, that declaration recounts a series of events

19  where Angela Van Den Hemel who has contacted us on a

20  regular basis to follow-up on subpoenas contacted us with

21  respect to the subpoenas in the case that was

22  consolidated with others in this proceeding.  And as we

23  looked into it, we discovered that the case had been

24  stayed as far as discovery goes.

25  Q      So you are familiar, then, with this court's

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1   October 19th, 2013 discovery order vacating the subpoenas

2   in the AF Holdings cases now before this court?

3   A    Yes.

4   Q    And as far as AT&T is aware, did Prenda in fact

5   stop seeking subpoena returns on the cases consolidated

6   before this court after October 19th, 2013?

7        MR. WAXLER:  Calls for speculation.

8        THE WITNESS:  I am not aware that they did.  AT&T

9   did not, to my knowledge, receive any notice of the order

10  and furthermore Ms. Van Den Hemel, I think I am saying

11  her name right, contacted us seeking to follow-up and

12  obtain information presumably with respect to the

13  subpoenas in that case.  And we received, I should add,

14  we received, I and my firm receive the information pretty

15  much directly as it comes in from CT Corporation so with

16  respect to these type of subpoenas.

17  Q    BY MR. PIETZ: So with respect to these type of

18  subpoenas, then, the receipt or non receipt by AT&T would

19  come into your office; is that correct?

20  A    Typically, it would.

21       MR. WAXLER:  Calls for speculation.

22       THE COURT:  Hang on.  What is your objection?

23       MR. WAXLER:  Calls for speculation, your Honor.

24           This witness is being asked to say whether

25  AT&T received something, and I think that is speculative

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/22/2013 9:27:34 AM
Hennepin County Civil, MN

1   for him to be able to testify as to whether AT&T might

2   have received it or not.

3        THE COURT:  I understood it to be how mail is

4   handled in his office, but let's walk through it again.

5        MR. PIETZ:  Very well.

6   Q     So did your office receive a copy of the

7   October 19th, 2013 order vacating the subpoenas in this

8   case?

9   A     Not independently.  When we looked on Pacer as

10  we -- we routinely do with respect to production requests

11  and the like, we found the order.

12  Q     So your office was not served by Prenda or anybody

13  affiliated with Prenda with this court's October 19th

14  discovery order?

15  A     That is correct.

16  Q     And did you investigate with your client, AT&T, as

17  to whether or not AT&T received a copy of the court's

18  October 19th order?

19  A     I did not specifically ask them that, no.

20  Q     And were you contacted only the once by Angela

21  Van Den Hemel regarding the court's October 19th order in

22  this action?

23  A     No.  She contacted my paralegal twice and my

24  paralegal would routinely refer those type of inquiries

25  to me.

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/23/2013 9:27:34 AM
Hennepin County Civil, MN

1  Q     So she actually asked twice for subpoena returns to

2  be made after the October 19th discovery order?

3  A     That's correct.  And when I looked at the Pacer

4  records and saw the order, I then responded to

5  Ms. Van Den Hemel saying that the discovery had been

6  stayed and we of course would not be producing discovery

7  in the case at that time.

8         MR. PIETZ:  I would ask that the declaration of

9  Bart Huffman be admitted as evidence in this hearing.  I

10  think we are on Exhibit 6.

11         THE COURT:  Okay.

12         THE WITNESS:  And would you also want to have the

13  declaration of my paralegal admitted as well?

14         MR. PIETZ:  Yes.  I would ask as well that that be

15  admitted as Exhibit 7.  It is the next filing on the

16  docket.

17         THE WITNESS:  Camille Kerr.

18  Q     BY MR. PIETZ:Could you spell her name for the

19  record.

20  A     Certainly.  C-A-M-I-L-L-E, K-E-R-R.

21         THE COURT:  All right.  Any objection, gentlemen?

22         MR. BRODSKY:  Is she going to be testifying, your

23  Honor?

24         THE COURT:  I have no idea.

25         MR. BRODSKY:  Object on the ground of hearsay.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1       THE COURT:  Is she here?

2   Q    BY MR. PIETZ: Mr. Huffman, is Ms. Kerr here today?

3   A    Ms. Kerr is not here today.  I can testify though

4   that I oversaw and reviewed all of the items stated in

5   her declaration, and they are part of our regularly kept

6   records and they are consistent with our files, were

7   overseen by me at every single step and reviewed and they

8   are, in fact, true and correct.

9   Q    So you are personally familiar with the facts in

10  Ms. Kerr's declaration?

11  A    I am, and I reviewed it in detail.

12      THE COURT:  What is the substance or the subject

13  matter?

14      THE WITNESS:  Ms. Kerr submitted a separate

15  declaration simply because she was the addressee on the

16  e-mails from Ms. Van Den Hemel.

17      THE COURT:  All right.  And her declaration

18  attests to?

19      THE WITNESS:  Her declaration attests to the truth

20  and authenticity of the e-mails that I attached thereto.

21      THE COURT:  That is all?

22      THE WITNESS:  That is all.

23      THE COURT:  All right.  I will permit it.  Okay.

24      Gentlemen?

25      MR. BRODSKY:  No questions, your Honor.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/25/2013 9:27:34 AM
Hennepin County Civil, MN

1      THE COURT:  All right.  Sir, you may step down.

2  Thank you.

3      THE WITNESS:  Thank you, your Honor.

4      THE COURT:  I do have one question.

5  Ms. Van Den Hemel, when you advised her that you had

6  learned from Pacer of the court's order quashing those

7  subpoenas, did she sound surprised?

8      THE WITNESS:  She never responded at all.

9      THE COURT:  All right.  Thank you.

10     MR. PIETZ:  Your Honor, also in attendance today

11  is an attorney for Verizon, Mr. Benjamin Fox.  If it

12  please the court, I would suggest we offer him.

13     THE COURT:  Yes.  Please.

14     (The witness was sworn.)

15     THE CLERK:  Please have a seat.  And please state

16  your full and true name for the record and spell your

17  last name.

18     THE WITNESS:  Benjamin Fox, F-O-X.

19

20                 DIRECT EXAMINATION

21  BY MR. PIETZ:

22  Q     Mr. Fox, what is your occupation, sir?

23  A     I am a partner at Morrison and Foerster here in Los

24  Angeles.  I am a lawyer.

25  Q     And do you represent Verizon in that capacity?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/23/2013 9:27:34 AM
Hennepin County Civil, MN

1   A      I do.

2   Q      And how long have you represented Verizon in that

3   capacity?

4   A      I can't tell you the date.  I know that the first

5   matter was the Eastern District of California Rule 27

6   proceeding filed by Ingenuity 13, and that is the case

7   that you had a copyright assignment for that you showed

8   earlier this afternoon.

9   Q      So you appeared on behalf of Verizon in that Rule

10  27 petition action in the Eastern District of California;

11  is that correct?

12  A      Correct.

13  Q      And I believe that was in 2011.  Since then, have

14  you had occasion to deal with litigation matters

15  involving the Prenda law firm?

16  A      Yes.

17  Q      So you have handled those issues for Verizon on a

18  day-to-day basis in the past two years?

19  A      Yes.  Many of them.

20  Q      Very well.  You prepared and submitted, filed, I

21  should say, a declaration with the court earlier today;

22  isn't that correct, sir?

23  A      I prepared for Verizon and obtained a signature

24  from Mr. Sean Moriarty who is a Verizon representative in

25  Arlington, Virginia.  Yes.

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1   Q     So you are familiar with the facts that were

2   averred in the declaration filed with the court today?

3   A     Yes, I am.

4   Q     And did you investigate whether the facts are

5   correct prior to filing the document here today?

6   A     I did.

7   Q     And can you explain to me the substance of the

8   declaration with respect to whether or not Verizon

9   received a copy of the court's October 19th discovery

10  order?

11  A     Sure.  Verizon has been the recipient of I think

12  literally hundreds of subpoenas from the Prenda firm, and

13  Verizon is a party in a DC Circuit appeal where AF

14  Holdings was the plaintiff based on one of the copyright

15  assignments that bears the name of Mr. Cooper.  Verizon

16  is very focused on what has been happening in these cases

17  and has been paying close attention to it.

18        So if Verizon had received the October 19

19  order from this court, Verizon would have known that, and

20  I would have received it as well.  My e-mail doesn't have

21  any record of it.  I have searched.  I know that Verizon

22  has now searched.  Is there some theoretical possibility

23  that maybe it was sent to someone at Verizon and not

24  forwarded to the correct people?  Possible.  But having

25  not seen anything from Mr. Gibbs that suggests it was

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/23/2013 9:27:34 AM
Hennepin County Civil, MN

1  sent, you know, my conclusion is that it was not sent to

2  Verizon.

3  Q    So, then, in terms of the usual channels, the

4  custom and practice, the way subpoenas would normally

5  come in from Verizon, did you check all of these means of

6  receiving subpoena information?

7  A    I checked.

8       MR. WAXLER:  Calls for speculation, your Honor.

9       MR. PIETZ:  Let me rephrase.

10      THE COURT:  What is your objection?

11      MR. WAXLER:  Calls for speculation.  He is asking

12  this witness to speculate about what Verizon's policies

13  are in receiving subpoenas.

14      THE COURT:  I thought you were talking about

15  Morrison and Foerster's policy.

16      MR. PIETZ:  That's right.  I will rephrase and

17  make it more clear, your Honor.  Let me rephrase.

18  Q    So did you personally check Morrison and

19  Foerster's, the way that Morrison and Foerster would

20  normally receive information about a subpoena?  Did you

21  check and make sure that no notice was received of the

22  October 19th discovery order?

23  A    Yes.  I made a reasonable search, and I looked

24  wherever that I thought was appropriate to look.

25  Q    And you communicated with your client that you --

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/23/2013 9:27:34 AM
Hennepin County Civil, MN

1   well, let me back up.

2            The gentleman who executed the declaration

3   that was filed with the court today, what was his name,

4   again, sir?

5   A     Sean Moriarty.

6   Q     And is that somebody you normally communicate with

7   these type of matters.

8   A     Yes.

9   Q     And you spoke with Mr. Moriarty, and can you

10  explain, did you have him investigate, from Verizon's

11  end, whether notice was received?

12  A     The Verizon team investigated.  Yes.

13  Q     Including Mr. Moriarty?

14  A     Yes.

15  Q     Very well.  And so, then, to the best of your

16  knowledge, based on both his investigation and a review

17  of Morrison and Foerster's own records, Verizon did not

18  receive a copy of the October 19th discovery order; isn't

19  that correct?

20       MR. WAXLER:  Your Honor, it is basically taking

21  hearsay.  Calls for speculation.  He is asking the

22  witness what Verizon did.  Verizon has given a

23  declaration that says it does not appear.

24       THE COURT:  Overruled.

25       THE WITNESS:  Correct.

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1    Q    BY MR. PIETZ: I would ask, then, that the

2    declaration submitted by Mr. Moriarty with the court

3    earlier today be admitted into evidence as Exhibit 7.

4    Sorry.  Pardon.  Exhibit 8.

5         THE COURT:  It will be admitted.

6              All right.  Mr. Brodsky, do you wish to

7    inquire?

8         MR. BRODSKY:  I do not, your Honor.  I have no

9    questions.

10        THE COURT:  Sir, you may step down.

11        THE WITNESS:  Thank you.

12        THE COURT:  All right.  Now, I would also like to

13   hear from your former client?

14        MR. PIETZ:  Very well.  Mr. Nason, are you in

15   attendance today?

16        (The witness was sworn.)

17        MR. WAXLER:  Your Honor, I would object to this

18   line of questioning please.

19        THE COURT:  He hasn't asked any questions yet.

20        MR. WAXLER:  I know that, but this witness has no

21   relevant testimony to this subject matter.  He is not a

22   party to any of the four cases at issue in this OSC.  It

23   is not even a federal court case that he was a defendant

24   in, your Honor.  He has no relevant testimony that he

25   could state in connection with this OSC.

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1    THE COURT:  Maybe yes.  Maybe no.  If we are

2    talking about a pattern and practice, and from what I

3    have seen, this is a cookie-cutter litigation.  Sometimes

4    the only thing that I see changed on the complaints are

5    the ISP's addresses and the name of the film, but, in all

6    other respects, they seem to be all the same even the

7    declaration from the technical expert as to what he did

8    in order to identify the infringer.  It is the same

9    document.  So I hear your point.  If I don't find it to

10   be relevant, I will discard it.

11        MR. WAXLER:  Your Honor, just for the record,

12   Mr. Gibbs' declaration does go through exactly the

13   different things that he did in order to determine

14   whether in the two cases that you cited in the OSC

15   whether he was able to locate the infringer and who that

16   was.  And there is nothing cookie cutter about that

17   effort that he put in his declaration.

18        THE COURT:  All right.  Thank you.

19            Go ahead.

20        THE CLERK:  Please state your full and true name

21   for the record and spell your last name.

22        THE WITNESS:  Jessie Nason.  That is N like Nancy,

23   A-S-O-N.

24        THE COURT:  Go ahead, counsel.

25            Is that one S or two?

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1          THE WITNESS:  One S.

2          THE COURT:  All right.

3          THE WITNESS:  Well, two in Jessie.  Sorry.

4

5                    DIRECT EXAMINATION

6  BY MR. PIETZ:

7  Q     Mr. Nason, have you heard the name Brent Gibbs

8  before?

9  A     Yes.

10  Q     And in what context, sir?

11  A     He was the lawyer who brought the case against me,

12  Lightspeed Media versus my name.

13  Q     And where was that -- and I represented you in that

14  case, did I not, sir?

15  A     Correct.

16  Q     And was that in the Los Angeles Superior Court

17  filed in 2012?

18  A     Yes.

19  Q     I will note for the record that the case is

20  Lightspeed Media Corporation versus Jessie Nason, Los

21  Angeles Superior Court No. NC057950.

22          MR. WAXLER:  Your Honor, I would like to object

23  again.  This case is not even a copyright case.  It was a

24  case where the individual here was alleged to --

25          THE COURT:  Where are you from?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1        MR. WAXLER:  I am from Los Angeles, your Honor.

2        THE COURT:  There are no speaking objections in

3   Los Angeles.

4        MR. WAXLER:  I'm sorry, your Honor.

5        THE COURT:  Okay.  What is this case about?

6        MR. PIETZ:  Your Honor, if I might speak to that

7   very briefly.  What we have seen from Prenda Law is a

8   slightly different twist in some of their cases on

9   copyright litigation, and what it is is essentially an

10  attempt to address a copyright infringement case in state

11  law clothing, well, state law and the Computer Fraud and

12  Abuse Act.

13       So the causes of action at issue in the

14  Lightspeed case was a computer fraud and abuse act claim

15  which essentially alleges that downloading and

16  distributing content, and the content is nebulously

17  specified in the complaint amounts to Computer Fraud and

18  Abuse Act violations.  And then there were a variety of

19  related claims all of which were preempted by the

20  Copyright Act for conversion, unjust enrichment and the

21  like.  But, really, what it was, and, in fact, and I can

22  speak to this longer although perhaps it is getting off

23  on a tangent, in reality what happened, was at some point

24  somebody probably hacked into a password protected

25  website, but, then, Prenda started logging IP addresses

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/24/2013 9:27:34 AM
Hennepin County Civil, MN

```
 1    and suing people in CFAA claims even though really the

 2    gravamen of the case was the use of BitTorrent.  So it is

 3    similar, but, in any event, the issue in Mr. Nason's case

 4    that I think is relevant here is the same, and that

 5    specifically what was the investigation that was

 6    performed prior to naming Mr. Nason as the defendant in

 7    the case, and it is fairly bread and butter.

 8         THE COURT:  Okay.  Go ahead.

 9    Q    Mr. Nason, are you familiar with the reason that

10    Mr. Gibbs stated that he had named you as a defendant?

11    A    Yes.

12         MR. WAXLER:  Calls for speculation.

13         THE COURT:  He said stated.  You did say stated;

14    right?

15         MR. PIETZ:  Yes, your Honor.

16         THE COURT:  All right.  Overruled.

17    Q    BY MR. PIETZ: So, in any event, what was that

18    reason, Mr. Nason.

19    A    I believed it to be that he supposed I lived by

20    myself in my apartment, and so he considered me a single

21    male.

22    Q    And, Mr. Nason, is that correct?  Do you live

23    alone?

24    A    No, I do not.

25    Q    And who do you live with, Mr. Nason?
```

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1   A      My wife of nine years.

2   Q      And have you lived with her for the past

3   nine years?

4   A      Correct.

5   Q      So, at any point, you know, save perhaps for a

6   vacation, consistently for the past nine years, you have

7   always lived with your wife; is that correct?

8   A      That's correct.

9        MR. PIETZ:  That is essentially all I need from

10  Mr. Nason, your Honor.  I might have some questions about

11  Mr. Gibbs, or perhaps now I could show the court the

12  section of the transcript from the hearing in the Nason

13  matter where Mr. Gibbs, when pressed by the court as to

14  how it is and why it is he justified having named

15  Mr. Nason as a defendant, Mr. Gibbs specifically stated,

16  well, because we determined that he lived alone.  It is

17  just incorrect.  And, indeed, the court denied my motion

18  on that basis even though it turned out to be incorrect.

19       MR. BRODSKY:  Your Honor, for the record, may we

20  move to strike the testimony on the ground that it is

21  irrelevant and beyond the scope of the court's OSC.

22       THE COURT:  You may step down, sir.  Thank you.

23       THE WITNESS:  Thank you.

24       MR. PIETZ:  I am looking now for the specific

25  section of the transcript.

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/22/2013 9:27:34 AM
Hennepin County Civil, MN

1    THE COURT:  Don't worry about it.

2    MR. PIETZ:  All right.  I can find it afterwards.

3 Thank you, your Honor.

4    THE COURT:  All right.  Let's now switch to the

5 jurisdictional issue.

6    MR. PIETZ:  Oh, you know what, your Honor, I have

7 here the actual original copy of the transcript which

8 perhaps I will lodge with the court and move to mark as

9 Exhibit 9, I believe we are on.

10    THE COURT:  Okay.

11    MR. PIETZ:  And, Mr. Ranallo, if you can find the

12 pin cite, we will go ahead and add it.

13    May I approach to give this to the clerk, your

14 Honor?

15    MR. WAXLER:  We would object to the inclusion of

16 that transcript as an exhibit.

17    THE COURT:  I will take a look at it.  We will

18 see.

19    Where was this?  Was this in Torrance?

20    MR. PIETZ:  Yes, it was, your Honor.  Judge

21 Vicencia.

22    THE COURT:  Small world.  My old court reporter.

23 Okay.

24    MR. PIETZ:  I am just looking now for the diagram

25 which I think will assist in explaining all of this.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1         We seem to be a bit off kilter there, don't

2    we.  Interesting.  Well, in any event --

3         MR. WAXLER:  What exhibit is this?

4         MR. PIETZ:  Yes.  Marked as -- I will tell you in

5    just a moment.  Double H, previously on the record.

6         In any event, perhaps less useful than I hoped

7    it would be, but I can at least talk the court through

8    it.

9         THE COURT:  What is your source?  I mean,

10   electronic source?

11        MR. PIETZ:  This is a demonstrative exhibit, your

12   Honor.

13        THE COURT:  I know that.  What are you using,

14   laptop?

15        MR. PIETZ:  It is Trial Pad on my iPad, your

16   Honor.

17        THE COURT:  It is on your iPad?

18        MR. PIETZ:  Yes, sir.

19        THE COURT:  And you can't do anything to adjust

20   it?

21        MR. PIETZ:  We do have a color paper copy of the

22   document.  It will take just a moment to pull it.

23        THE COURT:  Okay.  Go ahead.

24        MR. PIETZ:  In any event, Mr. Ranallo, perhaps you

25   can look for that.

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/22/2013 9:27:34 AM
Hennepin County Civil, MN

1      MR. BRODSKY:  Your Honor, may I inquire of the

2  court for a moment?

3      THE COURT:  Sure.

4      MR. BRODSKY:  I am not quite sure what the

5  relevance of this is, the foundation for it or exactly

6  what counsel is doing.  It just seems to be his own

7  statement of his investigation.

8      THE COURT:  Do you know the general subject that

9  we are going to discuss now?

10      MR. BRODSKY:  I believe so, your Honor.

11      THE COURT:  Okay.  That is what I think it is, and

12  hopefully it will help him.  Now, when it gets down to

13  the source of this material and the accuracy of this

14  material, I hope I will be hearing from you gentlemen.  I

15  don't have the independent knowledge of this one way or

16  the other.  Thank God for the adversarial process.

17      MR. WAXLER:  Your Honor, so, then, should

18  Mr. Pietz be on the stand if he is going to give

19  essentially testimony about this exhibit?

20      THE COURT:  I don't make a habit of placing

21  lawyers under oath, but this case may change that.  I

22  figure officers of the court will not knowingly make

23  misrepresentations to the court, will they.

24      MR. WAXLER:  No, they won't.

25      THE COURT:  Until this case.

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/29/2013 9:27:34 AM
Hennepin County Civil, MN

1        MR. WAXLER:  My client hasn't in this case.

2        MR. PIETZ:  Your Honor, to explain what it is,

3    what I thought I might do is to give a very brief

4    overview of the organization, and, then, I thought I

5    would go through some specific documents about Mr. Steele

6    and a couple of arguments.  So this is really argument,

7    essentially, a couple of exhibits that go to Mr. Steele's

8    connection to the California as well as a couple of

9    points about Mr. Paul Hansmeier and Mr. Duffy.

10        THE COURT:  Okay.

11        MR. PIETZ:  So, in any event, this is a chart that

12    was essentially prepared.  This was prepared by my office

13    essentially as a tool to aid in the understanding of how

14    Prenda Law appears to have evolved over the past few

15    years.

16            Essentially, it started out here with Steele

17    Hansmeier, and John Steele -- I know that is a little

18    hard to see -- John Steele, Paul Hansmeier and Brett

19    Gibbs.  Mr. Steele and Mr. Hansmeier were the named

20    partners in the firm, and Mr. Gibbs was the of counsel

21    originally.  When they first started out, circa 2011 --

22        THE COURT:  I am going to have to stop you.  How

23    do you know that Mr. Gibbs was of counsel with Steele and

24    Hansmeier?

25        MR. PIETZ:  Your Honor, I can point to the

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1   specific exhibit, but there are pleadings of which the

2   court can take judicial notice where he is listed on the

3   pleadings as of counsel to Steele Hansmeier.

4        THE COURT:  You are aware of the fact that

5   Mr. Hansmeier doesn't know what capacity Mr. Gibbs was

6   working at his law firm?

7        MR. PIETZ:  Correct, your Honor.  So, in any

8   event, let me put it this way.  Mr. Gibbs filed documents

9   in federal court indicating on the caption that he was of

10  counsel to Steele Hansmeier.

11       THE COURT:  Okay.

12       MR. PIETZ:  Now, I believe I can also speak to

13  this if the court is so inclined that Mr. Lutz was

14  holding himself out to the world as a paralegal at that

15  time, working, according to Mr. Paul Hansmeier, solely

16  for Mr. Steele.  At this time, most of the lawsuits with

17  a few exceptions filed by Prenda around 2011 were on

18  behalf of a porno production, pardon me, adult

19  entertainment production company that actually people

20  have heard of before.  And that is this list of clients

21  here.

22            What happened is that sometime in 2012, the

23  Steele Hansmeier firm was disbanded or become Prenda,

24  sold its client book to Prenda Law.  We are not entirely

25  sure exactly the nature of the transaction, but, in any

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1   event, at that point, Paul Duffy became involved as the

2   nominal figurehead of the Prenda Law enterprise.

3   However, there are indications that Mr. Steele and

4   Mr. Hansmeier remain involved and Mr. Gibbs has declared

5   that he essentially continued on as of counsel handling

6   the same cases only now on behalf of Prenda Law, Inc.

7   rather than Steele Hansmeier LLC.

8           At the same time that Steele Hansmeier became

9   Prenda, sometime around, then, in 2012, I am not exactly

10  sure, Mr. Hansmeier started up his own shingle in

11  Minnesota, the virtual office called the Alpha Law Firm

12  LLC.  So, essentially, Mr. Hansmeier sometimes files

13  pleadings in federal court that list his affiliation as

14  Alpha Law Firm LLC, but, by the same token, Mr. Gibbs has

15  identified Mr. Paul Hansmeier as being the person from

16  whom he took direction at Prenda.

17          And, indeed, the court may recall from the

18  deposition transcript read over the weekend that

19  Mr. Hansmeier testified that, indeed, his clients

20  deposited their trust account funds into the Prenda Law

21  Firm account rather than to the Alpha Law Firm account.

22          THE COURT:  Stop.  I hate to interrupt you.

23          But she means more to me than this argument,

24  and we have had her going at light speed for an

25  hour-and-a-half.  Right.  So I am going to take a break,

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1   and we can all take a break.  How about 10 minutes.

2   Okay.

3        MR. PIETZ:  Very good.  Thank you, your Honor.

4        (Recess from 2:58 to 3:09.)

5        THE COURT:  All right.  Mr. Pietz.

6        MR. PIETZ:  Thank you.  I will attempt to keep

7   this section very brief, and then we will move on to some

8   documentary evidence.  This is just a summary.

9            So, as I was saying, sometime around 2012,

10  there was a bit of a shift in the Prenda business

11  strategy.  Mr. Hansmeier -- so what happened is these

12  companies, AF Holdings, LLC, Ingenuity 13 LLC and then

13  there is a couple of other companies which are the ones

14  in the CFAA cases.  That is Arte de Oaxaca LLC and Guava

15  LLC.  And the CFAA cases have primarily been filed in

16  state court and have indeed tried to use -- certain

17  states have presuit discovery procedures that are more

18  lenient than Federal Rule of Civil Procedure 27.  So it

19  is sort of a newer twist is these state court CFAA cases

20  and Arte de Oaxaca.

21           But, in any event, according to Mr. Hansmeier

22  in his deposition, these essentially shell company

23  plaintiffs are owned by a mystery trust.  Mr. Hansmeier,

24  as 30(b)(6) deponent -- well, anyway, I won't go into

25  that.  The court read it.  According to Mr. Gibbs'

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/22/2013 9:27:34 AM
Hennepin County Civil, MN

1   special counsel, though, on the same day, February 19th,

2   there is conflicting testimony essentially saying that

3   Livewire Holdings LLC is actually the current holder of

4   AF Holdings and Ingenuity 13.

5          So, in any event, these are the parent

6   companies, some mystery trust and Livewire Holdings LLC.

7   There is documents, you know, I had this sort of set

8   aside to potentially go through with Mr. Gibbs, but I can

9   also just show the documents, show what I have.  In any

10  event, there is documents showing Mr. Gibbs as in-house

11  counsel for Livewire Holdings.

12         There are various other connections between

13  Livewire Holdings and the attorneys we see over here.

14  Mr. Dugas is a local counsel who has worked at both

15  Prenda and Alpha Law which I can show through his

16  LinkedIn profiles, obviously, not central to the case.

17  Mr. Dugas' wife has been identified on LinkedIn as

18  in-house counsel for Livewire Holdings.

19         In addition, what I will talk about now is the

20  way that we see the lawyers.  Mr. Hansmeier has been both

21  30BC deponent for AF and as its counsel.  In any event,

22  what seemed to happen is that at some point these cases

23  filed on behalf of Ingenuity, AF Holdings, Arte de Oaxaca

24  and Guava LLC are cases where what appears to have

25  happened is the lawyers essentially took assignment of

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/22/2013 9:27:34 AM
Hennepin County Civil, MN

1   the underlying intellectual property rights in these

2   mysterious shell companies.  One recurring theme here is

3   the way that when we are seeing the straw men, there is

4   always a connection to John Steele.  So, for example, in

5   the VPR International, we see John Steele is the

6   attorney.  We see Alan Cooper listed on the corporate

7   registration.  The address listed for VPR International,

8   the 4532 East Villa Teresa Drive.  My understanding based

9   on documents that have been submitted with the court is

10  that is an address that comes up for John Steele's sister

11  and a gentleman named Anthony Saltmarsh, in addition, of

12  course, to being the address listed for Mr. Cooper.

13          So on various federal court filings in the

14  Northern District of California, all of which are

15  attached as exhibits to the deposition that was lodged

16  with the court which the court read over the weekend,

17  when pressed to identify the person at AF Holdings who

18  would be made available for an early neutral settlement

19  evaluation conference, there are various court filings

20  listing the owner of AF Holdings as somebody named Salt

21  Marsh, two words.

22          So, in any event, what seems to perhaps be the

23  case is that this Anthony Saltmarsh lived at this address

24  with John Steele's sister which was essentially used as a

25  front for various entities involved in Prenda activities.

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1    I don't want to spend too much time on just

2   the overview.  What I thought I might do is shift instead

3   to taking the nonappearing folks individually.  And I

4   thought I might start with Mr. Steele.  So I have some

5   documents which go to that, and I will switch back now

6   to -- okay.  There we go.  So I will note that in the

7   declaration submitted to the court by Mr. Steele on

8   Friday, he claims that he resides in the State of

9   Florida.

10    I will point out that when Mr. Steele was

11   under threat of sanction in the state of Florida, he

12   declared to the court there that he resided in the State

13   of Nevada and only visited the State of Florida.  So I

14   have here the affidavit of John Steele that he filed, and

15   you can see the file stamp on the top.  It is Middle

16   District of Florida, Case No. 812 CV 1685 that was filed

17   on December 20th, 2012.  And, in Paragraph 2, Mr. Steele

18   swore to the court that my legal residence is Las Vegas,

19   Nevada, and I also spend one to two weeks a month in

20   Miami, Florida.  So my understanding must be then that

21   sometime between last December and now Mr. Steele has

22   decided that his residence is not Nevada but rather

23   Florida.

24    In any event, and before moving on, I would

25   ask the court to take judicial notice of the fact that in

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1  the -- that this affidavit which was filed in the public

2  record in the Middle District of Florida that Mr. Steele

3  states that he spends one to two weeks a month in Miami,

4  Florida.  Mr. Ranallo can pass out copies of the

5  affidavit to everybody.

6         So, in any event, let's look at some other

7  documents about Mr. Steele.  And what I would start with,

8  I believe, is a declaration here, and I will ask

9  Mr. Ranallo again to pass this out for the court, the

10  declaration of Michael B. Stone, and what this

11  declaration is, the declaration itself is essentially

12  just authenticating the document, but the document at

13  issue is a collection of pleadings in a Northern District

14  of California action in which it was a case filed on

15  behalf of a Prenda client.

16         Well, this I think was an actual company that

17  people have heard of in an earlier case, but in any

18  event, here, we see the pleading.  So the declaration

19  authenticates it, and then Exhibit 1 is a copy of the

20  complaint which as we can see was filed in the United

21  States District Court for the Northern District of

22  California, and it is Civil Action No. 511 CV 3648.

23         Well, in any event, the interesting thing

24  about this complaint is who signed the subpoena that was

25  directed in this case at a John Doe defendant who resided

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1   in California.  And the answer, and here we see a copy of

2   the subpoena, pardon me, authenticated by Mr. Stone.

3   This is the letter that the ISP normally sends out, and,

4   here, we see a copy of the subpoena itself.  And this is

5   in the same action.

6          Then, we see, there, that this subpoena which

7   again was signed by John Steele in a California action

8   requesting information of a John Doe defendant in the

9   State of California.  So, essentially, I would ask that

10  this declaration of Michael Stone be admitted into

11  evidence as Exhibit, I believe, we are on 9.

12         Is that correct, Madam Clerk?

13         THE CLERK:  10.

14         MR. PIETZ:  Pardon me.  10.  I am one behind.

15         THE COURT:  All right.  Any objection?

16         MR. WAXLER:  Your Honor, I just question the

17  relevancy of it as to Mr. Gibbs.  Again, it is not one of

18  the cases that you put in your OSC.

19         THE COURT:  It will be admitted.

20         MR. PIETZ:  Similar document that I will move onto

21  next.  What we have here is a declaration which was filed

22  on the docket in a case in the Northern District of

23  California by a man named Samuel Teitelbaum.  It is

24  Northern District of California No. 311 CV 5628.  And we

25  can see here that it is pending in the Northern District

Filed in Fourth Judicial District Court
7/22/2013 9:27:34 AM
Hennepin County Civil, MN

1    of California.

2         In this declaration, Mr. Teitelbaum explains

3    that he received a letter directed to him in California

4    from Prenda Law and that the letter which was mailed to

5    him in California which is there is a copy of it right

6    here.  It is on Steele Hansmeier letterhead, and if we go

7    to the last page, we see that the letter, mailed into the

8    State of California in a case pending in the Northern

9    District of California, is signed by John Steele,

10   attorney and counselor at law.

11        So, in any event, I would ask that this be

12   admitted into evidence as Exhibit 11, and these both go

13   to showing that Mr. Steele has indeed reached into the

14   State of California in terms of his actions in BitTorrent

15   copyright litigation cases.

16        THE COURT:  All right.  Will be received.

17        MR. PIETZ:  So what I will do now, I think that

18   the other facts that I had already pointed out about the

19   other gentlemen who are not here today, so I mean Paul

20   Hansmeier and Paul Duffy, I pointed out in my opposition

21   to the objections which was filed on Friday, but, in

22   general, I would argue the jurisdictional issue as

23   follows.

24        What we have from Mr. Gibbs is a declaration

25   saying that anything that was potentially improper in

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/22/2013 9:27:34 AM
Hennepin County Civil, MN

1  these cases was done at the direction of his superiors at

2  the Prenda law firm.  He identifies those people as John

3  Steele and Paul Hansmeier.  Interestingly enough,

4  Mr. Duffy isn't on the list or perhaps maybe not as much.

5       Mr. Duffy has his California bar license in

6  the state of California and has substituted in in

7  Mr. Gibbs' place in a variety of actions in the Northern

8  District of California.  Mr. Hansmeier, in addition to

9  being identified by Mr. Gibbs as essentially running a

10  law firm doing business in California, flew to California

11  apparently of his own free will to appear as the

12  corporate 30(b)(6) deponent of AF Holdings LLC.  So we

13  have Mr. Hansmeier reaching into the state of California,

14  attending a deposition in California in a Northern

15  District of California case, representing essentially

16  that the same plaintiff that is at issue here, AF

17  Holdings LLC.

18       So at least with respect to Mr. Duffy who has

19  his bar license here and Mr. Hansmeier who flew here as a

20  30(b)(6) deponent and has been identified, I think it is

21  fairly clear that probably both general and specific

22  jurisdiction exists.

23       Mr. Steele has perhaps been a little more

24  careful about trying to keep his fingerprints off here,

25  but I would remind the court that Mr. Gibbs has

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1   identified him as essentially running a law firm in

2   California which by the way is not qualified to do

3   business in California, and I checked with the state bar

4   and it is not registered as a law firm here.

5           But in any event --

6       THE COURT:  You talking about Prenda now?

7       MR. PIETZ:  Talking about Prenda.  Yes, sir.

8           In any event, I apologize.  I don't have

9   documents to back that up, but I can provide them.  But,

10  in any event, I think that with respect to Mr. Steele

11  when you take Mr. Gibbs' declaration and add it together

12  with a subpoena signed by Mr. Steele.  And, pardon me, I

13  will note one other thing about the declaration of

14  Michael Stone.  In addition to authenticating the

15  documents, he also included some back and forth, some

16  meet and confer correspondence he had with Mr. Steele.

17          So, essentially, Mr. Stone noticed the fact

18  that Mr. Steele was not licensed in California and that

19  he had signed the subpoena and wrote to Mr. Gibbs saying

20  this subpoena is invalid.  And what happened is that

21  Mr. Steele wrote back directly without cc'ing Mr. Gibbs

22  and essentially shrugged off the concerns about the

23  subpoena being signed by an attorney who doesn't have a

24  license in California.

25          So, in any event, I think that with respect to

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1  Mr. Steele, when you add together the subpoena issued

2  into the state of California, a demand letter issued

3  under the state of California as well as Mr. Gibbs'

4  testimony, it is pretty clear that the court has personal

5  jurisdiction.

6          I don't have a tremendous number of additional

7  exhibits on this topic.  However, I do have quite a few

8  with respect to what I view as Mr. Gibbs' central role in

9  the Prenda law organization.

10     MR. BRODSKY:  Your Honor, may I make one comment?

11     THE COURT:  You can make more than that.  Thank

12  you.

13          Yes.  Go ahead.

14     MR. BRODSKY:  We are not taking a position at the

15  present time on the jurisdictional issues that the court

16  is deciding, but there were statements made about my

17  client that I believe mischaracterize the evidence that

18  has been put forward.

19     THE COURT:  Okay.  Listen, let me just sort of

20  tell you the way we are going to proceed here.  At this

21  point, you will have the floor.  All right.  I can't

22  imagine you are going to raise too much in opposition to

23  the jurisdictional issue.  Otherwise, he is in.  So you

24  go right ahead.

25          Now, a number of things -- I am just going to

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1   give you some of my thinking.  A number of things were

2   stated in your papers.  Some of them caused me some

3   concern because they were inaccurate.  For example, you

4   make the argument that certain people were identified as

5   infringers because there was no way, for example, that

6   someone else could have been piggy-backing off of their

7   modem because of the size of the lot, where the house is

8   situated on the lot, the proximity or lack of proximity

9   of other residences around, et cetera.

10         Your representation of these homes and the

11   neighborhoods and juxtaposition of other houses around

12   them was simply not accurate.  Not in the least bit.  And

13   I found that troublesome when you are asking me, then, to

14   accept all of your our arguments.

15         So I just want to throw that out there to let

16   you know some of my thinking.

17       MR. WAXLER:  Our turn, your Honor?

18       THE COURT:  I don't care who.  It is this side.

19       MR. WAXLER:  We will call Mr. Gibbs to the stand,

20   your Honor.

21       THE COURT:  All right.

22       (The witness was sworn.)

23       MR. PIETZ:  Your Honor, before we move onto

24   Mr. Gibbs, may I request that we admit into evidence the

25   affidavit of John Steele as Exhibit 12, the Michael Stone

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1    declaration as Exhibit 13 -- oh.  Pardon me.  Stone and

2    Teitelbaum have already been admitted so just the

3    affidavit of John Steele.  I would ask that that be

4    admitted as Exhibit 12.

5         THE COURT:  I think that's right.  Are we up to

6    12?  Okay.  All right.

7         THE CLERK:  If you could state your full and true

8    name for the record and spell your last name.

9         THE WITNESS:  Sure.  Brad Gibbs, G-I-B-B-S.

10

11                 DIRECT EXAMINATION

12   BY MR. WAXLER:

13   Q    Mr. Gibbs, who is your present employer?

14   A    I am not currently employed.

15   Q    You became employed -- I'm sorry.  You became an of

16   counsel, 1099 independent contractor for Steele

17   Hansmeier; correct?

18   A    Yes.

19   Q    Was Steele Hansmeier an existing law firm at the

20   time that occurred?

21   A    I believe they had been existing for a number of

22   months at that point.

23   Q    What were you told your role would be at Steele

24   Hansmeier?

25   A    Basically, California counsel for Steele Hansmeier

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1    in bringing lawsuits on behalf of their clients.

2    Q      Were you paid as an employee?

3    A      No.

4    Q      Did you share in Steele Hansmeier profits?

5    A      No.

6    Q      Were you on the management of Steele Hansmeier?

7    A      No.

8    Q      And who did you understand were the decision makers

9    of Steele Hansmeier?

10   A      John Steele and Paul Hansmeier.

11   Q      When you were an of counsel to Steele Hansmeier,

12   who supervised you?

13   A      John Steele and Paul Hansmeier.

14   Q      Did you have periodic meetings while at Steele

15   Hansmeier to discuss cases?

16   A      Yes, we did.

17   Q      And were those weekly meetings?

18   A      Yes.  Sometimes they would be sending the schedule,

19   but, yes, mostly weekly meetings.

20   Q      Who participated in those meetings?

21   A      John and Paul would call me, and they would hold a

22   weekly meeting.

23   Q      And were these by phone or in person?

24   A      These were by phone.

25          THE COURT:  Were they ever in person.

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/25/2013 9:27:34 AM
Hennepin County Civil, MN

1      THE WITNESS:  I went sometimes and met them, and

2  then we had meetings, yes, in person at that point, but

3  this was only a couple of times.

4      THE COURT:  This is out of California?

5      THE WITNESS:  Yes.  Well, I have met with Paul

6  Hansmeier in California prior to this deposition, but the

7  other, everything was out of California.

8  Q   BY MR. WAXLER: When -- were any cases that you filed

9  while at -- while of counsel to Steele Hansmeier, were

10 any of those cases settled?

11 A   Yes.

12 Q   And did the checks, the settlement checks come to

13 you?

14 A   No.

15 Q   Did you have a client trust account in any account

16 in which you had an interest at all as a signatory?

17 A   No.  Actually, I don't even have a client trust

18 account.

19 Q   So the checks were sent to Steele Hansmeier's trust

20 account?

21 A   I don't know.  I would assume they were.  They

22 weren't sent to me.  They were sent to Steele Hansmeier.

23 Q   And how did you learn that Prenda law was going to

24 substitute in or take over the cases from Steele

25 Hansmeier?

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/22/2013 9:27:34 AM
Hennepin County Civil, MN

```
 1   A      Basically, I heard of the name Prenda Law.  They
 2   told me that Prenda Law was now taking over the business.
 3   Steele Hansmeier was no longer going to exist at that
 4   point.
 5   Q      And who is they in that answer?
 6   A      That would be John Steele and Paul Hansmeier.
 7   Q      Were you on the management committee at all of
 8   Prenda Law?
 9   A      No.
10   Q      Were you partner at Prenda Law?
11   A      No.
12   Q      What was your affiliation with Prenda Law?
13   A      The same as it was for Steele Hansmeier which would
14   be of counsel, California counsel essentially for Prenda
15   Law.
16   Q      So you were compensated with a 1099?
17   A      Yes.  That is correct.
18   Q      And did that ever change over the course of the
19   time which you were counsel to Prenda Law?
20   A      In terms of what?
21   Q      In terms of your relationship with that firm?
22   A      No.  I would only say that they, John and Paul, had
23   asked me to help the other counsel in different states,
24   basically, like, give them advice in doing their own
25   cases in different states.  That was the only change
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1    really.  Other than that, I was just California counsel.

2    Q      While of counsel to Prenda Law, did you ever

3    receive any settlement checks?

4    A      Myself personally, no.

5    Q      Did you have a client trust account at Prenda Law

6    that you somehow administered or controlled?

7    A      No.

8    Q      And were you supervised at Prenda Law?

9    A      Yes, I was.

10   Q      Who were you supervised by?

11   A      Paul Hansmeier and John Steele.

12   Q      Were you supervised by Paul Duffy?

13   A      No.

14   Q      And when you say supervised, could you just

15   describe what you mean by that?  How did they supervise

16   you?

17   A      Sure.  You know, they essentially were the ones

18   that would initiate cases.  By that, I mean, they would

19   tell me they wanted to file certain cases in California,

20   for instance, and they would instruct me to go ahead and

21   file those.  And they would give me the authority to do

22   so.  I would be told what cases we are looking at and how

23   many cases we are talking about, and then I would file

24   the cases.

25              And they would give me general guidelines on

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/22/2013 9:27:34 AM
Hennepin County Civil, MN

1  what to do and sometimes the cases would be settled by

2  John as was pointed out earlier, and sometimes they gave

3  me certain parameters which I could settle the case

4  myself.

5  Q     Did you ever talk to anybody that you understood to

6  be the client, AF Holdings?

7  A     No.  The communications were solely through Paul

8  Hansmeier and John Steele.

9  Q     Did you ever talk to anybody who said they were

10  affiliated with Ingenuity 13?

11  A     Well, I mean, aside from Mark Lutz who is the CEO

12  of Ingenuity 13, but aside from that, no.  All my

13  communications were straight through Paul Hansmeier and

14  John Steele.

15  Q     Did Mr. Lutz ever give you direction on the

16  handling of any of these cases directly?

17  A     No.  Actually, I only found out about that

18  connection, I would say, after the cases in the Central

19  District were filed, about him being the CEO.  I didn't

20  know that before.

21  Q     And the cases that were filed in the Central

22  District were dismissed; correct?

23  A     That is correct.

24  Q     And whose decision was it to dismiss those cases?

25  A     Ultimately, it was John Steele and Paul Hansmeier's

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/23/2013 9:27:34 AM
Hennepin County Civil, MN

1    decisions.  We had talked about it.  As counsel of record

2    here, I just kind of broke down like a cost benefit

3    analysis of those cases.  And they said, basically, go

4    ahead and dismiss them because -- they said go ahead and

5    dismiss them.

6    Q      When the cases were filed, did you have a

7    discussion with anybody about whether notice of

8    interested parties should be filed?

9    A      I did.  Yeah.

10   Q      And who did you have discussions with?

11   A      Mostly Paul Hansmeier.  Yes.  Mostly Paul Hansmeier

12   but sometimes John Steele, I guess.  I don't know.  It

13   was a while ago I guess.

14   Q      Did you file those notices of interested parties?

15   A      Yes.

16   Q      What did they say in connection with AF Holdings.

17   A      They said there was no other interested parties.

18   Q      Do you have any personal knowledge of that

19   statement as untrue?

20   A      No, I did not.  No.  I still don't.  I mean, in

21   terms of I know there is other things involved in terms

22   of the trust and stuff like that, but in terms of other

23   people involved, I was only taking direction from these

24   guys in terms of these types of filings.

25   Q      And these guys are?

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1   A       These guys are Paul Hansmeier and John Steele.

2   Q       In connection with Ingenuity 13 cases did you file

3   notices of interested parties?

4   A       That is correct.  Yes.

5   Q       And were you ever advised that the information --

6   how did you obtain the information for those notices?

7   A       Well, I just, I would ask them, you know, are there

8   any other people that I should be noticing on this

9   document that I am filing with the court.

10  Q       Who is them in your response?

11  A       That would be Paul Hansmeier and John Steele.

12  Q       Were you told not to do that again.  Instead of

13  saying them, were you told by Paul Hansmeier, John Steel

14  that the information you included in those notice of

15  interested parties was correct?

16  A       So they actually told me, I was instructed to fill

17  those documents out like I did.

18  Q       There was a question raised by the court this

19  morning about the failure to have filed notices of

20  related cases.  My question is did you consider filing

21  notices of related cases when you filed the actions in

22  the Central District of California?

23  A       Yes, we did.

24  Q       And could you please describe for the court what

25  your thought process was as a result of, in not filing

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1   these notices?

2   A     So we had filed -- well, I filed on behalf of

3   Steele Hansmeier, then Prenda Law, a number of cases in

4   the Northern District of California, and those were cases

5   with multiple people in them.

6          And what the court in the Northern District of

7   California concluded, almost every court, at that point,

8   after filing multiple cases was that joinder was not

9   valid and that they basically told us in no uncertain

10  terms that these cases weren't related.  Therefore, that

11  informed my belief in terms of whether we wanted to

12  relate these cases or not.  They said these cases,

13  essentially, through their orders and through live

14  hearings, that these cases aren't related, they should be

15  brought as individual actions.  So it was just a decision

16  to bring those individual actions and not relate the

17  cases based on that.

18  Q     And your experience in Northern California, that

19  predated the filings of the Central District actions that

20  we are here to discuss today?

21  A     Yes.  I don't even know if I was admitted into the

22  Central District at that point.

23         THE COURT:  Let me jump in a second.  You were

24  told in the Northern District of California that when you

25  filed a lawsuit on behalf of either AF Holdings or

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1   Ingenuity 13 versus Does 1 through many, that that

2   joinder was improper; correct?

3        THE WITNESS:  Some cases.  Some cases it was not

4   improper.  Some judges felt differently.

5        THE COURT:  All right.  But if it involved

6   different movies, downloads, different times, different

7   people, different places, different ISP addresses, they

8   said you need to file separate lawsuits; right?

9        THE WITNESS:  Some of them were the same clients,

10  same videos.

11       THE COURT:  Okay.  But even then?

12       THE WITNESS:  Yes.

13       THE COURT:  Even then, you had to file separate

14  lawsuits?

15       THE WITNESS:  Yes.  We were pointing that

16  direction even there was a footnote in one of the courts'

17  opinions saying basically that we were trying to get

18  around the filing fee, and that is what they thought so

19  we should file individual cases from there on out.

20       THE COURT:  Of course, you were, but that is not

21  where we are going here.  Now, that deals with joinder in

22  one lawsuit and consolidating really separate and

23  complete causes of action, different parties in a single

24  lawsuit.

25            Now, what we are talking about here is with

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1    respect to your notice of related case.

2         THE WITNESS:  I understand.

3         THE COURT:  You do because I can hear it now.  I

4    can hear you going it is compound, all the stuff that you

5    do.

6         Do you realize -- no.  Did you equate the

7    instructions you got from the court regarding improper

8    consolidation of a lot of cases, a lot of claims into a

9    single complaint, did you somehow conflate that with the

10   issue of related cases, notices of related cases?  And

11   you know what that is for, here; right?

12        THE WITNESS:  I understand.

13        THE COURT:  You understand why we are looking for

14   that.

15        THE WITNESS:  I understand.

16        THE COURT:  Tell me what your understanding is as

17   to why the court is interested in knowing whether or not

18   there are related cases.

19        THE WITNESS:  Because if they are similar cases,

20   my belief is the court wants to know about those so the

21   court can handle it so that there are uniform decisions

22   essentially that are held from the same court.

23        THE COURT:  Excellent.  A completely different

24   objective -- right -- than consolidating a lot of

25   different lawsuits in one complaint; right?  Completely

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/24/2013 9:27:34 AM
Hennepin County Civil, MN

1   different.  This is judicial economy.

2        THE WITNESS:  I understand.  Yes.  I understand

3   what you are saying.  In terms of that it was just the

4   decision that was made, and perhaps it was the wrong

5   decision, but, you know, the decision was made.

6        THE COURT:  Okay.  Don't do that.  Decision that

7   was made.  Who made that decision?

8        THE WITNESS:  It was a discussion amongst myself,

9   Paul Hansmeier and John Steele and, probably, mostly,

10  Paul Hansmeier.  I don't even know if Steele was involved

11  in that discussion or not, and that is just what we

12  decided to do.

13       THE COURT:  All right.  The law firm that you were

14  working for -- and I guess initially we are talking

15  Steele Hansmeier or the other way around.

16       THE WITNESS:  It was Steele Hansmeier.

17       THE COURT:  Okay.  Did that firm have, in its

18  California office, did it have a client trust account?

19       THE WITNESS:  In California.

20       THE COURT:  Yes.

21       THE WITNESS:  Well, I was working of counsel to

22  them.  So, no, I never had my own client trust account.

23  The funds were always going through the law firm.

24       THE COURT:  Were you operating out of your home?

25       THE WITNESS:  Yes, I was originally.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/22/2013 9:27:34 AM
Hennepin County Civil, MN

1      THE COURT:  Did at any time you ever have a

2  business office even if it was a suite any place?

3      THE WITNESS:  Not for Steele Hansmeier.

4      THE COURT:  What about Prenda?

5      THE WITNESS:  Prenda Law, yes.  They wanted me to

6  get an office.  So I got an office, and I actually moved

7  twice.

8      THE COURT:  At that time, did you have a client

9  trust account?

10     THE WITNESS:  No, your Honor.

11     THE COURT:  Was it your understanding that in

12 California that you were required to have a client trust

13 account?

14     THE WITNESS:  My belief was that considering I was

15 working as of counsel to the Prenda Law, and Prenda Law

16 had the trust account, that was my understanding of how

17 the money was dealt with.  I didn't ever -- they never

18 saw my bank account.  I was paid like by Prenda Law as an

19 attorney, of counsel attorney, 1099.  And so my

20 understanding was that they had a trust account.  And,

21 therefore, you know, the people that were working with

22 them did not need trust accounts themselves.

23     THE COURT:  Okay.  All right.  And you only handle

24 one kind of business; right?

25     THE WITNESS:  What do you mean by that, your

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/24/2013 9:27:34 AM
Hennepin County Civil, MN

1   Honor?  I only handle one kind of business?

2          THE COURT:  Yes.

3          THE WITNESS:  Can you explain your question?  You

4   mean in terms of just being plaintiff's lawyer?

5          THE COURT:  Plaintiff's lawyer for copyright

6   infringement for the adult film industry.

7          THE WITNESS:  Well, no, actually.  So originally

8   when I was working for Steele Hansmeier, I was also

9   working for an arbitrator.  So I had other business, but

10  it was just a 1099 worker at the same time.  I was

11  helping him out with his cases, and so when Prenda law

12  came around, we basically, I said, look, you guys are

13  trying to put a lot of work on my plate essentially, and

14  I am kind of split here.  And they said, well, we would

15  like to basically have you work solely for Prenda Law,

16  this is being Paul Hansmeier and John Steele.  And so I

17  wrapped up my arrangement with the arbitrator, and I

18  became exclusive doing stuff for Prenda Law at that

19  point.

20         THE COURT:  Listen, last January, this past

21  January, a few weeks ago, I guess you started withdrawing

22  as counsel of record.

23         THE WITNESS:  That is correct, yes.

24         THE COURT:  All right.  And you just testified

25  that you are no longer employed by Prenda?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County, Civil, MN

1        THE WITNESS:   That is correct.   I am no longer

2   employed by Prenda or any other corporation or LLC that

3   is involved in these cases.   I have moved on.   I am going

4   to work again for the arbitrator and find some other work

5   essentially.   You know, so that is where I am right now.

6   Actually, I was working for Livewire for two months, but

7   there was actually a couple of things that happened in

8   terms of I never even got paid for my two months there.

9        THE COURT:   Two months where?

10       THE WITNESS:   Two months at Livewire.

11       THE COURT:   You did get paid by Prenda though;

12  right?

13       THE WITNESS:   Before that, yes.   During 2012, yes.

14       THE COURT:   So why did you leave?

15       THE WITNESS:   Well, there is multiple reasons for

16  it.   Personal reasons, I am getting married soon.   So I

17  wanted to focus on that, but, you know, to be honest with

18  you --

19       THE COURT:   That would be good.

20       THE WITNESS:   Yeah.   No.   I am looking forward to

21  it.   And to be honest with you, these types of things

22  raising up themselves, I just didn't want to be

23  affiliated with it anymore.   It wasn't worth it.   I was

24  getting a lot of harassment.   My family was receiving

25  e-mails and correspondence from people, my fiance, my

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/23/2013 9:27:34 AM
Hennepin County Civil, MN

1   parents.  I just didn't see, and I was getting a lot of

2   negative exposure that, you know, I just didn't want

3   anymore ultimately.

4          And, then, also, I didn't really get along

5   with one of the people that managed me.  So I, you know,

6   I decided to go ahead and exit and told them about that,

7   and, yeah, and that is the situation essentially.

8       THE COURT:  Okay.

9   Q   BY MR. WAXLER: Just to complete your employment

10  picture because there was perhaps some gaps.  You learned

11  sometime in late 2012 that Prenda Law was no longer going

12  to be your, I will just say the word employer but you

13  weren't going to be of counsel to Prenda Law anymore;

14  correct?

15  A    That is correct.

16  Q    And how were you informed of that?

17  A    I was told I would say middle December or so.

18  There was a brainstorming issue about -- they were, John

19  Steele and Paul Hansmeier were brainstorming about

20  whether they wanted basically to start their own company,

21  I guess.  And the company was Livewire, turned out to be

22  Livewire.  And that Livewire would essentially buy AF

23  Holdings and Ingenuity 13 and Guava.

24          And so I was informed that as of January 1,

25  you know, Livewire extends you this offer, and basically

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/23/2013 9:27:34 AM
Hennepin County Civil, MN

1   if you don't accept this offer, then, you know, we are

2   going to part ways.  So the offer was to be in house

3   counsel for Livewire, and so I was hired W2 employee for

4   this company which is a holding company of copyrights.

5   Q     And you understood that one of the subsidiaries of

6   that company included AF Holdings; correct?

7   A     That was my understanding, yeah.

8   Q     When did you come to a different understanding?

9   A     Oh.  Well, during the deposition, I came to a

10   different understanding because obviously the deposition

11   was said what was said, and I asked Paul Hansmeier about

12   that.

13   Q     And what we are talking about here is

14   Mr. Hansmeier's testimony that there was a trust that

15   owned AF --

16   A     That is correct.

17   Q     And before that testimony, you heard that

18   testimony, you understood as of January 1, that Livewire

19   would own --

20   A     Yes.

21   Q     Livewire would own AF Holdings?

22   A     That is correct.

23   Q     And that is why in at least one of the pleadings

24   you put that you are in house counsel for AF Holdings

25   because that was a company that was owned by Livewire;

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1   correct?

2   A     I was specifically told to sign as in house counsel

3   for AF Holdings by Paul Hansmeier in that case.   I was

4   actually because of Mark Lutz' position as CEO, I was

5   trying to get his signature for that document, but Paul

6   Hansmeier said, no, you are in house counsel for Livewire

7   thereby in house counsel for AF Holdings, you sign it on

8   behalf of the client.

9   Q     Is one of the other reasons you decided to leave

10  Livewire is because you learned that the stamp was being

11  used for your signature?

12  A     Yes.   Certain letters were sent out without my

13  knowledge.   I never authorized them, never approved them.

14  When I questioned John about them, he was, like,

15  basically said, this is your role.   This is what you have

16  to do.   You have to send these letters out, and I said I

17  don't feel comfortable, these aren't even my cases,

18  essentially.   And, you know, I actually e-mailed Mark

19  Lutz about that, and he said you got to talk with John

20  and Paul about this.

21         THE COURT:   I'm sorry.   What kind of letters are

22  we talking about?   Is that the settlement letters?

23         THE WITNESS:   Settlement letters.   They had been

24  using -- they originally said they were going to do a

25  stamp for me for certain things, but I thought they were

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1  only for my cases.  And, you know, later, I found out

2  that stamp might have been used for cases that I never

3  even participated in or seen the letters before they went

4  out.

5       THE COURT:  Let me make sure I understand now.

6  Livewire eventually became the parent of AF Holings and

7  Ingenuity 13 LLC?

8       THE WITNESS:  That was my understanding.  I was

9  told that, yeah.  And that is why I was hired and a lot

10  of people were hired in terms of working as W2 employees

11  for Livewire.  So it was the company that was a holdings

12  company that would do litigation as well as distribution.

13  That is what they told me.

14       THE COURT:  And you were a W2 employee?

15       THE WITNESS:  That's correct.  And I still have

16  not been paid for that position.

17  Q    BY MR. WAXLER: That was for a period of two months;

18  correct?

19  A    That's correct.  And I gave him my notice early

20  February essentially.

21       THE COURT:  Where was Livewire's offices?

22       THE WITNESS:  Livewire has an address of

23  Washington DC address, but, obviously, I don't know if it

24  has an office to be honest with you.  It is just a matter

25  of, kind of a cloud type office.  It might be a situation

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/22/2013 9:27:34 AM
Hennepin County Civil, MN

1   where -- I am just speculating right now.

2        THE COURT:  You have never visited Washington DC

3   offices?

4        THE WITNESS:  No.  I believe it is just a PO box

5   over there.  That is just a mailing address for them.

6        THE COURT:  Did that form letter requesting

7   payment of the settlement sums, did that letter change to

8   reflect that payment now should be sent to Livewire at

9   the Washington DC address?

10       THE WITNESS:  Absolutely.  It wasn't sent to me or

11  anything like that.  It was sent to that mailbox, and

12  then I believe it would be sent back to somebody at some

13  point somewhere.  But that is the kind of issues that I

14  started having, and along with a lot of other different

15  issues.  So I just decided to -- I asked them if I could

16  go ahead and substitute out with Paul Duffy who had a

17  license in California.  I talked to Paul Duffy about

18  that, he said sure, and then I proceeded to do that.

19       THE COURT:  All right.  So you substituted out.

20  Now, how long were you general counsel for Livewire?

21       THE WITNESS:  Two months basically.  I mean, I

22  guess you could say, I think the official documents were

23  signed.  It never actually specified that I was in house

24  counsel, but that is what I was told.  The documents were

25  just general employment documents, but that was from I

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/22/2013 9:27:34 AM
Hennepin County Civil, MN

1   think January 7th on.  That's when I signed the

2   documents.

3   Q    BY MR. WAXLER: You were not general counsel.  You

4   were in house counsel; right?

5   A    In house counsel.  Sorry.

6   Q    You have never held the position of general

7   counsel, have you?

8   A    No.

9        THE COURT:  Did you know about any other employees

10  there?

11       THE WITNESS:  Yes.

12       THE COURT:  Was there a bookkeeper or an

13  accountant?

14       THE WITNESS:  Yes.

15       THE COURT:  Do you know whether -- well, okay.

16       Thank you.

17  MEMBER OF THE AUDIENCE:  Your Honor?

18       THE COURT:  You are?

19  MEMBER OF THE AUDIENCE:  Jason (inaudible).  I

20  represent Godfread and Cooper in some of the defamation

21  cases.

22       THE COURT:  You represent Godfread?

23  MEMBER OF THE AUDIENCE:  Yes.

24       THE COURT:  So back in Minnesota, lawyers have

25  lawyers?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/24/2013 9:27:34 AM
Hennepin County Civil, MN

1        MEMBER OF THE AUDIENCE:  I am from Massachusetts.

2        THE COURT:  And how can I help you?

3        MEMBER OF THE AUDIENCE:  I had a conversation with

4  Mr. Gibbs probably back in October regarding AF Holdings

5  where he told me that he was national counsel for AF

6  Holdings and that any settlement negotiations were to be

7  made through him.  And the local counsel for that case

8  confirmed that he was the one who told me to contact

9  Mr. Gibbs.

10       THE COURT:  Have you come to understand as have I

11  that every representation made by a lawyer associated

12  with Prenda is not necessarily true?

13       MEMBER OF THE AUDIENCE:  I have known that for

14  three years.

15       THE COURT:  Okay.  Good.  So you aren't shocked,

16  are you?

17       MEMBER OF THE AUDIENCE:  No.

18       THE COURT:  Nor am I, but thank you.

19       MEMBER OF THE AUDIENCE:  You are welcome.

20  Q   BY MR. WAXLER: Mr. Gibbs, you know you are under

21  penalty of perjury testifying here today?

22  A   That is correct.

23  Q   Have you ever made a representation to a court in

24  the Central District of California or any other court

25  that you know is untrue?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/23/2013 9:27:34 AM
Hennepin County Civil, MN

1  A     No.

2        THE COURT:  Well, that isn't exactly accurate, is

3  it?  You have caused documents to be filed with, let's

4  just be kind and say falsified signatures.

5        THE WITNESS:  Your Honor, I had no idea that these

6  were allegations --

7        THE COURT:  That is "yes" or "no".

8        THE WITNESS:  Your Honor, I think it is still an

9  open question.

10        THE COURT:  Oh.  No.  It is not an open question.

11  We have had the individual testify under oath.  Those

12  were not his signatures on these documents.

13        THE WITNESS:  And that is the first time I have

14  heard in terms of him saying out loud that he absolutely

15  did not sign those papers, those exact papers.  He said

16  before he was not associated with the companies, but that

17  is the first time I heard him say he did not sign those

18  exact papers.

19        THE COURT:  Are you saying that you have had prior

20  conversations with him where he either admitted or

21  tacitly admitted that he signed?

22        THE WITNESS:  No, your Honor.  I haven't had any

23  conversations with Mr. Cooper.

24        THE COURT:  That was my thought.  I thought that

25  you had never met the man.

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/22/2013 9:27:34 AM
Hennepin County Civil, MN

1       THE WITNESS:  No.  I never met the man.  He never

2   met me, and I have never talked with him.

3       THE COURT:  And you were acting on the

4   representation of John Steele that --

5       THE WITNESS:  And Paul Hansmeier.

6       THE COURT:  -- that they actually had the

7   signatures, the authentic signature of the real Alan

8   Cooper?

9       THE WITNESS:  Yes.  I was told that.  And I

10  investigated that in terms of, you know, what is going on

11  here when the first Alan Cooper issue arose, and I was

12  told that there was no issue, that he -- that he did sign

13  the document.  And so I also did a little bit of research

14  and found out that the assignor, even if the assignor is

15  invalid, it still is a valid document.  So combining

16  those two things, I still believed -- I don't think I

17  filed a case after that.  It was just a matter of kind of

18  addressing with these guys, and they were my sole

19  information for this type of thing.

20      THE COURT:  Okay.  You also indicated that you had

21  on file the original or notarized signature of Alan

22  Cooper, but you really don't, do you?

23      THE WITNESS:  No.  No.  I never said I had on

24  file.  No.  Prenda law or Steele Hansmeier had it on

25  file.  They told me they had it on file, and that is I

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1    believe what was in the declaration.  So I said, okay,

2    you know, do we have this notarized copy, do you guys

3    have it over there?  I don't think I ever saw it, but

4    they told me, yes, we have copies of this, it is here,

5    and you can go ahead and file that based on our

6    representation to you.

7         THE COURT:  Do you feel like you have been duped

8    by Hansmeier and Steele?

9         THE WITNESS:  In a way, yes.

10        THE COURT:  Okay.  This has been very

11   enlightening.

12   Q    BY MR. WAXLER: Mr. Gibbs -- I just have a few more

13   your Honor.  Mr. Gibbs, have you ever been a 30(b)(6)

14   witness for AF Holdings?

15   A    No.

16   Q    Have you ever been a 30(b)(6) witness for Ingenuity

17   13?

18   A    No.

19   Q    Have you ever received client funds in any of your

20   capacities as counsel affiliated with Steele Hansmeier or

21   Prenda Law?

22   A    No.

23   Q    The court expressed some disappointment in the

24   manner in which you described how you determined the

25   location of the houses that sat on the lots, and the

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/23/2013 9:27:34 AM
Hennepin County Civil, MN

1   router, the ability for the router to pick up people who

2   were not authorized to pick up that signal.  And let me

3   ask you some questions about that.

4   A     Sure.

5   Q     It is your understanding that when wireless routers

6   are used and they determine what the distance is where

7   they would be able to pick up a signal, that those

8   determinations are made where there is an open field and

9   not placed in the middle of a structure?

10  A     Yeah.  I have read some reports on that and that

11  the projections are basically favorable to them because

12  there is no obstacles in the middle, there is nothing

13  like walls or fences or bushes or trees which have a

14  great effect on wireless signals.

15  Q     Tell me how you described the Denton residence and

16  what facts you had to support your description of the

17  Denton residence?

18        THE COURT:  Which city?  Is this Santa Maria or

19  West Covina?

20        THE WITNESS:  I believe it is the second one.

21        MR. WAXLER:  I will find it, your Honor.

22        MR. PIETZ:  Your Honor, I might suggest we look at

23  Exhibit II which is the picture, the geographical Google

24  maps picture of the two residences.

25        THE COURT:  That is why I wanted to know.  I mean,

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/23/2013 9:27:34 AM
Hennepin County Civil, MN

1    I went to Google Earth as well, and I just want to know

2    which one we are talking about because in West Covina,

3    you made some representations of fact that you cannot

4    possibly know to be true.

5         THE WITNESS:  Well, your Honor, based on my

6    personal knowledge of wireless networks, I believed they

7    were true.

8         THE COURT:  I am talking about of the residence

9    itself.  It is a gated community.

10        I'm sorry.  I didn't mean to interrupt you.

11        MR. WAXLER:  I am happy to address that, your

12   Honor.

13   Q    Mr. Gibbs, the map that you have seen that was

14   offered by Mr. Gibbs and Mr. Pietz -- and I apologize if

15   I am butchering your name, by the way --

16        MR. PIETZ:  Pietz.

17        MR. WAXLER:  Pietz.

18   Q    That is not the type of map that you saw; correct?

19   A    No, that is not.

20   Q    Please describe the map that you looked at when you

21   made the representations in the filings that we have done

22   in this courthouse.

23   A    It was a map that you could go down the street, it

24   is actually focused on the house, not on an overview like

25   that, but it is on, basically, there is like a street

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
1/30/2013 9:27:34 AM
Hennepin County Civil, MN

1    view on Google that allows you to, like, look around the

2    house essentially.  Kind of.  It is limited to a certain

3    extent though.

4    Q    What did you see when you looked at that map?

5    A    I saw a house that I believed it was likely not

6    something that wifi could have broadcasted out to

7    neighbors.

8    Q    Did you see a gate?

9    A    I did see a gate.

10   Q    Did you see several structures?

11   A    I did.

12   Q    Did you see bushes and shrubs and trees around,

13   between the house structure and the street where someone

14   might be driving by?

15   A    I did.  Actually, the aerial view, I think, is even

16   covering the house if I remember correctly.  So, yeah, it

17   is -- I mean, in terms of trees, there is a lot of trees

18   there.

19   Q    And it is your understanding that the wireless

20   signal doesn't just fly over these trees, does it?

21   A    No.  Actually, I mean, there is just certain things

22   that -- I mean, I think everyone kind of knows when they

23   go into certain people's houses and say, hey, I want to

24   use the wifi connection, there are certain rooms in the

25   house that don't get, even in the same house that don't

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
10/2/2013 9:27:34 AM
Hennepin County Civil, MN

1   get the wifi connection.  So, yes, walls, trees, these

2   things definitely have a dramatic effect.  Sometimes,

3   concrete wall, for instance, sometimes it just altogether

4   stops something.  That is my understanding of it.

5   Q    Was your description of the residence in West

6   Covina when you signed your declaration and submitted

7   these papers and we submitted these papers on your behalf

8   accurate to the best of your knowledge.

9   A    Yes, it was.  It was based on my personal

10  knowledge.  Yes.

11  Q    And do you still believe it is accurate despite the

12  very different map that was submitted to the court?

13  A    That is correct.  I believe that map might be -- I

14  don't even know where the yards come, or I don't know how

15  that works.

16  Q    Would the same be true for the residence in Santa

17  Maria?

18  A    It was the same analysis essentially.  It was just

19  part of the full analysis, but yeah.

20  Q    In other words, there were walls, there were

21  buildings, there were shrubs, all of which would block

22  the signal and reduce by a great extent the range of the

23  wireless network?

24  A    Yes.  That was my impression from them, the street

25  maps from Google.

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
10/3/2013 9:27:34 AM
Hennepin County Civil, MN

1          MR. WAXLER:  May I have one moment, your Honor?

2          THE COURT:  Certainly.

3    Q    BY MR. WAXLER: Mr. Gibbs, did you knowingly violate

4    the discovery orders from this court?

5    A    No.

6    Q    Did you cause to be served on the ISP providers the

7    October 19, 2012 discovery order by this court?

8    A    Yes.  I mean, at least, I thought I did.  I had

9    requested it.

10   Q    And it was your understanding that that was done?

11   A    It was my understanding.  I confirmed it

12   afterwards, and they said it was taken care of.

13   Q    And the first time you learned that an ISP may not

14   have received a copy of that order was when?

15   A    I believe it was in the response by the ISP, AT&T

16   possibly.

17         MR. WAXLER:  I have nothing further, your Honor.

18   Thank you.

19         THE COURT:  Okay.  Thank you.  But you started

20   getting responses from some of the Internet service

21   providers, didn't you?

22         THE WITNESS:  I didn't get the responses.

23         THE COURT:  All right.  You filed a status report

24   with the court?

25         THE WITNESS:  Yes.

Filed in Fourth Judicial District Court
10/2/2013 9:27:34 AM
Hennepin County Civil, MN

```
 1            THE COURT:  Right?

 2            THE WITNESS:  Yes.

 3            THE COURT:  And at the time you filed that status

 4   report, there had been no returns on those subpoenas;

 5   right?

 6            THE WITNESS:  Yes.

 7            THE COURT:  Then about a week later --

 8            THE WITNESS:  Well, sorry, let me qualify my

 9   answer.  There were -- at that point, there was nothing

10   in the computers that showed there was any returns on the

11   subpoenas.

12            THE COURT:  Okay.  That changed a few days later.

13            THE WITNESS:  It changed, I think, on the 7th.

14   Yes.

15            THE COURT:  And, of course, you updated that

16   status report, you advised the court, then -- right --

17   that suddenly, for whatever reason, people are now

18   starting to send you information on your subscribers;

19   right?  You updated your filing, didn't you?

20                 Actually, no, you didn't.

21            THE WITNESS:  I didn't, your Honor, but if I can

22   explain why.

23            THE COURT:  Yes.

24            THE WITNESS:  Okay.  So I did some investigation

25   on that, and what I was told, and, again, I don't handle
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
10/4/2013 9:27:34 AM
Hennepin County Civil, MN

1   the subpoenas.  These are handled out of the Chicago and

2   Minnesota offices.  I was told that these things are

3   usually delivered and that either hand-delivered or I

4   believe mailed but most likely they are just a few blocks

5   away.  Like CT Corporation is just a few blocks away,

6   that CT Corporation would send, mail back the

7   information.

8          I didn't realize that that information was

9   faxed back by Verizon.  I never knew that.  And I did

10  some investigation on it.  And I, also, I talked to Paul

11  Duffy, and the exact date of the court's order in that

12  case, there had been -- he had had some eye surgery and

13  he also had some trauma related to it.

14         So what he said was he wasn't picking up his

15  mail as frequently during that time period.  So I thought

16  that the information had been received essentially by,

17  through his mailbox at that point but hadn't been input

18  in the computer until later.  So that was my

19  understanding.  That was my understanding of what had

20  happened.

21  Q   BY MR. WAXLER: Do you now regret not advising the

22  court when you learned on November 7th that Prenda Law

23  had received information in response to those subpoenas

24  and that there was information in the status report that

25  was not correct?

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
10/2/2013 9:27:34 AM
Hennepin County Civil, MN

```
 1   A     Absolutely.  Absolutely.

 2         MR. WAXLER:  Thank you, your Honor.

 3         THE COURT:  Mr. Pietz.

 4

 5                    CROSS-EXAMINATION

 6   BY MR. PIETZ:

 7   Q     Mr. Gibbs, I would ask you to refer to the binder

 8   that is there with you to Exhibit EE which is the

 9   substitution of counsel that was filed apparently with

10   your CM/ECF account listing you as in house counsel for

11   AF Holdings.

12   A     Yes, I am familiar with that document.

13   Q     So Mr. Gibbs, just to clarify, then, your testimony

14   is that when you filed that document, that was an

15   accurate representation -- correct -- that you were at

16   that moment in house counsel for AF Holding?

17   A     When I filed that document, I believed I was.  What

18   I was told afterwards and after the deposition was that

19   that merger or that acquisition hadn't happened therefore

20   it was still owned by the trust.  So I, essentially, I

21   had been told to go ahead and file as in house counsel,

22   but, for some reason, Livewire didn't own AF Holdings at

23   that time.

24   Q     So can you just pin down for me exactly when it was

25   that your capacity as in house counsel for AF Holdings
```

Filed in Fourth Judicial District Court
10/22/2013 9:27:34 AM
Hennepin County Civil, MN

1   begun and exactly when it terminated?

2   A     Well, my understanding was that -- my understanding

3   when I was told that I was in house counsel for Livewire

4   that I was therefore in house counsel for AF Holdings and

5   the other companies as well, Ingenuity and Guava.

6            And only did I find out later when I was

7   exiting and I was already leaving all these cases

8   essentially, only then, I found out that they had not

9   actually acquired -- Livewire had not acquired AF

10  Holdings according to Mr. Hansmeier.

11  Q     Mr. Gibbs, have you ever authorized anyone else to

12  use your CM/ECF password?

13  A     I don't -- I might have.  I don't know.

14  Q     Who?

15  A     An individual by the name of Carl.  He worked for

16  me, or he worked with me, I guess you would say.  He

17  actually worked for Prenda Law.

18  Q     How about John Steele?

19  A     No.  I don't think so.  Not to my knowledge.  I am

20  not saying -- in terms of authority, I did not, no.

21  Q     How about Paul Hansmeier, did you ever authorize

22  him to use your CM/ECF password?

23  A     I don't believe so.  I mean, I know he had my -- he

24  had access to my passwords at one point, so he might

25  have, yeah.

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County, Civil, MN

1   Q      What was your business telephone number while you

2   worked for Prenda Law?

3   A      It was (415)325-5900.

4   Q      And what was your business e-mail address when you

5   worked for Prenda Law?

6   A      It was blgibbs@wefightpiracy.com.

7   Q      Have you ever instructed Prenda local counsel to

8   file pleadings using your business e-mail and business

9   telephone number on the pleadings even though it was

10  their name and physical address?

11  A      So, yes, my name is on -- my e-mail address and my

12  number and my phone number is on certain cases in other

13  states.  I was instructed to do so like that by Paul

14  Hansmeier.  And, essentially, the way that was explained

15  to me was that I would essentially forward all of the

16  communications to the outside counsel.  Yeah.  So.

17       MR. PIETZ:  Before we move on any farther, I would

18  ask that Exhibit EE be admitted into evidence as Exhibit

19  13.

20  Q      Mr. Gibbs, I have some copies of a few different

21  complaints, one that was filed by a local counsel in

22  Nebraska and three complaints filed by local counsel in

23  Florida all of which list the name of the local counsel,

24  a mailing address in those respective states and an

25  e-mail address, blgibbs@wefightpiracy.com and your 415

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/24/2013 9:27:34 AM
Hennepin County Civil, MN

1   telephone number, is that consistent with your

2   understanding of what the normal practice was at Prenda

3   that your business e-mail and phone would be on pleadings

4   all around the country?

5        MR. WAXLER:  Objection.  Irrelevant, your Honor.

6        THE COURT:  Overruled.

7        THE WITNESS:  That was what I was instructed to do

8   by Prenda, yeah, was to do that because I was essentially

9   helping those guys out on their cases.  It was their

10  case, but, yes.

11  Q    BY MR. PIETZ:I would ask Mr. Ranallo to pass out

12  No. 2 which is the declaration of Matt Catlett, an

13  attorney in Nebraska, and he is authenticating the

14  service copy of the complaint filed in Nebraska listing

15  Mr. Gibbs.  I would ask that that be admitted into

16  evidence as Exhibit 14.

17           Similarly, Mr. Ranallo, if you would be so

18  kind as to pass out 3, 4 and 5 which are the complaint in

19  Sunlust v. Nguyen, First Time Video.  Here is Sunlust v.

20  Nguyen.  That is Middle District, Florida.  We also have

21  First Time Videos v. Paul Uphold and Openmind Solutions

22  v. Barry Wolfson.

23        MR. WAXLER:  Your Honor, I would object to the

24  introduction of those exhibits.

25        THE COURT:  Right.  We don't need this.  We have

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1  basically got his testimony.

2       MR. PIETZ:  Fair enough.

3       THE COURT:  And we have got the testimony on the

4  reason why, but I got to tell you, that doesn't sound

5  reasonable to me that you would be inviting telephone

6  calls, litigation in Florida on a case that you know

7  nothing about.  How do you field these calls?

8       THE WITNESS:  No, sir.  I would pass the messages

9  on to the other attorneys.

10      THE COURT:  Back to Florida?

11      THE WITNESS:  Yes.  I would pass the messages on

12 to them because, essentially, it was just easy for them

13 at that point.  I was like their secretary essentially,

14 and that is the way that Prenda wanted to do it.

15      THE COURT:  Why?

16      THE WITNESS:  I don't know.  I mean, they changed

17 the practice at some point where people were putting

18 their own e-mails, their own numbers, but I don't know

19 why that was the way it was structured originally.

20           And I don't know.  I mean, I don't know who

21 had access to my e-mail either.  So I don't know, like, I

22 have no idea if I was sent something or if someone else

23 read it.

24 Q   BY MR. PIETZ: Did John Steele have access to your

25 e-mail?

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
17/2/2013 9:27:34 AM
Hennepin County Civil, MN

1   A      He did.  I don't know if he did throughout, but he

2   did.

3   Q      Would he routinely respond to e-mail inquiries at

4   the blgibbs@wefightpiracy.com e-mail address?

5   A      I never knew it because he didn't CC me on them, or

6   he didn't let me know he was doing them.  But I believe

7   he did.

8   Q      Did Paul Hansmeier have access to that e-mail

9   address?

10  A      I think he had access.  I have no idea whether he

11  used it or not.

12  Q      How about Mr. Duffy, Paul Duffy, did he have access

13  to that e-mail account?

14  A      I don't think so.

15  Q      Mr. Gibbs, earlier, you testified that some things

16  were sent out with your signature stamped on there that

17  didn't have your approval.  I would like to refer now --

18  actually, before I venture any farther afield, I would

19  ask that the court take judicial notice of the complaints

20  I have just identified as Exhibits, I think, 15, 16 and

21  17.

22         In any event, moving on, now, to what has been

23  previously identified in this action as Exhibit X, ask

24  that it be admitted now as Exhibit 18.

25         Essentially, I would just like to ask you a

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
17/2/2013 9:27:34 AM
Hennepin County Civil, MN

1    question to confirm.

2    A      Sure.

3    Q      Is this the kind of letter you are talking about?

4    This was a demand letter sent in the Guava, St. Clair

5    County, Illinois case.  I note that it is dated -- what

6    is the date on it?  January 30th.  And it is,

7    essentially, a, you know, a demand letter.  And then I

8    will go to the last page there.  It has a pleading in

9    there.  So, in any event, on the last page of the letter

10   itself, there is a stamped signature, what appears to be

11   a stamped signature that says Brett Gibbs.  Is it your

12   testimony that this letter was sent out without your

13   authorization?

14   A      That is my testimony.

15   Q      You had no knowledge whatsoever that this letter

16   was being sent out?

17   A      No.  Not with my name on it.  I don't even

18   remember -- no one ever told me about this before I found

19   out.  I actually found out through an opposing counsel

20   that contacted me and wrote me a letter saying,

21   basically, you know, you have nothing on my client, and

22   you communicate through me.  So I was kind of confused,

23   but I eventually saw the letter, and it had my stamped

24   signature on it.

25   Q      Mr. Gibbs -- I will represent to the court that

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1   this letter has been sent to over 300 Internet users

2   across the country.  Have you done anything to correct

3   the fact that this letter went out with your signature on

4   it without your authorization?  I note that it was filed

5   in late January.

6   A      Yeah.  I actually talked with Mark Lutz, and Mark

7   said, I said, Mark, do not send any of these letters out

8   anymore that are, you know, please contact me and let me

9   know what is happening before you send out these letters.

10  And the response from Mr. Lutz was I don't control those

11  types of things, you have to talk with Paul and John.

12  Q      Fair enough.  Mr. Gibbs, have you ever hired local

13  counsel for Prenda Law?

14  A      Actually, the hiring, no, because the hiring

15  process was done by John Steele.

16  Q      Are you familiar with an attorney in Florida named

17  Matthew Wasinger?

18  A      Yes.  Yes.

19  Q      Are you aware of the fact that Mr. Wasinger

20  testified under oath in federal court in Florida at the

21  Sunlust hearing that you hired him and that, as far as he

22  understood, you were a principal of Prenda law?  Are you

23  aware of that, Mr. Gibbs?

24        MR. WAXLER:  Objection, your Honor.  It is

25  irrelevant.  It is also hearsay.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1        MR. PIETZ:   I am asking Mr. Gibbs if he is aware

2   of it.

3        THE COURT:   Sustained.  I have got the picture.

4   Okay.  And I appreciate it.  Thank you.

5        MR. PIETZ:   I will move along, your Honor.

6        THE COURT:   Okay.  To what?  Give me a blueprint.

7        MR. PIETZ:   Fair enough, your Honor.  I will

8   explain the broad strokes of the categories I have, and

9   whatever the court is interested in, we will move to

10  that.

11       In addition to a few more things about

12  Mr. Gibbs hiring, firing and even threatening local

13  counsel, I have evidence on him being delegated

14  independent authority to settle cases which he actually

15  concluded.  Contrary to Mr. Gibbs' assertion which is a

16  little confusing in light of the fact that he says I

17  spoke to Mark Lutz, in any event, with respect to his

18  assertion that he never had any direct client contact, I

19  have a number of documents which actually show -- some of

20  which are Mr. Gibbs' own prior words showing that, in

21  fact, at least according to him, he was communicating

22  back and forth with the client, whatever that means, and

23  my theory is that that may mean John Steele.

24       But in any event, beyond the direct client

25  interaction, you know, I could ask Mr. Gibbs about his

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/24/2013 9:27:34 AM
Hennepin County Civil, MN

1  investigation in the case, about the petition, but those

2  are the broad strokes, your Honor.  If the court has got

3  the picture, I don't need to necessarily get into all the

4  documents.

5      THE COURT:  I do have the picture, and I know who

6  the client is.  We have talked about the client, and the

7  client has been running everything.  Yeah, I know who the

8  client is.

9      MR. PIETZ:  Very good.

10      THE COURT:  Okay.  Thank you.

11      Gentlemen.  Mr. Brodsky, you look bored.

12      MR. BRODSKY:  I am not bored, your Honor.

13      THE COURT:  All right.

14      MR. WAXLER:  We have no further questions, your

15  Honor.

16      THE COURT:  All right.

17      Unless anyone has anything else in terms of

18  evidence to offer, the matter will stand submitted.  All

19  right.

20      Thank you, sir.  You may step down?

21      THE WITNESS:  Thank you, your Honor.

22      THE COURT:  Good luck to you.

23      All right.  How about this, I will leave this

24  up to counsel, if you wish.  If you would like to sum up

25  your position, you may do so at this time.  It is not

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
17/25/2013 9:27:34 AM
Hennepin County Civil, MN

1    necessary.  I am just making that offer.

2        MR. WAXLER:  Thank you, your Honor for giving us

3    the opportunity to clear Mr. Gibbs' name, and what I

4    would like to add to the declarations that he has

5    submitted and the papers that we have submitted is that

6    Mr. Gibbs did not intend to disrespect this court or

7    disobey any orders of this court.  Mr. Gibbs had no

8    knowledge that perhaps others may have knowingly or

9    unknowingly disregarded some orders of this court in

10   terms of the service of the knowledge of the October 17th

11   order.

12       The order itself, you know, did not require

13   service on the ISP's, but that was what Mr. Gibbs wanted

14   to do.  And that is the undisputed testimony here today

15   that that is what he wanted to do was to have those ISP's

16   notified of that.  And he took no action whatsoever, your

17   Honor, to do discovery, formal discovery of those ISP's

18   or ask the ISP's to follow-up on the information

19   provided.

20       So Mr. Gibbs stands before you, your Honor, he

21   is I think we could say humbled by this experience, and I

22   think he is regretful that he has perhaps been put in a

23   position where the court at least in the original OSC

24   made comments suggesting that he was a culpable party

25   here.  And he is not, your Honor.  And I hope you see it

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/12/2013 9:27:34 AM
Hennepin County Civil, MN

1  that way too.

2          And I thank you very much for your time.

3  Appreciate the opportunity you have given us to clear his

4  name.

5          THE COURT:  Thank you, counsel.

6          Anything from this side?  You don't have to.

7          MR. PIETZ:  I will keep it very brief, your Honor.

8          I can appreciate that there may be more

9  parties, other people who are more culpable than

10 Mr. Gibbs with respect to what has occurred in these

11 cases.  However, I think the assertion that Mr. Gibbs is

12 merely an independent contract attorney is simply not

13 credible.  I would just simply leave it at this, there is

14 ample evidence showing that Mr. Gibbs was been involved

15 since day one or at least very shortly thereafter on a

16 key level exercising operational control over this

17 litigation on a national basis.

18          So while I am sympathetic that perhaps to a

19 certain extent, maybe there are other people more

20 culpable, I will just leave it that certainly there is

21 ample evidence showing that Mr. Gibbs indeed played a key

22 role in all of this.

23          Thank you, your Honor.

24          THE COURT:  Okay.  I just have one question,

25 gentlemen.  As a licensed attorney in this state,

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

1   particularly when it is only your name on the pleadings,

2   don't you think you have some responsibility to assure

3   the accuracy of those pleadings?  Or is it permissible

4   simply to go they told me to do so or the senior partner

5   said it is okay, it may not have sounded right to me, but

6   they said it was okay.  Could you do that really?

7        MR. WAXLER:  Your Honor, I am going to suggest

8   that that is not what happened on a key issue.

9        THE COURT:  Okay.

10       MR. WAXLER:  On a key issue, the issue involving

11  Alan Cooper, there was not one shred of information that

12  Alan Cooper wasn't Alan Cooper until Mr. Gottfried's

13  letter in November of 2012 at which point Mr. Gibbs

14  immediately questioned whether this was accurate or not.

15  And the most important thing is that Mr. Gibbs filed no

16  further pleadings after that time which purported to rely

17  on Mr. Cooper being the assignee of AF Holdings.  And so

18  Mr. Gibbs reacted to the notion.

19       He investigated and he did nothing further on

20  it.  He was assured that Alan Cooper was Alan Cooper, but

21  so he -- he did something other than said somebody told

22  me.  And on the other issues, your Honor, these were not

23  examples of him relying on anybody else to do things that

24  were improper.  He was doing discovery.  He was doing

25  investigations.  They were supervising him, but he was

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
17/23/2013 9:27:34 AM
Hennepin County Civil, MN

1   acting like a California lawyer doing what he thought in

2   his best judgment should be done as a California lawyer

3   in these cases.

4            THE COURT:  All right.

5            MR. WAXLER:  Thank you.

6            THE COURT:  Thank you, counsel.

7                 All right.  Again, the matter stands

8   submitted.  We are adjourned.

9            MR. WAXLER:  Thank you, your Honor.

10           MR. PIETZ:  Thank you, your Honor.

11           (Proceedings concluded.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 9:27:34 AM
Hennepin County Civil, MN

CERTIFICATE

I hereby certify that pursuant to Section 753, Title 28,

United States Code, the foregoing is a true and correct

transcript of the stenographically reported proceedings held

in the above-entitled matter and that the transcript page

format is in conformance with the regulations of the

Judicial Conference of the United States.

Date:  March 17, 2013

 /s/ Katie Thibodeaux, CSR No. 9858, RPR, CRR

UNITED STATES DISTRICT COURT,   CENTRAL DISTRICT OF CALIFORNIA

Filed in Fourth Judicial District Court
7/2/2013 4:20:32 PM
Hennepin County Civil, MN

| | |
|---|---|
| **STATE OF MINNESOTA** | **DISTRICT COURT** |
| **COUNTY OF HENNEPIN** | **FOURTH JUDICIAL DISTRICT** |

---

Alan Cooper,                                   Court File No.: 27-CV-13-3464

      Plaintiff,                          Judge: Honorable Ann Leslie Alton

v.

John Lawrence Steele, Prenda Law Inc., AF
Holdings, LLC, Ingenuity13, LLC,

      Defendants.

---

## NOTICE OF WITHDRAWAL OF COUNSEL

Pursuant to Rule 105 of the General Rules of Practice for the District Courts, Paul

Hansmeier hereby withdraws as counsel for Defendant Prenda Law, Inc. The address and phone

number where Prenda Law, Inc. can be served or notified of matters relating to the action are as

follows:

> Prenda Law, Inc.
> 161 N. Clark St. Ste 3200
> Chicago, Illinois 60601
> 312-880-9160

Respectfully submitted,

DATED: July 2, 2013

                        By:     s/ Paul R. Hansmeier
                                 Paul R. Hansmeier
                                 Bar No. 0387795
                                 Alpha Law Firm LLC
                                 900 IDS Center
                                 80 South 8th Street
                                 Minneapolis, MN 55402

Filed in Fourth Judicial District Court
7/2/2013 4:20:32 PM
Hennepin County Civil, MN

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 2, 2013, all individuals of record who have

appeared were served with written notice of this notice of withdrawal.


s/ Paul R. Hansmeier

Filed in Fourth Judicial District Court
9/13/2013 2:19:48 PM
Hennepin County Civil, MN

STATE OF MINNESOTA                          DISTRICT COURT

COUNTY OF HENNEPIN                   FOURTH JUDICIAL DISTRICT

| | |
|---|---|
| Alan Cooper,<br><br>                    Plaintiff,<br><br>vs.<br><br>John Lawrence Steele, Prenda Law Inc.,<br>AF Holdings LLC., Ingenuity 13 LLC.,<br><br>                  Defendant. | Judge Ann L. Alton<br>Court File No.: 27-CV-13-3463<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND GRANTING PLAINTIFF'S REQUEST TO CONDUCT DISCOVERY AND AMEND COMPLAINT TO INCLUDE CLAIM FOR PUNITIVE DAMAGES** |

The above-captioned proceeding came on for a hearing before the Honorable Ann L. Alton on May 21, 2013, in Courtroom 1453, Hennepin County Government Center, Minneapolis, Minnesota, upon Plaintiff's Motion for Default Judgment.

Paul A. Godfread, Esq., appeared for and on behalf of the Plaintiff. Paul R. Hansmeier, Esq., appeared for and on behalf of Defendants. After the hearing, on July 2, 2013, Paul R. Hansmeier, Esq., notified the Court that he withdrew as counsel from the matter. On that same day, by letter dated July 2, 2013, Plaintiff's Counsel sought additional considerations from the Court.

First, Plaintiff's Counsel requests this Court to take judicial notice of the transcript from a hearing in United States District Court Central District of California before the Honorable Otis D. Wright, which occurred on March 11,

1

2013. This is the matter of *Ingenuity13 LLC., v. John Doe, et al.,* case No. CV 12-8333 ODW.

Second, Plaintiff's Counsel requests additional time to conduct discovery in order to prove his client's damages.

Third, Plaintiff's Counsel seeks leave from the Court in order to amend his Complaint to allow for punitive damages.

The Court took these matters under advisement on July 2, 2013, the date of the last written submissions.

Now, therefore, based on the abovementioned matters, the Court enters the following Order.

## **ORDER**

1. At this time, an Order granting default judgment for Plaintiff Alan Cooper against Defendants in this matter is premature; therefore, it is **DENIED**.

2. Service has been perfected and is deemed complete upon Defendants John Lawrence Steele, and Prenda Law, Inc.

3. On January 25, 2013, Defendant John Lawrence Steele was personally served with Plaintiff's Summons, Complaint, Exhibits to Complaint, Plaintiff's First Set of Interrogatories, and Plaintiff's First Set of

2

Requests for Admissions at 300 South Sixth Street, Minneapolis, State of Minnesota. *See* Aff., of Personal Service on John Lawrence Steele.

4. On March 18, 2012, Defendant Prenda Law, Inc., was served through its registered agent and the Illinois Secretary of State. *See* Godfread Aff., Ex. A & B.

5. This Court is entirely disregarding the Affidavit of Paul Duffy, in which he declares he did not receive Plaintiff's service attempt. Paul Duffy has no credibility with this Court. This Court finds that the Prenda Law Firm is or has been conducting fraudulent business; therefore, Paul Duffy, as agent of the Prenda Law Firm, is entirely incredible and his Affidavit will not be considered for any purpose.

6. The Court accepts Defendants' untimely Answer filed on May 7, 2013, for purposes of framing the issues in this matter; and therefore, the Court will not enter Default Judgment against Defendants in this matter because it is premature.

7. Defendants, along with any of their shareholders, officers, agents and affiliates, shall immediately cease all further use of Plaintiff Alan Cooper's name.

8. Leave of the Court is hereby **GRANTED** to allow Plaintiff to amend his Complaint to add an allegation of Punitive Damages.

3

9. Additional Discovery shall be allowed immediately subject to the Courts Scheduling Order.

10. If Defendants fail to respond to Plaintiff's Discovery, then Plaintiff's Motion for Default may be renewed and a hearing to prove damages may be scheduled by Plaintiff.

11. Plaintiff must prove any damages to this Court by a preponderance of the evidence. This Court will not accept speculative damage calculations.

12. The Court **WILL NOT** take judicial notice of the transcript from the hearing March 11, 2013, before the Honorable Otis D. Wright, in the matter of *Ingenuity13 LLC., v. John Doe, et al.,* case No. CV 12-8333 ODW.

13. Any facts contained therein must be proven to this Court by a preponderance of the evidence.

14. Plaintiff's Amended Complaint shall be submitted on or before **September 27, 2013**.

15. Discovery in this matter shall be completed on or before **December 31, 2013**.

**IT IS SO ORDERED.**

BY THE COURT

Dated: September 18, 2013

_Ann Leslie Alton Judge of District Court_

5