UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Alan Cooper, | Civil No. 13-CV-2622 (SRN/LIB) |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| John Lawrence Steele, Prenda Law Inc., AF Holdings, LLC, and Ingenuity 13, LLC, | |
| Defendants. | |

_____

Paul Allen Godfread, Godfread Law Firm, 6043 Hudson Road, Suite 305, Woodbury, Minnesota 55125, for Plaintiff

John Lawrence Steele, Pro Se, 1111 Lincoln Road, Suite 400, Miami Beach, Florida 33139

Paul R. Hansmeier, Class Action Justice Institute LLC, 40 South Seventh Street, Suite 212-313, Minneapolis, Minnesota 55402, for Defendant Prenda Law Inc.
_____

SUSAN RICHARD NELSON, United States District Court Judge

     This matter is before the Court on Plaintiff's Motion to Remand to State Court [Doc. No. 9]; Defendant Steele's Motion to Transfer Venue [Doc. No. 4], and Defendant Steele's Motion to Dismiss [Doc. No. 15]. For the reasons set forth herein, Plaintiff's motion is granted, his request for fees and costs is denied, and Defendant Steele's motions are denied as moot.

1

## I.   BACKGROUND

This matter was originally filed by Plaintiff Alan Cooper ("Cooper") in Hennepin County District Court on February 26, 2013.  In the Complaint, Cooper asserts claims for invasion of privacy, civil conspiracy, and violations of the Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.44, against Defendants John Lawrence Steele ("Steele"), Prenda Law Inc. ("Prenda Law"), AF Holdings, LLC ("AF Holdings"), and Ingenuity 13, LLC ("Ingenuity 13").  (Compl. ¶¶ 42-107 [Doc. No. 1-1 at 8-13].)  Cooper also asserts veil piercing allegations against the corporate Defendants.  (Id.)

As alleged in the Complaint, in 2006, Steele, an Illinois resident, hired Cooper, a Minnesota resident, as a caretaker for Steele's Aitkin County, Minnesota property.  (Id. ¶¶ 1-3.)  As part of the caretaking arrangement, Cooper resided in a guest house on the property.  (Id. ¶ 9.)  Steele and Cooper entered into a written rental agreement concerning Cooper's on-site residence and caretaking duties, which both parties signed.  (Id. ¶ 24; Rental Agreement, Ex. C to Compl. [Doc. No. 1-1 at 28-32].)  Cooper alleges that on several occasions when Steele visited the property, he "discussed his plans and early successes in carrying out a massive, nationwide copyright enforcement litigation strategy."  (Compl. ¶ 10 [Doc. No. 1-1 at 5].)  In addition, Cooper also alleges that Steele advised Cooper that if anyone contacted Cooper "about any companies, that Plaintiff was not to answer and to call Steele directly."  (Id. ¶ 11.)  Cooper was unable to determine the names of the companies to which Steele referred.  (Id. ¶ 12.)

As alleged in the Complaint, Steele and/or attorneys associated with him have

served as plaintiff's counsel in numerous copyright infringement lawsuits nationwide, representing AF Holdings or Ingenuity 13.  (See id. ¶ 13; see also, e.g., AF Holdings LLC v. Does 1-1058, 752 F.3d 990, 992-93 (D.C. Cir. 2014); AF Holdings LLC v. Hean, No. 12-CV-1445 (JNE-FLN), 2014 WL 1285757, at *1 (D. Minn. Mar. 31, 2014); Ingenuity 13 LLC v. John Doe, No. 2:12-cv-8333-ODW, 2013 WL 1898633, at *1 (C.D. Cal. May 6, 2013).)  The Complaint alleges that Steele's former law firm, Steele Hansmeier, PLLC, is now known as Prenda Law.  (Compl. ¶ 15 [Doc. No. 1-1 at 5].)  In addition, the Complaint asserts that while Steele contends that he is merely "of counsel" with Prenda Law, he controls the operations of the firm.  (Id. ¶ 16.)   Plaintiff alleges that the Steele Hansmeier firm and the Prenda Law firm have both represented clients AF Holdings and Ingenuity 13.  (Id. ¶¶ 17; 21.)   In addition, Cooper alleges that Steele and Prenda Law participated in the creation of AF Holdings and Ingenuity 13, that they have actual control of these entities, and that these entities exist solely as instruments of Steele and Prenda Law.  (Id. ¶¶ 32-34.)  Both AF Holdings and Ingenuity 13 are organized in the nation of St. Kitts and Nevis.  (Id. ¶ 35.)  Cooper contends that the Defendant companies are organized there "because of the strict corporate privacy laws in that country."  (Id.)

     Cooper's claims of misappropriation in this case are related to the use of his name in many of the underlying copyright infringement suits filed by AF Holdings and Ingenuity 13.  (See id. ¶¶ 26-31.)  The Court of Appeals for the District of Columbia recently discussed the operations of AF Holdings in a case in which AF Holdings was represented by one of Steele's Prenda Law colleagues, Paul A. Duffy:

> A full understanding of this case requires knowing some things about the lawyer and "law firm" that initiated it. AF Holdings is represented by attorney Paul A. Duffy. Until very recently, Duffy was associated with "Prenda Law," an organization that, since representing AF Holdings in the district court, appears to have disbanded and then reconstituted itself in a similar form. See Ben Jones, Prenda Suffers More Fee Award Blows, TorrentFreak (August 9, 2013), http://torrentfreak. com/prenda-suffers-more-fee-award-blows-130809.

AF Holdings, 752 F.3d at 992. Quoting Judge Otis Wright II in a similar case involving many of the same parties and attorneys, the court described Prenda Law as a "'porno-trolling collective,'" represented by attorneys Steele, Duffy, and Peter Hansmeier – "'attorneys with shattered law practices'" who, "'[s]eeking easy money, . . . formed . . . AF Holdings,'" acquired "'several copyrights to pornographic movies,'" then initiated massive "John Doe" copyright infringement lawsuits. Id. (quoting Ingenuity 13, 2013 WL 1898633, at *1). The court further detailed "Prenda Law's modus operandi" in filing copyright infringement suits:

> These suits took advantage of judicial discovery procedures in order to identify persons who might possibly have downloaded certain pornographic films. Such individuals, although generally able to use the Internet anonymously, are, like all Internet users, linked to particular Internet Protocol (IP) addresses, a series of numbers assigned to each Internet service subscriber. Internet service providers like Appellants can use IP addresses to identify these underlying subscribers, but not necessarily the individuals actually accessing the Internet through the subscribers' connections at any given time. Confronted with these realities, Prenda Law's general approach was to identify certain unknown persons whose IP addresses were used to download pornographic films, sue them in gigantic multi-defendant suits that minimized filing fees, discover the identities of the persons to whom these IP address were assigned by serving subpoenas on the Internet service providers to which the addresses pertained, then negotiate settlements with the underlying subscribers – a "strategy [that] was highly successful because of statutory-copyright damages, the

> pornographic subject matter, and the high cost of litigation." [Ingenuity 13, 2013 WL 1898633] at *2, [ ]; see also Claire Suddath, Prenda Law, the Porn Copyright Trolls, Bloomberg Businessweek (May 30, 2013), http://www.businessweek.com/ articles/ 2013-05-30/ prenda-law-the-porn-copyright-trolls (recounting Prenda Law's history and litigation tactics). If an identified defendant sought to actually litigate, Prenda Law would simply dismiss the case. See Ingenuity 13, 2013 WL 1898633, at *2 [ ]. As Duffy acknowledged at oral argument, of the more than one hundred cases that AF Holdings has initiated, none has proceeded to trial or resulted in any judgment in its favor other than by default. Nevertheless, according to one article, Prenda Law made around $15 million in a little less than three years. See Kashmir Hill, How Porn Copyright Lawyer John Steele Has Made a 'Few Million Dollars' Pursuing (Sometimes Innocent) 'Porn Pirates', Forbes (Oct. 15, 2012), http://www.forbes.com/sites/kashmirhill/2012/10/15/ how-porn-copyright-lawyerjohn-steele-justifies-his-pursuit-of-sometimes-innocent-porn-pirates.

Id. at 992-93.

In the case before this Court, Plaintiff Cooper alleges that in approximately November 2012, he learned that his name was used, without his knowledge or authorization, in court filings as an officer or director of AF Holdings and as a manager of Ingenuity 13. (Compl. ¶¶ 17; 21 [Doc. No. 1-1 at 5-6].) Cooper attaches to his Complaint a copyright assignment agreement for the pornographic film "Popular Demand" bearing the handwritten signature of "Alan Cooper" on behalf of AH Holdings (Ex. A to Compl. [Doc. No. 1-1 at 16-17]), as well as a discovery petition filed in the United States District Court for the Eastern District of California bearing the electronic signature of "Alan Cooper" on behalf of Ingenuity 13. (Ex. B to Compl. [Doc. No. 1-1 at 19-26].) Cooper maintains that he did not sign the "Popular Demand" copyright assignment agreement, nor did he sign the discovery filing. (Compl. ¶¶ 20; 23 [Doc. No.

1-1 at 6].) Cooper believes that his genuine signature on the rental and caretaking agreement between him and Steele served as the model for the forged signature in the assignment agreement. (Id. ¶ 25.) Despite Plaintiff's efforts to contact Defendants about the use of the name "Alan Cooper" in documents filed in connection with the lawsuits of AF Holdings and Ingenuity 13, Plaintiff alleges that Defendants have offered no explanation, nor have they identified another person by the name of Alan Cooper who could have plausibly signed the documents in question. (Id. ¶¶ 38, 41.)

The District of Columbia Circuit addressed the issue of Cooper's allegedly forged signature in its factual summary in AF Holdings, noting that

> AF Holdings also attached the purported assignment agreement through which it claims to have acquired the copyright to *Popular Demand*. Although it has no effect on our resolution of this appeal, other courts have since concluded that at least one of the signatures on this document was forged. See Ingenuity 13 LLC, 2013 WL 1898633, at *3, [ ]; AF Holdings LLC v. Navasca, No. C–12–2396, 2013 WL 3815677, at *1, 2013 U.S. Dist. LEXIS 102249, at *3–4 (N.D. Cal. July 22, 2013); AF Holdings, LLC v. Doe(s), No. 12–1445, 2013 U.S. Dist. LEXIS 187458, at *10–12 (D. Minn. Nov. 6, 2013), vacated by AF Holdings, LLC v. Doe, No. 12–1445, 2014 WL 1285757, 2014 U.S. Dist. LEXIS 43318 (D. Minn. Mar. 27, 2014); see also Lightspeed Media Corp. v. Smith, No. 12–889, 2013 WL 6225093, at *5, 2013 U.S. Dist. LEXIS 168615, at *16 (S.D. Ill. Nov. 27, 2013) ("The [principals of Prenda] have shown a relentless willingness to lie to the Court on paper and in person, despite being on notice that they were facing sanctions in this Court, being sanctioned by other courts, and being referred to state and federal bars, the United States Attorney in at least two districts, one state Attorney General, and the Internal Revenue Service." (internal citations omitted)).

AF Holdings, 752 F.3d at 993.

In the instant suit, Plaintiff personally served Steele with the Complaint on January 25, 2013. (See Hennepin Cnty. Order of 9/13/13 at 2 [Doc. No. 1-3 at 149]; Notice of Removal at 1 [Doc. No. 1].) As noted, the claims in the Complaint are based on Cooper's allegations concerning the misappropriation of his identity, for which he seeks monetary damages, injunctive and declarative relief, leave of court to amend for punitive damages, and reasonable costs and disbursements. (Compl. at 11-12 [Doc. No. 1-1 at 13-14].) The Complaint does not specify an amount in controversy.

On May 6, 2013, Plaintiff moved for default judgment in Hennepin County District court against Defendant Prenda Law, arguing that Prenda Law had failed to answer the Complaint.[1] (See Hennepin Cnty. Pl.'s Mem. Supp. Mot. for Default J. [Doc. No. 1-2 at 6-10].) Plaintiff's memorandum in support of the motion contained estimates of its damages. (Id. at 2-4 [Doc. No. 1-2 at 7-9].) By May 17, 2013, Plaintiff served Defendants Prenda Law and John Steele by mail and email with the following documents related to the default judgment motion: Notice of Motion and Motion for Default, Memorandum in Support, and supporting exhibits and affidavits. (Hennepin Cnty.

---

[1] Although Defendant Prenda Law contested service, the Hennepin County District Court ruled that service had been perfected upon Prenda Law. (Id.) In reaching this conclusion, the court disregarded an affidavit submitted by Paul Duffy, of Prenda Law, in which Duffy declared that he had not received Plaintiff's service attempt. (Id. at 3 [Doc. No. 1-3 at 150].) The court explained, "Paul Duffy has no credibility with this Court. This Court finds that the Prenda Law Firm is or has been conducting fraudulent business; therefore, Paul Duffy, as agent of the Prenda Law Firm, is entirely incredible and his Affidavit will not be considered for any purpose." (Id.) Here, in support of Defendant Steele's Motion to Transfer Venue [Doc. No. 4], Steele has attached a copy of the same Duffy Affidavit rejected by the Hennepin County District Court. (Duffy Aff., Ex. A to Steele Ex. Index [Doc. No. 7-1].)

Certificate of Service [Doc. No. 1-2 at 72]; Godfread Decl. ¶ 1 [Doc. No. 12].) Defendant Steele argues that he did not receive these documents. (Def.'s Opp'n Mem. at 2 [Doc. No. 22].)  It appears that Steele filed nothing in response to the default judgment motion, which was directed at Prenda Law, nor did he enter an appearance at the May 21, 2013 hearing on the motion. (See Hennepin Cnty. Order of 9/13/13 at 1 [Doc. No. 1-3 at 148].)

      Hennepin County District Court Judge Ann L. Alton ruled on Plaintiff's Motion for Default Judgment on September 13, 2013. (Id.)  Judge Alton accepted Prenda Law's untimely Answer "for purposes of framing the issues in this matter," and denied Plaintiff's Motion for Default Judgment as premature. (Id. at 3.)  In addition, Judge Alton ordered Defendants to "immediately cease all further use of Plaintiff Alan Cooper's name," permitted Plaintiff to amend his Complaint to include a claim for punitive damages, and permitted discovery. (Id. at 3-4.)  If Defendants failed to respond to Plaintiff's discovery, the court ruled that Plaintiff's Motion for Default Judgment could be renewed and a hearing on damages could be scheduled. (Id. at 4.)  The court further stated that Plaintiff was required to prove damages by a preponderance of the evidence and that the court would not accept speculative proof of damages. (Id.)

      Ten days later, on September 23, 2013, Steele removed the matter to this Court. (Notice of Removal [Doc. No. 1].)  In the Notice of Removal, Steele identified diversity of citizenship as the basis for this Court's jurisdiction and asserted that the amount in controversy exceeds $75,000. (Id. at 1-2.)  Steele identified Judge Alton's September 13,

8

2013 Order as the first document in the action from which he could ascertain the amount in controversy. (Id. at 2.)

## II.   DISCUSSION

Title 28 U.S.C. § 1332 establishes original federal jurisdiction over actions involving diversity of citizenship. To invoke diversity jurisdiction, the parties must be citizens of different states and the amount in controversy must exceed $75,000. Id. Any civil action brought in state court over which a federal district court has original jurisdiction may be removed to the proper federal district court. 28 U.S.C. § 1441(a). If the federal court determines that it does not have jurisdiction over a removed action, the action must be remanded to the state court from which the case originated. 28 U.S.C. § 1447(c). District courts are required to resolve any ambiguity as to whether removal is proper in favor of state court jurisdiction, and "removal jurisdiction must be narrowly construed in favor of the nonmoving party." Arnold Crossroads, LLC v. Gander Mt. Co., 751 F.3d 935, 940 (8th Cir. 2014) (citing In re Business Men's Assurance Co. of America, 992 F.2d 181, 183 (8th Cir.1993)). The party invoking federal jurisdiction bears the burden of establishing that all prerequisites to jurisdiction have been satisfied. In re Business Men's Assurance Co. of America, 992 F.2d at 183; see also Bell v. Hershey Co., 557 F.3d 953, 956 (8th Cir. 2009).

With respect to Plaintiff's Motion to Remand, there appears to be no dispute that the parties are from different states and the amount in controversy exceeds the jurisdictional minimum. However, the parties dispute whether this case was timely-

removed within the 30-day requirement of 28 U.S.C. § 1446(b).

Plaintiff contends that Steele was aware of the removability of this case on May 17, 2013, but did not remove it until September 23, 2013 – 129 days after he could have ascertained the amount in controversy. (Pl.'s Mem. Supp. Mot. to Remand at 1; 5-7 [Doc. No. 11].) Moreover, Cooper argues that the underlying order on which Steele based his Notice of Removal contains no mention of the amount in controversy. (Id. at 7-8). Plaintiff further contends that because Steele is a principal of Defendant Prenda Law, Prenda Law's knowledge of the amount in controversy may be imputed to Steele. (Id. at 6.)

In response, Steele contends that only upon receiving the Hennepin County District Court's September 13, 2013 Order did he "bec[o]me aware that Plaintiff was seeking monetary damages." (Def.'s Opp'n Mem. at 4 [Doc. No. 22]; see also Notice of Removal at 2 [Doc. No. 1].) Steele disputes having received any of the documents that Plaintiff's counsel contends were served on Steele. (Def.'s Opp'n Mem. at 2 [Doc. No. 22].) Furthermore, he contends that even if he had received the documents, they failed to inform him of the threshold $75,000 amount in controversy that is necessary to confer federal jurisdiction. (Id.) Finally, Steele disputes that he is a "principal" of Prenda Law and argues that no principles of agency may be applied to him in order to impute notice. (Id. at 8-9.)

Pursuant to 28 U.S.C. § 1446(b)(1), removal of diversity jurisdiction cases must be filed

> within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

This provision applies only when the complaint explicitly discloses damages exceeding the federal jurisdictional amount. Knudson v. Sys. Painters, Inc., 634 F.3d 968, 974 (8th Cir. 2011) (quoting In Re Willis, 228 F.3d 896, 897 (8th Cir. 2000)). However, if a case as initially pleaded is not removable, e.g., where the amount in controversy is not specifically alleged, a notice of removal may be filed "within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). "Although these time limitations are not jurisdictional, 'they are mandatory and are to be strictly construed[d].'" CitiMortgage, Inc. v. Kraetzner, No. 12-CV-1524 (JRT/TNL), 2012 WL 6771109, at *1 (D. Minn. Sept. 10, 2012) (quoting Percell's Inc. v. Cent. Tel. Co., 492 F. Supp. 156, 157 (D. Minn. 1980)).

While Plaintiff seeks monetary damages, among other remedies, the Complaint does not identify a specific amount in controversy. (Compl. at 11-12 [Doc. No. 1-1 at 13-14].) Because Plaintiff's Complaint does not disclose the amount in controversy, the Court thus considers the point at which Defendant Steele received "an amended pleading, motion, order or other paper" from which he could have ascertained the amount in

controversy pursuant to § 1446(b)(3).  In re Willis, 228 F.3d at 897 (stating, "We find the thirty-day time limit of section 1446(b) begins running upon receipt of the initial complaint only when the complaint explicitly discloses the plaintiff is seeking damages in excess of the federal jurisdictional amount.")

     Plaintiff's May 6, 2013 state court memorandum in support of his default judgment motion against Prenda Law contained a section captioned "II. ESTIMATES OF DAMAGES BASED ON PUBLIC RECORDS."  (Hennepin Cnty. Pl's Mem. Supp. Mot. for Default J. at 2 [Doc. No. 1-2 at 7].)  At the end of that section, Cooper estimated that Defendants' proceeds from their alleged misappropriations of Cooper's identity amounted to $4,641,000.  (Id. at 4 [Doc. No. 1-2 at 9].)  Plaintiff concluded, "[t]he estimates provided within this motion and supporting documents may be the only way to calculate the amounts Prenda Law has taken through the unlawful use of Plaintiff's identity to perpetrate a massive scam on the federal court system."  (Id. at 5 [Doc. No. 1-2 at 10].)  In Plaintiff's Proposed Order, Plaintiff proposed damages of $4,641,000 – the same figure set forth in Plaintiff's memorandum.  (Hennepin Cnty. Pl.'s Proposed Order at 2 [Doc. No. 1-2 at 74].)  Plaintiff's May 6, 2013 Certificate of Service attests that the Notice of Motion and Motion for Default, Memorandum in Support, and supporting exhibits and affidavits were served on Defendant Steele and Defendant Prenda Law.  (Hennepin Cnty. Certificate of Service [Doc. No. 1-2 at 72].)  The Proposed Order, however, is not listed on Plaintiff's Certificate of Service.  (Id.)

Defendant Steele argues that the Proposed Order is the only document in which Plaintiff requested $4.6 million in damages, and that because Steele was not served with this document, he could not ascertain that this case was subject to federal jurisdiction in May 2013, because he did not know that the amount in controversy exceeded the $75,000 minimum amount. (Def.'s Opp'n Mem. at 2-4 [Doc. No. 22].)

The Court disagrees with Steele. The Proposed Order is not the only document from which Steele could ascertain the amount in controversy. As noted above, in the damages section of Plaintiff's state court memorandum, Plaintiff identified Defendants' proceeds of $4,641,000 that were allegedly received as a result of misappropriating Plaintiff's name. (Hennepin Cnty. Pl's Mem. Supp. Mot. for Default J. at 2-4 [Doc. No. 1-2 at 7-9].) Despite Steele's arguments to the contrary, evidence in the record demonstrates that Steele and Co-Defendant Prenda Law were served by mail and email with this filing on May 17, 2013. (Godfread Decl. ¶ 1 [Doc. No. 12]; Hennepin Cnty. Certificate of Service [Doc. No. 1-2 at 72].)

Moreover, Prenda Law clearly understood Plaintiff's damages estimate of $4,641,000, observing in its opposition memorandum that "Plaintiff seeks over $4.6 *million* in damages against Prenda," and arguing that the damages calculation was "wildly speculative and inaccurate." (Hennepin Cnty. Def. Prenda's Opp'n Mem. at 3 [Doc. No. 1-2 at 148]) (emphasis in original).[2]  Because the Certificate of Service does not list the

---

[2] It is unclear whether Steele was served with a copy of Prenda Law's opposition memorandum, as Prenda Law's Certificate of Service simply states that "on May 14, 2013, all individuals of record who are deemed to have consented to electronic service are

Proposed Order among the documents served on both Prenda Law and Steele, assuming the Proposed Order was not served on either defendant, the source of Prenda Law's knowledge of the $4.6 million damages estimate could only have been Plaintiff's default judgment memorandum. As noted, Plaintiff served this memorandum on Steele by mail and email on May 17, 2013. (Godfread Decl. ¶ 1 [Doc. No. 12]; Hennepin Cnty. Certificate of Service [Doc. No. 1-2 at 72].)

Regarding whether a legal memorandum is considered to be among the types of documents enumerated in §1446(b)(3) as giving rise to a notice of removal, some courts have found that a memorandum in support of a motion falls within the term "motion," which is one of the specifically listed documents in the statute. See, e.g., Yarnevic v. Brink's, Inc., 102 F.3d 753, 754–55 (4th Cir.1996) (finding that statement in plaintiff's memorandum regarding diversity "could be classified as either part of a 'motion' or, at the very least 'other paper' supporting the motion."). Section 1446(b)(3) provides that the defendant's receipt of any "other paper" may trigger whether removability may be ascertained. 28 U.S.C. §1446(b)(3). Courts have defined "other paper" broadly to include any formal or informal communication received by a defendant. See Yarnevic, 102 F.3d at 755; see also 14A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2D § 3732 (1985) (courts

---

being served [a] true and correct copy of the foregoing documents. . . ." (Hennepin Cnty. Def. Prenda's Opp'n Mem. at 6 [Doc. No. 1-2 at 151].) Nothing in the record before this Court indicates whether Steele consented to electronic service in Hennepin County.

give the term "other paper" an "embracive construction").  Consequently, courts have found various types of documents – including parties' briefs – to be "other paper" under §1446(b).  See, e.g., Huffman v. Saul Holdings Ltd. P'ship, 194 F.3d 1072, 1078-79 (10th Cir. 1999) (giving of deposition testimony); Eyak Native Village v. Exxon Corp., 25 F.3d 773, 778–79 (9th Cir. 1994) (plaintiff's reply brief); Allen v. Bayer Healthcare Pharms., Inc., No. 4:14-CV-420 (CEJ), 2014 WL 1613949, at *3 (E.D. Mo. April 22, 2014) (medical records); Dougherty v. Cerra, No. 2:13-cv-09472, 2013 WL 6705129, at *4 (S.D. W. Va. Dec. 19, 2013) (plaintiff's request for admissions and legal memorandum); Lien v. H.E.R.C. Products, Inc., 8 F. Supp. 2d 531 (E.D. Va. 1998) (settlement offer); Pack v. AC & S, Inc., 838 F. Supp. 1099 (D. Md. 1993) (product identification document).  The label given to the document is not what is relevant, rather; it is what the document says and whether it includes information from which the defendant should have ascertained that removability was possible.  See Golden Apple Mgmt. Co., Inc. v. GEAC Computers, Inc., 990 F.Supp. 1364, 1367 (M.D. Ala. 1998); Rowe v. Marder, 750 F. Supp. 718, 720 (W.D. Pa.1990).

      The Court finds that Plaintiff's memorandum in support of his state court default judgment motion was a "motion" or "other paper" from which Steele could have ascertained that the case was removable.  The $4,641,000 amount noted in Plaintiff's damages discussion was identical to the amount of damages suggested in Plaintiff's Proposed Order and was understood to be Plaintiff's damages estimate by another defendant.  Moreover, as of May 17, 2013, Plaintiff's counsel served a copy of the motion

for default judgment and supporting documents on Steele by first class mail and sent a copy via email. (Godfread Decl. ¶ 1 [Doc. No. 12]; Certif. of Service [Doc. No. 1-2 at 72].)

In addition, the Court finds that the evidence submitted by Plaintiff demonstrates that Steele received the memorandum "through service or otherwise." As to the email transmission, Steele cites Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 355-56 (1999), for the proposition that transmission of an electronic courtesy copy does not trigger the 30-day window for removal under §1446(b). (Def.'s Opp'n Mem. at 3 [Doc. No. 22].) Murphy Brothers is inapplicable here, however. First, the evidence shows that Steele was served by mail with a copy of Plaintiff's state court default memorandum – not simply by email. (Godfread Decl. ¶ 1 [Doc. No. 12]; Certif. of Service [Doc. No. 1-2 at 72].) Second, Murphy Brothers does not involve a case from which it was impossible to determine removability when the case was first filed. Rather, removability in Murphy Brothers arose under §1446(b)(1), upon service of the complaint. The Supreme Court held that formal service triggered the 30-day removal deadline, noting that the formality attendant to service of process and receipt of the complaint is "fundamental to any procedural imposition on a named defendant." Id. at 349. Here, however, notice arises under §1446(b)(3), subsequent to formal service of process and receipt of the complaint. Once the defendant is properly before the court, as here, and later discovers grounds for removal, the defendant must remove "within thirty days of discovering those grounds, regardless of whether such information is contained in

16

properly served amended pleadings or from some other source, such as deposition testimony or even correspondence from counsel." Trahant v. Metro. Prop. & Cas. Ins. Co., No. Civ. A 00-2579, 2000 WL 1473598 (E.D. La.) (citing Huffman, 194 F.3d at 1078).

As discussed herein, the Court rejects Steele's primary contention that none of Plaintiff's Motion for Default Judgment documents established an amount in controversy. (See Def.'s Opp'n Mem. at 2 [Doc. No. 22].)  As a secondary argument, Steele also disputes that he received any of these documents, although he contends that this is "ultimately beside the point" (id.) and "not relevant for this analysis." (Id. at 6, n.2.) To the extent that Steele asserts the non-receipt of Plaintiff's Memorandum in Support of Default Judgment, all evidence in the record refutes this contention. The Certificate of Service clearly states that Plaintiff served Steele by mail in May 2013 (Hennepin Cnty. Certificate of Service [Doc. No. 1-2 at 72]), and the Declaration of Paul Godfread in Support of Plaintiff's Motion to Remand attests that Plaintiff's counsel served Steele by mail and email on May 17, 2013. (Godfread Decl. ¶ 1 [Doc. No. 12].) As to the May 17, 2013 email, Godfread attests that he attached PDF files of all documents that Plaintiff filed in connection with Plaintiff's Motion for Default Judgment. (Id. ¶ 3(a)) (attaching Ex. A, Email of 5/17/13). While Steele quibbles with the content of Godfread's transmittal email, arguing that it fails to specify the contents that were sent (Def.'s Opp'n Mem. at 3 [Doc. No. 22], the Court accepts Godfread's Declaration, made under penalty of perjury (Godfread Decl. ¶ 3(a) [Doc. No. 12], in addition to the email. (Email of

5/17/13, Ex. A to Godfread Decl. [Doc. No. 12-1].)  As noted, it is Defendant's burden to establish that all prerequisites to jurisdiction have been satisfied.  In re Business Men's Assurance Co., 992 F.2d at 183.  Other than Steele's unsworn statement in the Notice of Removal and legal argument in his opposition memorandum  (Notice of Removal at 2 [Doc. No. 1]; Def.'s Opp'n Mem. at 2 [Doc. No. 22]), he offers no sworn evidence to support his contention that he did not receive Plaintiff's default memorandum by mail or email. In light of the evidence in the record, and because this Court must resolve any ambiguity concerning the propriety of removal in favor of state court jurisdiction, Arnold Crossroads, 751 F.3d at 940 (8th Cir. 2014), the Court finds that Steele could have ascertained that this matter was removable as of May 17, 2013.  Accordingly, Steele's removal 129 days later, on September 23, 2013, was untimely, as it far exceeded the 30-day time period for removal under § 1446(b)(3).[3]

Additionally, the Court notes that Steele's specified basis for removal fails to confer federal jurisdiction.  Steele contends that "[t]he September 13, 2013 Order, which was served on Steele, referenced Plaintiff's motion for default judgment and was the first time Steele received notice of the amount in controversy through 'service or otherwise.'" (Notice of Removal at 3 [Doc. No. 1]) (citing 28 U.S.C. § 1446(b)(3)).  The September 13, 2013 Order did not, however, refer to any amount in controversy.  (Hennepin Cnty. Order of 9/13/13 [Doc. No. 1-3 at 148-52].)  To the extent that the Order addressed

---

[3] Because the Court decides Plaintiff's Motion for Remand on this ground, it does not consider Plaintiff's agency argument that Prenda Law's knowledge of the amount in controversy may be imputed to Steele.

18

damages in general, it permitted Plaintiff to amend his Complaint to allege punitive damages, granted Plaintiff leave to renew his Motion for Default Judgment and to schedule a hearing to prove damages should Defendants fail to respond to discovery, and required Plaintiff to establish any damages by a preponderance of the evidence. (Id. at 3-4 [Doc. No. 1-3 at 150-51].) No damages amounts were specified whatsoever. (Id.) While this point does not form the basis for this Court's ruling here, the Court simply observes that Steele's identified basis for federal jurisdiction as alleged in the Notice of Removal did not, in fact, confer federal jurisdiction.[4]

For all of the foregoing reasons, Plaintiff's Motion for Remand is granted. Plaintiff's request for costs and fees, including attorney's fees, incurred as a result of removal is denied. Because the Court finds that removal was improper and remand is appropriate, the Court need not address Defendant Steele's Motion to Dismiss and Motion to Transfer Venue.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Plaintiff's Motion to Remand to State Court [Doc. No. 9] is **GRANTED**;

---

[4] Moreover, although Steele acknowledges that he was served with the Complaint on January 25, 2013 (Def.'s Opp'n Mem. at 1 [Doc. No. 22]) – a Complaint seeking monetary damages and leave to amend to add punitive damages – he nevertheless argues that he only became aware that Plaintiff sought monetary damages in general upon receipt of the state court's September 13, 2013 Order. (Def.'s Opp'n Mem. at 4 [Doc. No. 22]) (emphasis added). Steele's receipt of the Complaint, with its request for monetary damages and the possibility of punitive damages, utterly belies his argument.

2. Plaintiff's request for costs and fees, including attorney's fees, incurred as a result of removal is **DENIED**;

3. Defendant Steele's Motion to Transfer Venue [Doc. No. 4] is **DENIED AS MOOT**;

4. Defendant Steele's Motion to Dismiss [Doc. No. 15] is **DENIED AS MOOT**; and

5. The Clerk of Court shall take all appropriate action to remand this case to Hennepin County District Court.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 29, 2014

<u>s/Susan Richard Nelson</u>
SUSAN RICHARD NELSON
United States District Court Judge